No. 25-50747

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

State of Texas; Texas General Land Office; Texas Department of Agriculture; Railroad Commission of Texas; State of Kansas; State of Oklahoma,

*Plaintiffs - Appellees*

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,

*Defendants - Appellees*

v.

Center for Biological Diversity; Texas Campaign for the Environment,

*Movants - Appellants*

———————————————

Permian Basin Petroleum Association; National Cattlemen's Beef Association; Texas Cattle Feeders Association; Kansas Livestock Association; Oklahoma Cattlemen's Association; New Mexico Cattle Growers Association, Kansas Independent Oil & Gas Association; Petroleum Alliance of Oklahoma,

*Plaintiffs - Appellees*

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the

Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,

*Defendants - Appellees*

v.

Center for Biological Diversity; Texas Campaign for the Environment,

*Movants - Appellants*

---

**On Appeal from**

United States district court for the Western District of Texas

7:23-CV-47

---

**BRIEF OF APPELLANTS CENTER FOR BIOLOGICAL DIVERSITY AND TEXAS CAMPAIGN FOR THE ENVIRONMENT**

---

SUBMITTED BY:

Jason C. Rylander
Lauren A. Parker
Center for Biological Diversity
1411 K Street NW
Washington, DC 20005

Charles William Irvine
Irvine & Conner, P.L.L.C.
4709 Austin Street
Houston, TX 77004

## Table of Contents

| Document | Record Citation | Tab |
|---|---|---|
| Docket Sheet - 7:23-CV-47 | ROA.1-26 | Tab 1 |
| Docket Sheet - 7:23-CV-49 | ROA.6236-6243 | Tab 2 |
| Notice of Appeal | ROA.6205-6207 | Tab 3 |
| Order on Intervention | ROA.1465-1474 | Tab 4 |
| Motion for Reconsideration | ROA.4460-4471 | Tab 5 |
| Response in Opposition to Motion to Remand | ROA.5869-5884 | Tab 6 |
| Omnibus Order | ROA.6189-6203 | Tab 7 |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Doug Burgum, Secretary, U.S. Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |
| Doug Burgum, Secretary, U.S. Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Doug Burgum, Secretary, U.S. Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| Kansas Independent Oil & Gas Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Independent Oil & Gas Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Independent Oil & Gas Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Independent Oil & Gas Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Livestock Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Livestock Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Livestock Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Livestock Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |

| | |
|---|---|
| National Cattlemen's Beef Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| National Cattlemen's Beef Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| National Cattlemen's Beef Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| National Cattlemen's Beef Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Brian Nesvik | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Brian Nesvik | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| New Mexico Cattle Grower's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| New Mexico Cattle Grower's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| New Mexico Cattle Grower's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| New Mexico Cattle Grower's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Oklahoma Cattlemen's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Oklahoma Cattlemen's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Oklahoma Cattlemen's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Oklahoma Cattlemen's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Permian Basin Petroleum Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Permian Basin Petroleum Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Permian Basin Petroleum Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Permian Basin Petroleum Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |

| | |
|---|---|
| Petroleum Alliance of Oklahoma | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Petroleum Alliance of Oklahoma | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Petroleum Alliance of Oklahoma | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Petroleum Alliance of Oklahoma | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Railroad Commission of Texas | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| Railroad Commission of Texas | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| State of Kansas | Anthony Powell of Office of the Attorney General Topeka, KS |
| State of Kansas | James Rodriguez of Kansas Attorney General's Office Topeka, KS |
| State of Oklahoma | Zachary West of Oklahoma Attorney General Oklahoma City, OK |
| State of Oklahoma | Garry Gaskins of Oklahoma Attorney General Oklahoma City, OK |
| State of Oklahoma | Jennifer Lewis of Oklahoma Office of the Attorney General Oklahoma City, OK |
| State of Texas | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| State of Texas | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| Texas Cattle Feeder's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Texas Cattle Feeder's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |

3

| | |
|---|---|
| Texas Cattle Feeder's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Texas Cattle Feeder's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Texas Department of Agriculture | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| Texas Department of Agriculture | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| Texas General Land Office | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| Texas General Land Office | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| United States Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |
| United States Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| United States Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| United States Fish and Wildlife Service | David Goode of U.S. Attorney's Office Austin, TX |
| United States Fish and Wildlife Service | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| United States Fish and Wildlife Service | Emily Polachek of U.S. Department of Justice Bloomington, MN |


| Appellants: | Counsel for Appellants: |
|---|---|
| Center for Biological Diversity | Jason Rylander of Center for Biological Diversity Washington, DC |

4

| Center for Biological Diversity | Lauren Parker of Center for Biological Diversity Washington, DC |
| Center for Biological Diversity | Charles Irvine of Irvine & Conner, P.L.L.C. Houston, TX |
| Texas Campaign for the Environment | Jason Rylander of Center for Biological Diversity Washington, DC |
| Texas Campaign for the Environment | Lauren Parker of Center for Biological Diversity Washington, DC |
| Texas Campaign for the Environment | Charles Irvine of Irvine & Conner, P.L.L.C. Houston, TX |

| **Other Interested Parties:** | **Counsel for Interested Parties:** |
| --- | --- |
| N/A | N/A |

/s/ Jason C. Rylander
Attorney of record for Center for Biological Diversity and Texas Campaign for the Environment

5

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Appellants, the Center for Biological Diversity and Texas Campaign for the Environment, respectfully request oral argument.

Without holding any hearings, the district court twice rejected the appellants' motions to intervene, first at the start of the case and again when it became clear that the federal defendants had changed position and were no longer intending to defend the Endangered Species Act listing rule for the lesser-prairie chicken. Over appellants' objections, the court then granted the federal defendants' request to remand the rule *with vacatur*, without oral argument or decision on the merits.

The district court's standard for intervention was impermissibly high and deprived the parties with the greatest interest in maintaining the listing of any opportunity to object. In addition, the court's decision to vacate the listing rule without a ruling on the merits contravenes a recent Supreme Court ruling and other pertinent precedents. These issues are worthy of hearing. Appellants have never had their day in court and respectfully submit that oral argument will significantly aid the Court's adjudication of this case.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...........................................1

STATEMENT REGARDING ORAL ARGUMENT .................................6

TABLE OF CONTENTS ..............................................................................7

TABLE OF AUTHORITIES .........................................................................8

JURISDICTIONAL STATEMENT ............................................................12

STATEMENT OF THE ISSUES .................................................................12

STATEMENT OF THE CASE ....................................................................13

   I.   Factual Background ...........................................................................13

   II.   Legal Standard ...............................................................................17

       1.   Rule 24 Intervention ...............................................................17

       2.   The Administrative Procedure Act........................................19

       3.   The Endangered Species Act .................................................19

SUMMARY OF THE ARGUMENT ..........................................................22

ARGUMENT...............................................................................................28

   I.   The District Court Improperly Denied Conservation Groups'
Motion to Intervene ...........................................................................28

       1.   Standard of Review ................................................................28

       2.   Argument.................................................................................29

   II.   The District Court Erred in Granting Remand With Vacatur ....34

       1.   Standard of Review ................................................................34

       2.   Argument.................................................................................35

CONCLUSION ...........................................................................................50

CERTIFICATE OF SERVICE.....................................................................51

CERTIFICATE OF COMPLIANCE ...........................................................53

# TABLE OF AUTHORITIES

**Cases**

*Alaska Wildlife All. v. Haaland,*
   2022 U.S. Dist. LEXIS 88218 (D. Alaska May 17, 2022)......................39

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ........................................................36

*Brumfield v. Dodd,*
   749 F.3d 339 (5th Cir. 2014) ..........................................................29

*Carpenters Indus. Council v. Salazar,*
   734 F. Supp. 2d 126 (D.D.C. 2010) ............................................35, 40

*Ctr. for Biological Diversity v. Haaland,*
   641 F. Supp. 3d 835 (N.D. Cal. 2022) ..............................................40

*Data Mktg. P'ship, LP v. United States Dep't of Lab.,*
   45 F.4th 846 (5th Cir. 2022) ..........................................................34

*Deanda v. Becerra,*
   96 F.4th 750 (5th Cir. 2024)...........................................................34

*Doe #1 v. Glickman,*
   256 F.3d 371 (5th Cir. 2001) ..........................................................18

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) ......................................................14, 28

*Entergy Gulf States Louisiana, LLC v. U.S. EPA,*
   817 F.3d 198 (5th Cir. 2016) ................................................17, 18, 32

*Friends of Animals v. Williams,*
   628 F. Supp. 3d 71 (D.D.C. 2022) ...................................................40

*Frito-Lay, Inc. v. U.S. Dep't of Lab.,*
   20 F. Supp. 3d 548 (N.D. Tex. 2014)...........................................40, 47

*Illinois v. Wheeler (In re Clean Water Act Rulemaking),*
   60 F.4th 583 (9th Cir. 2023)......................................................37, 38

*In re Clean Water Act Rulemaking,*
   568 F. Supp. 3d 1013 (N.D. Cal. 2021) .............................................36

*In re Lease Oil Antitrust Litig.*,
570 F.3d 244 (5th Cir. 2009) ................................................................ 17

*In re Wash. Cattlemen's Ass'n*,
2022 U.S. App. LEXIS 26415 (9th Cir. Sept. 21, 2022) ....................... 39

*Int'l Union, United Mine Workers v. Fed. Mine Safety & Health Admin.*,
920 F.2d 960 (D.C. Cir. 1990) .............................................................. 47

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ................................................... 17, 18, 33

*Louisiana v. Am. Rivers*,
142 S. Ct. 1347 (2022) ....................................... 15, 25, 27, 35, 37, 41, 42

*McDonald v. E.J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) .............................................................. 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................ 19

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
145 S. Ct. 2658 (2025) ................................................................... 37, 41

*Nat'l Parks Conservation Ass'n v. Salazar*,
660 F. Supp. 2d 3 (D.D.C. 2009) .................................................... 35, 40

*Pasqua Yaqui Tribe v. U.S. EPA*,
557 F. Supp. 3d 949 (D. Ariz. 2021) ................................................... 38

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) ................................................................ 29

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ................................................................ 18

*Sierra Club v. United States EPA*,
60 F.4th 1008 (6th Cir. 2023) .............................................................. 40

*State of Texas v. Haaland*,
No. 7:24-cv-00233 (W.D. Tex. Nov. 26, 2025) .................................... 33

*Texas v. Biden*,
20 F.4th 928 (5th Cir. 2021) ................................................................ 36

9

*Texas v. United States EPA,*
    122 F. 4th 1008 (5th Cir. 2024)...................................................26, 36, 43

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) .......................................17, 18, 29, 32, 33

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ...................................................................14, 18

*United States v. Texas,*
    144 F.4th 632 (5th Cir. 2025)...............................................................35

## Statutes

5 U.S.C. § 702 ...........................................................................................19

5 U.S.C. § 706(2) .................................................................................26, 37

5 U.S.C. § 706(2)(A) .............................................................................19, 35

16 U.S.C. § 1532(16) ...............................................................................20

16 U.S.C. § 1532(20) ...............................................................................20

16 U.S.C. § 1532(6) .................................................................................20

16 U.S.C. § 1533(a)(1).........................................................................20, 21

16 U.S.C. § 1533(b)(1)(A)..........................................................................22

28 U.S.C. § 1291.......................................................................................12

## Regulations

50 C.F.R. § 402.01(b) (2025) ...................................................................20

50 C.F.R. § 424.11(b) ...............................................................................22

## Rules

Fed. R. Civ. P. 24 ..............................................................................13, 17

10

**Federal Register**

Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4,722 (Feb. 7, 1996) ................................................................... 20, 21

Endangered and Threatened Wildlife and Plants; Lesser Prairie-Chicken; Threatened Status With Section 4(d) Rule for the Northern Distinct Population Segment and Endangered Status for the Southern Distinct Population Segment, 87 Fed. Reg. 72,674 (Nov. 25, 2022) .......................................................... 13, 45, 46

**Other Authorities**

Jim Wedeking, *Court's Vacatur of Navigable Waters Rule Introduces New Level of Gamesmanship into Administrative Law*, Washington Legal Found. (Sept. 2021) ................................................... 42

Jim Wedeking, *Legal Pulse: Ninth Circuit Quashes Practice of Vacating Rulemakings Without Finding Them Unlawful*, Wash. Legal Found. (April 4, 2023) .................................................................... 39

U.S. EPA, *Administrator Pruitt Issues Directive to End EPA "Sue & Settle"* (Oct. 16, 2017) ......................................................... 24

## JURISDICTIONAL STATEMENT

The Center for Biological Diversity and Texas Campaign for the Environment ("conservation groups") appeal the district court's August 12, 2025, decision denying their motion to intervene and granting the parties' joint motion to remand and vacate the lesser prairie-chicken Endangered Species Act listing rule without a decision on the merits. Plaintiffs filed a timely notice of appeal. This Court's appellate jurisdiction to review the district court's final order arises from 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States…").

## STATEMENT OF THE ISSUES

1. Did the district court err when it denied the conservation groups' motion to intervene to defend a final rule listing the lesser-prairie chicken under the federal Endangered Species Act when, two years into the litigation, the federal defendants switched position and abandoned defense of the rule, contrary to the proposed intervenors' interests?

2. Did the district court err in granting the parties' motion to remand and vacate the final rule without first issuing a decision on the merits, in contravention of Supreme Court precedent and the Administrative Procedure Act?

## STATEMENT OF THE CASE

### I.    Factual Background

The Center for Biological Diversity has worked for decades to obtain federal protection for the lesser prairie chicken, including filing the 2016 listing petition that led to the decision at the root of this case. After years of careful consideration, and deadline-forcing litigation by the Center, the U.S. Fish and Wildlife Service published a final rule listing the lesser prairie chicken as endangered in the southern portion of its range and threatened in the northern portion. 87 Fed. Reg. 72,674 (Nov. 25, 2022). Several states and industry groups sued to overturn the Endangered Species Act listing. In response, the Center, now joined by Texas Campaign for the Environment, promptly filed a motion to intervene under Federal Rule of Civil Procedure 24. ROA.1263. The district court denied the motion. ROA.1466. Although the Supreme Court has held that the burden of establishing inadequate

13

representation is "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), and the Center had been compelled to sue the government to obtain the species' listing, the district court held that the conservation groups were not entitled to intervene (either as of right or on a permissive basis) on the grounds that then the government and proposed intervenors had "the same ultimate objective" to defend the listing. ROA.1472 (citing *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)).

Following the change in administrations, and just before summary judgment briefing was scheduled to begin, the parties requested stays of the litigation to pursue settlement talks. ROA.4448-4452, 4454-4458. Because any settlement of the case, particularly one that vacated the ruling, would directly contradict the interests of the conservation groups, the groups immediately filed a renewed motion to intervene. The groups explained that the rationale previously provided by the court for denying intervention, whatever its merits might have previously been, no longer applied if settlement was now being pursued without their involvement. ROA.4460-4471.

14

The government then moved for a voluntary remand *with vacatur*, i.e., the government did not merely seek to remand for another opportunity to consider the listing decision but, rather, to unilaterally have that decision wiped off the books without any merits briefing or resolution by the district court, and without any involvement whatsoever by the conservation groups that had long advocated for, and benefitted from, the listing. ROA.4526-4538. The government claimed that, following the change in administrations, it had belatedly discovered a "fundamental" error in the FWS's listing decision, namely, that it failed to consider the significance of the 95-mile gap between the northern and southern distinct population segments. ROA.4539-4547.

While their renewed intervention motion was pending, the conservation groups filed an opposition to the motion for remand and vacatur. ROA.5869. The response pointed to recent Supreme Court precedent indicating that courts should not ordinarily vacate agency actions in the absence of a judicial finding of illegality following briefing on the merits. ROA.5869-5884 (*Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022) (mem.) (granting application for stay of district court pre-merits vacatur order)). In addition, the groups disputed that any alleged error

15

in the listing rule existed and whether, even if such an error existed, it warranted vacatur in addition to remand for more agency deliberation.

But the district court denied conservation groups' motion to intervene, albeit on an entirely different rationale than the first denial. The court did not suggest that the government adequately represented the groups (which obviously it no longer did) but, rather, that they were now *too late* to seek party status—in practical effect, the *opposite of the* earlier ruling that the groups' intervention was *premature* because they could not demonstrate a divergence of interests at the outset of the litigation. ROA.6199-6201. The court then granted the government's motion to vacate without examining the administrative record, considering summary judgment briefing, issuing a ruling on the merits or granting party status to the only groups with a continued interest in defending the listing.

Conservation groups now appeal both the Catch-22 ruling on intervention as well as the district court's summary vacatur of a final rule adopted following public notice and comment rulemaking.

## II.   Legal Standard

### 1. Rule 24 Intervention

Conservation groups sought intervention of right under Rule 24(a), and alternatively, permissive intervention under Rule 24(b). Fed. R. Civ. P. 24. In the Fifth Circuit, intervention of right under Rule 24(a) requires that:

> (1) The application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Movants have the burden to establish the right to intervene. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). However, the rule "'is to be liberally construed" with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States Louisiana, LLC v. U.S. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009)). Courts are instructed to permit intervention "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.

1994) (quoting *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970) (citation omitted)).

The burden to show that the existing parties do not adequately represent the potential intervenors' interest is minimal and does not require absolute certainty. *Doe #1 v. Glickman,* 256 F.3d 371, 380 (5th Cir. 2001); *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). But the Fifth Circuit applies a presumption that representation is adequate when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Entergy Gulf*, 817 F.3d at 203 (citations omitted). The presumption can be rebutted if the intervenor specifies "the particular ways in which their interests diverge from the party's and then identify the particular ways in which these divergent interests have impacted the litigation." *Id.* at 204 (quoting *Texas*, 805 F.3d at 663). Put another way, a proposed intervenor may "establish an adversity of interest if 'its interests diverge from the putative representative's interests in a manner germane to the case.'" *La Union del Pueblo Entero*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 662).

18

## 2. The Administrative Procedure Act

The APA gives any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," the right to federal judicial review. 5 U.S.C. § 702. A Court must "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). An agency acts arbitrarily if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## 3. The Endangered Species Act

To the extent this court reviews whether the district court improperly vacated the listing without resolving whether the U.S. Fish and Wildlife Service ("Service" or "FWS") in fact committed a fundamental error when it considered what entity might qualify for

19

listing under the ESA, a brief recitation of the statute's listing standards is provided here.

Protection for terrestrial species begins when the Secretary of the Interior ("Secretary"), acting through the U.S. Fish & Wildlife Service ("FWS" or "Service"), determines a species is "endangered" or "threatened." 16 U.S.C. § 1533(a)(1); 50 C.F.R. § 402.01(b) (2025). A species is "threatened" when it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," 16 U.S.C. § 1532(20), and "endangered" when it is "in danger of extinction throughout all or a significant portion of its range," *id.* § 1532(6). Under the ESA, a "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

Because Congress did not define "distinct population segment" and it is not a recognized scientific term, the Service developed a "Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act," 61 Fed. Reg. 4,722 (Feb. 7, 1996) ("DPS Policy"). To qualify as a "distinct population segment," a

population must be both discrete and significant. *Id.* at 4725. A population is "discrete" if it is "markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors" or it is "delimited by international governmental boundaries[.]" *Id.* A population is "significant" where it persists in an unusual ecological setting; its loss would result in a significant gap in the range of the taxon; it represents the only surviving natural occurrence of the taxon that is more abundant elsewhere; or where the population segment differs markedly from other populations of the same species due to unique genetic characteristics. *Id.*

Assuming a listable entity, the Service then evaluates five statutory factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must make timely listing determinations "*solely* on the basis of the best available

scientific and commercial information regarding a species' status." 50 C.F.R. § 424.11(b) (2025) (emphasis added); *see also* 16 U.S.C. § 1533(b)(1)(A).

## SUMMARY OF THE ARGUMENT

Conservation groups sought party status to protect their longstanding, indisputable interests in the ESA listing at issue, including so that they could avoid exactly what ultimately happened in this case: a "sue and settle" scenario in which the federal government reversed its policy position, sought to bypass the ordinary process of notice and comment rulemaking, and convinced a court to simply vacate, without even ruling on the merits, a final regulation for which the conservation groups had advocated for many years. The result? An imperiled species that has been considered for an Endangered Species Act listing for decades has now been summarily stripped of any federal protection to the detriment of both the species and the organizations deprived of even the opportunity to gain party status and resist that outcome. This appeal therefore poses two interrelated questions: whether intervention was improperly denied and, if so, whether the

district court improperly vacated a federal regulation without a ruling on the merits. The answer to both questions is yes.

At the outset of the case, conservation groups filed a motion to intervene to protect their longstanding interests in the protection of the lesser-prairie chicken. It is often the case that environmental groups, with their deep expertise in science and law, bring important perspectives and arguments to these cases that can aid courts in their resolution of the case. But the district court denied the original motion on the grounds that the groups could not demonstrate that the government, at that time, did not have the same ultimate objective in defending the listing decision.

When the conservation groups renewed their request for intervention at the time they believed they had sufficient information to establish that the government no longer had the same objective—i.e., after the Trump administration signaled its intent to pursue settlement or otherwise abandon its defense of the listing decision—the district court again denied intervention. Thus, apart from whether the district court was in error in denying the original motion to intervene based on

23

the initial alignment of the parties, the court did abuse its discretion in issuing the second denial.

Having previously met all other factors for intervention, when conservation groups demonstrated they could no longer count on the government to represent their interests, the district court should have found that they satisfied the standards for intervention of right. Under these circumstances, the denial is an abuse of discretion and at odds with the notion that Rule 24 is to be "liberally construed" in favor of those who have a concrete stake in the resolution of litigation—as is plainly the case with the conservation groups here.

Intervention is particularly important in cases like this because of the ease with which the legal system can be manipulated if, upon a shift of administrations, federal agencies can abruptly switch positions and get federal courts to vacate duly enacted regulations without even a ruling on their legality. This end run around basic administrative law requirements has been recognized and decried across the political spectrum as improper "sue and settle" tactics.[1] That is why the

---

[1] *See, e.g.*, U.S. EPA, *Administrator Pruitt Issues Directive to End EPA "Sue & Settle"* (Oct. 16, 2017), *available at* https://www.epa.gov/archive/epa/newsreleases/administrator-pruitt-issues-

Supreme Court and other circuits recently limited the ability of federal courts to do exactly what occurred here: vacate duly enacted regulations, promulgated following public notice and comment, without a ruling on the merits. *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022) (mem.) (granting application for stay of district court pre-merits vacatur order).

Indeed, the situation is even more unfair and untoward here, where the district court refused to allow intervention by the very entities who advocated for and benefitted from the now-discarded regulation and would (if intervention were granted) be the only parties who could continue to argue for why the purported "error" that was used to justify vacatur was illusory and, in any case, could not warrant vacatur of a rule needed to safeguard a highly imperiled species.

Under the Administrative Procedure Act and principles of administrative law, federal agencies can alter or repeal regulations only by completing a new rulemaking with appropriate notice and

---

directive-end-epa-sue-settle.html ("The days of regulation through litigation are over," said EPA Administrator Scott Pruitt. "We will no longer go behind closed doors and use consent decrees and settlement agreements to resolve lawsuits filed against the Agency by special interest groups where doing so would circumvent the regulatory process set forth by Congress.").

opportunity for public comment. The APA requires that rules be "set aside" when "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The district court made no such finding in this case.

While there may be narrow circumstances where confession of a serious procedural or substantive mistake warrants remand with vacatur, *see Texas v. United States EPA*, 122 F. 4th 1008, 1009 (5th Cir. 2024) (per curiam), that is not this case. The Service's newly articulated position that the rule was fashioned in error is a factual issue that conservation groups vehemently dispute. But the district court did not consider the groups' objections and made no attempt to understand how the listing rule was developed.

Without any review of the administrative record, the district court simply accepted the Service's assertion and vacated the ruling. Where, as here, the claimed error is disputed by would-be intervenors, it is incumbent on district courts to consider the record in the case and make a proper ruling on the merits before vacating the rule. The district court failed to do that.

26

If this decision is allowed to stand, any federal rule could be challenged by an industry or advocacy group (of any ideological stripe) and be stripped from the books by judicial decree whenever a new administration decides to no longer defend it. In asserting that the Service's vacatur request comports with the APA, the district court misapprehends its role. Having made no actual finding of impropriety under APA, the court has no power to set aside the rule. As explained below and as other courts have recognized, that is the clear teaching of the Supreme Court's decision in *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022).

To be clear, nothing prevents federal defendants from agreeing to, or requesting, a voluntary remand *without* vacatur. Agencies do so all the time, and when such agreement or request is made in good faith, it should generally be granted so that a new administration can reassess the validity or wisdom (from its vantage point) of the action. But a proper remand requires due administrative process and an opportunity for the educated and affected public to provide comment *before* a formal regulation is changed or rescinded. The resulting final rule, if changed, can then be challenged on its merits.

Indeed, had the Service agreed to leave the rule in place while it reviewed the decision and any new evidence of the bird's status, conservation groups would not be bringing this appeal. But that is not what occurred here. Instead, by asking for vacatur of a duly promulgated rule, the government sought an impermissible shortcut around rules designed to safeguard the interests of all parties who participate in administrative and legal proceedings. Today, it is the interests of the conservation groups that have been disserved in this manner. On another day, in another case, it could be the interests of Texas (as was true in *Louisiana v. American Rivers* itself) or industry groups. But the rules of the road should be fair and legally sound for all. That basic principle necessitates reversal of the district court's intervention denial as well as its order granting remand with vacatur.

## ARGUMENT

### I.    The District Court Improperly Denied Conservation Groups' Motion to Intervene

### 1. Standard of Review

"A ruling denying intervention of right is reviewed *de novo*." *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir. 1996) (citation omitted). When a district court denies a motion to intervene as

"untimely" and explains its reasoning, the decision is reviewed for abuse of discretion. *Rotstain v. Mendez,* 986 F.3d 931, 936 (5th Cir. 2021).

### 2. Argument

The district court erred in denying conservation groups' motion to intervene, and in so doing, set an impermissibly high bar for would-be intervenors in similar cases. As both the Supreme Court and this Circuit have recognized, "Rule 24 is to be liberally construed" in favor of intervention. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (citing *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Instead, the district court denied the conservation groups' first motion on the grounds that they could not demonstrate that the government would not adequately represent their interests, ROA.1465-1474, but when the groups *could* make such a demonstration, the court denied their renewed motion as untimely. ROA.6200-6201. And even though the government was no longer defending the rule, the district court suggested, paradoxically, the groups somehow *still* failed to rebut the presumption of adequate representation. ROA.6200, n.71.

Conservation groups filed an unopposed motion to intervene at the outset of the case, and the district court found their motion met all the

requirements for intervention but one. ROA.1465-1474. Specifically, the court held the motion was timely filed (ROA.1470), the groups had an interest in the action (ROA.1471), and an adverse ruling would harm the groups' interest (ROA.1471-1472). But despite recognizing that "inadequacy enjoys a minimal burden" the district court held that conservation groups' interests had not demonstrated their acknowledged interests were inadequately represented and denied both intervention of right and permissive intervention on that sole basis. ROA.1472-1473.[2]

Notably, the court also recognized that "a movant may rebut the same-objective presumption by showing adversity of interest in a manner germane to the case." ROA.1472. But when the conservation groups came back and did just that after the new administration signaled that it was considering settlement, the court denied the motion on the grounds that the request was now untimely.

---

[2] Stating, without further explanation or factual basis, that "intervention will result in duplication and delay of the case's resolution," the district court suggested the groups could instead file an amicus brief "of no more than twenty pages." ROA.1473. Ironically, the district court eventually denied all proposed amicus briefs in the case and does not appear to have considered conservation groups' arguments in opposition to the federal defendants' request for remand with vacatur.

The court's single paragraph explaining that anomalous result contains both factual errors and logical inconsistencies. First, at no point did conservation groups seek to "stall summary judgment briefing days before it began." ROA.6200. In fact, conservation groups were fully prepared to file a brief on the merits as intervenors (or amicus curiae) on the then-current schedule, and nothing in the record suggests otherwise.

Second, the district court expressed concern that allowing intervention would offer "a dissenting voice in the mix." ROA.6200. But "dissenting" to the government's about-face and proposed resolution was exactly what the renewed intervention request sought to (legitimately) accomplish. The district court recognized as much—albeit in a footnote—that conservation groups sought to argue that "this court cannot grant pre-merits vacatur on voluntary remand." ROA.6200. Indeed, that was precisely the point of intervention (one that the groups will argue here in the next section of this brief) and why the groups could no longer count on the government to represent them. Having recognized that the groups' interests were no longer aligned with the

federal defendants, the court's denial of their renewed motion was an abuse of discretion.

The district court's suggestion that, having had their initial request denied, conservation groups should have sought to intervene immediately upon the change of administrations is difficult to square with the judge's prior order or this court's precedent. ROA.6200, n.71. To be sure, both President Trump's executive orders and the Department of the Interior's edicts in the first 100 days of the new administration signaled a different approach to environmental and energy issues as a general matter. But this Circuit's precedent would seem to require more than a change in administrations; would-be intervenors must specify "the *particular ways* in which their interests diverge from the party's and then identify the particular ways in which these divergent interests have impacted the litigation." *Entergy Gulf*, 817 F.3d at 204 (emphasis added) (quoting *Texas*, 805 F.3d at 663).

Conservation groups had valid reasons to believe the district court would have again denied a motion to intervene early in the new administration for the precise reason that there was not yet a sufficiently concrete basis to conclude "'its interests diverge[d] from the

putative representative's interests in a manner *germane to the case.*'" *La Union del Pueblo Entero*, 29 F.4th at 308 (emphasis added) (quoting, *Texas*, 805 F.3d at 662). Moreover, conservation groups had been given no specific information that the Department of Justice was *not* going to file a summary judgment brief in defense of the rule—until it sought to stay the case and represented to the court that settlement talks were underway. And that is when conservation groups promptly renewed their request for intervention.

On the question of timeliness, the district court's approach put conservation groups in a difficult, if not impossible, position—left to guess exactly what time frame for seeking party status would satisfy the district court. Either too early or too late, never just right, this Goldilocks approach to intervention is inconsistent with this Court's precedent and the intent of Rule 24 to afford liberal intervention for vitally interested parties, as the conservation groups are here.[3]

---

[3] The impacts of this approach extend beyond this case. On November 26, 2025, Judge Counts also denied the Center's motion to intervene in a case challenging the ESA listing of the dunes sagebrush lizard. Order, *State of Texas v. Haaland*, No. 7:24-cv-00233 (W.D. Tex. Nov. 26, 2025), ECF 30. Once again, the court found that the government adequately represented the Center's interests, even though the parties had stayed litigation since June 7, 2025, to pursue settlement talks that are plainly contrary to the Center's goals. The court's denial requires the Center to point to "*specific conduct*" by

33

The federal defendants changed position and requested vacatur of the very rule conservation groups petitioned for and intended to defend. The district court's failure to recognize this as a proper time to seek intervention based on patently inadequate representation is an error. Conservation groups' first attempt to intervene was deemed too early. Then, when it became apparent that the groups' interests would not be represented, the court deemed it too late. This is unfair, unjust, and contrary to the intention of Rule 24 and the "minimal burden" that intervenors should meet to protect their concrete interests.

## II.    The District Court Erred in Granting Remand With Vacatur

### 1. Standard of Review

Vacatur of a regulation under the APA is reviewed for abuse of discretion. *Deanda v. Becerra*, 96 F.4th 750, 755 (5th Cir. 2024) (*Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 855 (5th Cir. 2022)). In addition, the court's failure to even consider the

---

defendants that evidence divergence of interests, *id.* at 7, but here the Center did exactly that. The Center's second motion to intervene came when the "specific conduct"—the government's change of position—was evident, and that was deemed too late. These cases raise the question whether there is any time when a group like the Center can appropriately intervene to defend its species conservation interests.

administrative record in the case, considering no factual findings beyond those proffered by the Service is a clear error. "A district court abuses its discretion when it bases its decision on errors of law or clearly erroneous factual determinations. We review conclusions of law *de novo* and findings of fact for clear error." *United States v. Texas*, 144 F.4th 632, 658 (5th Cir. 2025).

### 2. Argument

The district court lacked the authority to vacate the lesser-prairie chicken listing rule without a ruling on the merits. The APA requires that courts "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). So, while remand with vacatur is the ordinary remedy for an adjudicated violation of the APA, vacatur without a ruling on the merits has been cast in doubt by the Supreme Court and deemed inappropriate in multiple circuits under a growing body of case law. *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009).

At a minimum, the district court should have considered the *Allied Signal* factors before granting vacatur. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993); *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021) (vacated on other grounds) (noting that the Fifth Circuit applies essentially "the same test" as *Allied-Signal*). But the court failed to analyze those factors in any depth, relying instead on a misreading of Fifth Circuit precedent on agency concessions of error. ROA.6197 (citing *Texas v. United States EPA*, 122 F. 4th 1008, 1009 (5th Cir. 2024) (per curiam)).

First, the Supreme Court and multiple lower courts have seriously questioned or rejected the notion of vacatur without a merits decision. When the Biden administration's EPA moved for remand of a Clean Water Act rule, the district court—after noting a "split in authority" on its ability to vacate without reaching the merits—applied the *Allied-Signal* factors and vacated the rule. *In re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013, 1022, 1025-28 (N.D. Cal. 2021), *stay granted sub nom. Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022). The Supreme Court, however, stayed this decision pending appeal by intervenors, sending a strong signal that pre-merits vacatur is improper. *Louisiana*

36

*v. Am. Rivers*, 142 S. Ct. at 1348. As discussed further below, the court's issuance of a stay of a pre-merits vacatur ruling in *Louisiana* is precedent. Indeed, Justices Gorsuch and Kavanaugh recently noted that while stay determinations may not be full decisions, they reflect the Court's likely view of the merits. "Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n,* 145 S. Ct. 2658, 2663 (2025) (Gorsuch & Kavanagh, JJ. concurring).

On review, the Ninth Circuit, accepting the clear import of the Supreme Court's stay, then concluded that the APA only permits "courts to 'set aside' those actions 'found to be,' for example, 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Illinois v. Wheeler (In re Clean Water Act Rulemaking)*, 60 F.4th 583, 594-95 (9th Cir. 2023) (quoting 5 U.S.C. § 706(2)). The court held that "the APA not only expressly explains *when* a court may set aside agency action (upon a holding of unlawfulness), it also implicitly explains when a court *cannot* (without a holding of unlawfulness)." *Id.* at 595.

The ruling makes sense because much gamesmanship could result if courts can simply vacate rules on agency request. As the Ninth Circuit recognized:

> Endorsing the practice of voluntary-remand-with-vacatur where there is no merits ruling would essentially turn courts into the accomplices of agencies seeking to avoid this statutory requirement, as it would allow agencies to repeal a rule merely by requesting a remand with vacatur in court. Because Congress set forth in the APA a detailed process for repealing rules, the court of appeals could not endorse a judicial practice that would help agencies circumvent that process.

*Id.* The Ninth Circuit's decision in that case also effectively reversed a prior in-circuit decision related to a different Trump administration Clean Water Act rule. In *Pasqua Yaqui Tribe v. U.S. EPA*, the district court treated EPA's statements of "concern" over the rule as a confession that the rule contained serious errors and vacated it outright. 557 F. Supp. 3d 949 (D. Ariz. 2021). EPA accepted the ruling and did not appeal. At the time, a conservative legal scholar expressed concern that the *Pasqua Yaqui* decision created "a tremendous administrative law shortcut" for incoming presidential administrations attempting to repeal or modify a prior administration's regulation:

> Instead of spending years promulgating new rulemakings to rescind the old, ensuring that they satisfy the legal

38

requirements of both the underlying authorizing statutes and federal administrative law, and then defending them from legal challenges, an agency can simply acquiesce to judicial vacatur by essentially confessing error in a motion to remand.

Jim Wedeking, *Legal Pulse: Ninth Circuit Quashes Practice of Vacating Rulemakings Without Finding Them Unlawful*, Wash. Legal Found. (April 4, 2023).[4]

Subsequent court decisions have reached similar conclusions. *See, e.g., In re Wash. Cattlemen's Ass'n*, 2022 U.S. App. LEXIS 26415, at *5 (9th Cir. Sept. 21, 2022) (finding "[i]t is apparent that the district court . . . clearly erred in vacating the 2019 Rules without ruling on their legal validity"); *Alaska Wildlife All. v. Haaland*, 2022 U.S. Dist. LEXIS 88218, at *8 (D. Alaska May 17, 2022) ("Given the Supreme Court's recent stay order and the dearth of Ninth Circuit authority on the matter, the Court is not persuaded that it has the authority to vacate the challenged agency action absent a merits determination."); *Ctr. for Biological Diversity v. Haaland*, 641 F. Supp. 3d 835, 842 (N.D. Cal.

---

[4] *Available at* https://www.wlf.org/2023/04/04/wlf-legal-pulse/ninth-circuit-quashes-practice-of-vacating-rulemakings-without-finding-them-unlawful/#easy-footnote-bottom-16-19766.

2022) ("The Court concludes that it cannot grant pre-merits vacatur on voluntary remand.").

The Sixth Circuit in *Sierra Club v. United States EPA* noted, "multiple courts in the United States district court for the District of Columbia—where much litigation concerning federal agencies takes place—have concluded that a federal court cannot grant a request for vacatur without a determination of the merits." 60 F.4th 1008, 1022 (6th Cir. 2023) (citing *Carpenters Indus. Council,* 734 F. Supp. at 135; *Nat'l Parks Conservation Ass'n*, 660 F. Supp. 2d at 4-5; *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 80 (D.D.C. 2022) (collecting additional cases)).

Lower courts in this circuit have taken this same approach. *See, e.g., Frito-Lay, Inc. v. U.S. Dep't of Lab.*, 20 F. Supp. 3d 548, 557 (N.D. Tex. 2014) ("Without a finding that the Final Order is arbitrary and capricious, or otherwise unlawful, a ruling vacating or setting aside the Final Order is premature.") (citing *Carpenters Indus. Council*, 734 F. Supp. 2d at 135).

Indeed, the State of Texas itself was a party to *Louisiana v. American Rivers* and urged the Supreme Court to stay the lower court's

ruling out of concern that a request for voluntary remand allows an agency to unilaterally undo a regulation in contravention of the APA's notice-and-comment requirements. In that case, the State argued:

> "'Section 4 of the APA prescribes a three-step procedure for [the] so-called 'notice-and-comment rulemaking.'" *Perez*, 575 U.S. at 95–96 (i.e., notice, a public comment period, and a concise general statement of the rule's basis and purpose). Any contrary view would permit agencies to wipe away rules of a prior Administration, supplanting Congress's carefully laid plan for the repeal of regulations, based only upon policy preferences and not "constitutional prescriptions or [otherwise] rooted in the language of the APA itself." Antonin Scalia, *Vermont Yankee: The APA, The D.C. Circuit, and The Supreme Court*, 1978 Sup. Ct. Rev. 345, 363.

Appl. for Stay Pending Appeal, *Louisiana v. Am. Rivers*, No. 21A539 (U.S. March 21, 2022), at *19-20 (cleaned up). The Supreme Court's decision in *Louisiana* likely reflects its view that the state of Texas was correct in its application for stay. As Justices Gorsuch and Kavanaugh noted, and the Ninth Circuit understood, even for decisions granting only interim relief on the emergency docket "when [the Supreme] Court issues a decision, it constitutes a precedent that commands respect in lower courts." *Nat'l Insts. of Health,* 145 S. Ct. at 2663.

Now that the shoe is on the other foot, and vacatur of the lesser-prairie chicken is in its self-interest, the state of Texas appears to have

abandoned its concern for the stability of administrative law. That is

unfortunate, because administrations will continue to change, and the

prospect of agencies "discovering errors" and asking courts to simply

avoid the APA's statutory rulemaking process looms large for wide

swaths of regulations. As the Washington Legal Foundation recognized:

> How much easier it would be for a new administration to simply wait for a friendly challenge to a predecessor's rulemaking and request a voluntary remand. After offering up some vague statements about the rule's questionable legality and the need for reconsideration, the court can simply vacate the rulemaking. The agency could rescind a troublesome regulation in a matter of weeks. No detailed legal rationale, no public comments, no responses to those comments, no petitions for review, and more limited legal options for those who supported the rule. Viewing a request for voluntary remand as a tacit confession of error would provide a quick and easy method outside of the APA for agency action.

Jim Wedeking, *Court's Vacatur of Navigable Waters Rule Introduces*

*New Level of Gamesmanship into Administrative Law*, Washington

Legal Found. at 16 (Sept. 2021).[5] In such a case, the only recourse for

rule supporters would be intervention and appeal, as occurred in

*Louisiana v. American Rivers*. 142 S. Ct. 1347 (2022). But, despite

---

[5] *Available at* https://www.wlf.org/wp-content/uploads/2021/09/9-21WedekingWP.pdf.

having had the foresight to seek intervention here, conservation groups were not allowed to participate in this case.

The district court's omnibus order does not address the growing line of cases that recognize these limits on courts' equitable powers. The district court accepted the Service's concession of "error" at face value and did not consult the administrative record. The court did not issue a ruling on the merits or seriously analyze vacatur under *Allied Signal*. Rather, the court misread this circuit's precedent to conclude that "confessions of error require vacatur" and only cursorily considered the seriousness of the error and its disruptive consequences of vacatur. ROA.6196-6198.

This case is not at all like *Texas v. United States EPA*. 122 F.4th 1008, 1009 (5th Cir. 2024) (per curiam), which did not consider *Louisiana* or any of the precedents discussed above that disfavor pre-merits vacatur. As an initial matter, the parties there did not contest that EPA made a serious procedural misstep, which meant it could not explain or defend the rule in question because the necessary evidence did not exist in the record. *Id.* at 1009. The alleged error in this case is

very different and, in any case, does not meet the stringent standard for vacatur without full briefing based on an administrative record.

At minimum, the district court should have assessed the Service's claim that it identified a serious error in the listing rule against the rule itself and the administrative record. Instead, the court simply accepted as true the Service's self-serving conclusion in a post-hoc declaration that the "error [it] identified is foundational and cannot be resolved by remand alone." ROA.6198. But conservation groups explained in their opposition to the motion (which the district court disregarded because their intervention was denied) why both statements are false. ROA.5877-5882.

First, the Service's sole basis for claiming error—the Jacks Declaration— concedes that the Service re-evaluated the listing process only after the change in administration. ROA.4541 ¶ 5. Prior to the change of administration, the government was evidently fully prepared to defend the listing. The Service offers no compelling explanation for this about-face but for a change in political or policy orientation. As the Supreme Court's *Louisiana* decision and subsequent precedents suggest, that alone requires courts to apply a healthy dose of

skepticism, especially where, as here, the Service's newly asserted "concession" of error is belied by the record. But the district court's ruling does not address any of those cases.

The lesser-prairie chicken ruling was based on decades of careful consideration and was grounded in multiple lines of reasoning related both to geography and genetics. The Service's basis for dividing the four lesser prairie-chicken ecoregions into two distinct population segments was not predicated merely on whether the 95-mile gap in the range between the two populations was significant, as the Jacks Declaration suggests. ROA.4541 ¶ 5. The significance determination for each DPS was based on *both* documented genetic differences *and* that a significant gap in the range would occur if either population were lost, both of which the Service found independently justified its listing as a DPS. 87 Fed. Reg. 72,674, 72,681.

Even if the Service failed to adequately consider the significance of the space between population segments, which it did not (and which the DPS Policy does not require), the agency's newly discovered error overlooks that the agency relied on the *independent* criteria of marked differences in genetic characteristics to support the DPS. And that was,

45

according to the listing rule, an independently sufficient basis for finding the two populations significant. *Id.* at 72,680-81. Only after considering both the discreteness and significance of the two population segments does the Service conclude: "Therefore, under the Service's DPS Policy, we find that both the southern and northern segments of the lesser prairie-chicken are significant to the taxon as a whole." *Id.* at 72,681.

Had the district court reviewed the record or even held a hearing, it might have at least questioned whether the Jacks Declaration was in fact persuasive. But even if Jacks is correct that the Service omitted a piece of the DPS analysis, that does not necessarily change the listing result and certainly does not justify vacatur of a decision without a ruling on the merits. The genetic basis for the listing does not require further evaluation. On remand, the Service could conduct the allegedly missing geographic analysis and reach the exact same conclusion with respect to the listable entities under the ESA. That is precisely the kind of issue that can be resolved by remand alone, without putting a critically imperiled species at risk in some or all of its range. Neither the Jacks Declaration nor the district court explain why the Service is

46

"unable to correct this square one error without engaging in an entirely new analysis." ROA.6198.

Second, this Court's short per curiam decision in *Texas v. United States EPA* did not (and could not) establish a blanket rule that all confessions of error require vacatur, let alone without a ruling on the merits. Even apart from the Supreme Court's recent guidance on pre-merits vacatur, under *Allied Signal* "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" 988 F.2d at 150-51 (quoting *Int'l Union, United Mine Workers v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)).

Although the district court acknowledged that pre-merits vacatur of a final order may be premature "when the impact of that error is not agreed upon by the parties," it avoided the issue by denying conservation groups the status of intervenors. ROA.6196 (citing *Frito-Lay, Inc.*, 20 F. Supp. 3d at 557). As discussed here and in more depth in conservation groups' response and opposition to the government's

47

motion for remand, this was indeed a point of contention. ROA.5877-5882.

Far from "cover[ing] the bases," the district court's two paragraph discussion of the *Allied Signal* factors lacks any review of the administrative record, which belies the notion that the alleged error is so fundamental or serious as to require vacatur—particularly since the listing could have been defended on other grounds. ROA.6198. If in fact the FWS was required to "engage[] in an entirely new analysis," *id.*, it is highly unlikely that the Service could (or would assert it could) complete a new listing analysis by November 2026. Despite the ESA's mandatory deadlines, in practice, new species status assessments typically take years, even in administrations more favorable to endangered species protections. Now, should the current administration fail to act—and it is under no binding order to do so—conservation groups will be forced again to bring suit to enforce the ESA's deadlines concerning the 2016 petition or file a new petition that restarts the act's timelines.

The lesser-prairie chicken has waited more than 30 years for federal protection, and conservation groups have advocated for its

protection for most of that time, including by filing the listing petition that prompted the Service to list the species. The district court's reliance on voluntary conservation programs, which the Service itself found in the listing decision were inadequate to provide for the species' conservation and recovery, is insufficient to sustain the notion that there are no disruptive consequences to vacatur.

In sum, in granting vacatur without a ruling on the merits, the district court contravened the Supreme Court's clear instruction to lower courts in *Louisiana*—an instruction advocated for by the State of Texas in that case and understood by other courts in the aftermath of the Supreme Court's ruling. In addition, the district court failed to seriously scrutinize the Service's sudden change in position. The court did not review the administrative record or seriously consider would-be intervenors' record-based objections to the Service's assertions. The court failed to consider the seriousness of the alleged error and whether the rule could be reconsidered without vacatur. And the court simply dismissed the potential harms to the species (and its advocates) based on the Service's assertions that it will act quickly to reconsider the rule and that conservation plans already rejected as inadequate will suffice

49

in the interim. Both assertions require skepticism that the district court did not apply.

## CONCLUSION

This Court should reverse the district court's decision to deny the motions of the Center for Biological Diversity and Texas Campaign for the Environment to intervene in this case. The Court should further reverse the district court's decision to remand the lesser-prairie chicken rule with vacatur. To comply with administrative law standards and avoid political gamesmanship in circumstances such as these, the district court should be instructed to either order remand without vacatur or issue a ruling on the merits after review of the administrative record.

SUBMITTED BY:

/s/ Jason C. Rylander
Lauren A. Parker
1411 K Street NW, Suite 1300
Washington, DC 20005

Charles William Irvine
Irvine & Conner, P.L.L.C.
4709 Austin Street
Houston, TX 77004

## CERTIFICATE OF SERVICE

I certify that on December 3, 2025, the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in the case:

| | |
|---|---|
| Ms. Caitlyn Cook<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>150 M Street, N.E.<br>Washington, DC 20002 | Mr. Garry M. Gaskins II<br>Oklahoma Attorney General<br>for the State of Oklahoma - Solicitor General Unit<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 |
| Mr. David B. Goode<br>U.S. Attorney's Office<br>Western District of Texas<br>903 San Jacinto Boulevard<br>Austin, TX 78701 | Ms. Jennifer L. Lewis<br>Oklahoma Office of the Attorney General<br>313 NE 21st Street<br>Oklahoma City, OK 73105 |
| Ms. Emily Anne Polachek<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>5600 American Boulevard, W.<br>Suite 650<br>Bloomington, MN 55437 | Mr. Zachary Paul West<br>Oklahoma Attorney General<br>for the State of Oklahoma - Solicitor General Unit<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 |
| Mr. Jeffrey D. Kuhnhenn<br>Kelly Hart & Hallman, L.L.P.<br>500 W. Illinois Street<br>Suite 800<br>Midland, TX 79701 | Mr. Anthony J. Powell<br>Office of the Attorney General<br>for the State of Kansas<br>120 S.W. 10th Avenue<br>Topeka, KS 66612-1597 |
| Ms. Marianne Marsh Auld<br>Kelly, Hart & Hallman, L.L.P.<br>201 Main Street<br>Suite 2500<br>Fort Worth, TX 76102 | Mr. James Rodriguez<br>Kansas Attorney General's Office<br>120 SW 10th Avenue<br>Topeka, KS 66612 |

51

52

| | |
|---|---|
| Mrs. Caitlyn Hubbard<br>Kelly, Hart & Hallman, L.L.P.<br>201 Main Street<br>Suite 2500<br>Fort Worth, TX 76102 | Ms. Shelby Thompson<br>Office of the Attorney General of Texas<br>300 W. 15th Street<br>Austin, TX 78701 |
| Mr. Derek Montgomery<br>Kelly Hart & Hallman, L.L.P.<br>500 W. Illinois Street<br>Suite 800<br>Midland, TX 79701 | Ms. Brittany Erin Wright<br>Office of the Attorney General of Texas<br>300 W. 15th Street<br>Austin, TX 78701 |

/s/ Jason C. Rylander

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 7,590 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Jason C. Rylander