**No. 25-50747**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

State of Texas; Texas General Land Office; Texas Department of Agriculture; Railroad Commission of Texas; State of Kansas; State of Oklahoma,
*Plaintiffs-Appellees*,

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,
*Defendants-Appellees*,

v.

Center for Biological Diversity; Texas Campaign for the Environment,
*Movants-Appellants*.

(caption continued on inside cover)

Appeal from the United States District Court for the Western District of Texas
No. 7:23-cv-47 (Hon. David Counts, District Judge)

**BRIEF FOR FEDERAL DEFENDANTS-APPELLEES**

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT J. LUNDMAN
CHRISTOPHER ANDERSON
CAITLYN F. COOK
EMILY A. POLACHEK
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
5600 American Blvd. W., Suite 650
Bloomington, MN 55437
(202) 598-9344
emily.polachek3@usdoj.gov

Permian Basin Petroleum Association; National Cattlemen's Beef Association; Texas Cattle Feeders Association; Kansas Livestock Association; Oklahoma; Cattlemen's Association; New Mexico Cattle Growers Association, Kansas Independent Oil & Gas Association; Petroleum Alliance of Oklahoma,
*Plaintiffs-Appellees*,

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,
*Defendants-Appellees*,

v.

Center for Biological Diversity; Texas Campaign for the Environment,
*Movants-Appellants*.

Appeal from the United States District Court for the Western District of Texas
No. 7:23-cv-49 (Hon. David Counts, District Judge)

## CERTIFICATE OF INTERESTED PERSONS

No. 25-50747
*State of Texas, et al.*
*v.*
*United States Department of the Interior, et al.*

Under Circuit Rule 28.2.1, Federal Defendants-Appellees are governmental parties that need not furnish a certificate of interested persons.

s/ *Emily Polachek*
EMILY A. POLACHEK

Counsel for Federal Defendants-Appellees

**STATEMENT REGARDING ORAL ARGUMENT**

The Center for Biological Diversity and Texas Campaign for the Environment (collectively "CBD") appeal a district court's discretionary decision to deny CBD's two motions to intervene in litigation challenging the U.S. Fish & Wildlife Service's final rule identifying two distinct population segments of the lesser prairie-chicken as threatened and endangered under the Endangered Species Act. After the new administration reviewed the listing decision, the Service identified a fundamental error in its assessment of the two DPSs and sought voluntary remand and vacatur. CBD filed a motion to intervene on the eve of resolution, claiming it had known for months that the Service may no longer represent CBD's interests. The district court denied the intervention motion, explaining that it was untimely. The court also concluded that the Service's "concession points to serious error at the very foundation of its rule," ROA.6190, and granted the Service's motion to vacate and remand the listing rule. CBD's appeal from these decisions fails because (1) CBD did not demonstrate standing on appeal, (2) the district court did not abuse its discretion or otherwise err in denying the motions to intervene, and (3) the court's decision to grant equitable relief in the form of vacatur was proper. Appellees believe that oral argument is both appropriate and helpful to the Court in ensuring full deliberation of the issues presented.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................................. iii

TABLE OF AUTHORITIES ...........................................................................vi

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE...........................................................................2

    I.      Statutory and Regulatory Background .....................................................2

          A.      Endangered Species Act (ESA) .......................................................2

          B.      Administrative Procedure Act (APA).........................................4

    II.      Factual Background.....................................................................4

    III.      Proceedings Below .....................................................................6

SUMMARY OF ARGUMENT ...........................................................................10

ARGUMENT .............................................................................................11

    I.      This Court Lacks Jurisdiction Over the Appeal Because CBD Has Not Demonstrated Standing.................................................11

    II.      The District Court Did Not Abuse Its Discretion or Otherwise Err in Denying CBD's Motion to Intervene. .....................13

          A.      CBD Did Not Meet Its Burden of Overcoming the Presumption of Adequate Government Representation.........................................................................14

          B.      CBD's Second Motion to Intervene Was Untimely. ................15

C.     Permissive Intervention was Similarly
          Unwarranted. ...........................................................................17

III.    If the Court Reaches the Question, It Should Affirm the
        District Court's Order of Vacatur. .....................................................18

CONCLUSION .........................................................................................22

CERTIFICATE OF COMPLIANCE ...................................................................24

CERTIFICATE OF DIGITAL SUBMISSION ......................................................25

CERTIFICATE OF SERVICE ..........................................................................26

## TABLE OF AUTHORITIES

### Cases

*8fig, Inc. v. Stepup Funny, L.L.C.*,
135 F.4th 285 (5th Cir. 2025) ................................................................. 13

*Alsea Valley All. v. Dept. of Commerce*,
358 F.3d 1181 (9th Cir. 2004) ................................................................ 13

*Cal. Cmtys. Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) ................................................................. 21

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) .................................................................... 8

*Chamber of Com. v. SEC*,
88 F.4th 1115 (5th Cir. 2023) ................................................................ 21

*Chlorine Chemistry Council v. EPA*,
206 F.3d 1286 (D.C. Cir. 2000) ............................................................. 20

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ................................................................... 15

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
No. 24-5155, 2026 WL 478732 (D.C. Cir. Feb. 20, 2026) ..................... 13

*Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm.*
*of the Orleans Levee Dist.*,
493 F.3d 570 (5th Cir. 2007) ................................................................. 14

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ............................................................................... 11

*Hopwood v. Texas*,
21 F.3d 603 (5th Cir. 1994) ............................................................ 10, 14

*In re Clean Water Act Rulemaking*,
60 F.4th 583 (9th Cir. 2023) ................................................................. 20

*Louisiana v. American Rivers*,
142 S. Ct. 1347 (2022) ........................................................................... 20

*Louisiana v. Burgum*,
    132 F.4th 918 (5th Cir. 2025) .................................................................17

*Permian Basin Petroleum Ass'n v. Dep't of the Interior*,
    127 F. Supp. 3d 700 (W.D. Tex. 2015) ...........................................5

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ....................................................... 14, 15

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ...............................................................12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ....................................................... 13, 15

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009).................................................................................12

*Tex. Corn Producers v. EPA*,
    141 F.4th 687 (5th Cir. 2025) ...............................................................18

*Texas v. U.S. Envtl. Protection Agency*,
    122 F.4th 1008 (5th Cir. 2024) ................................................... 11, 20

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) .................................................................18

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) .................................................................14

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017).................................................................................11

*United States v. City of Chicago*,
    897 F.2d 243 (7th Cir. 1990) .................................................................16

*United States v. Covington Cnty. Sch. Dist.*,
    499 F.3d 464 (5th Cir. 2007) .................................................................16

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019)............................................................21

*Virginia House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019)................................................................. 10, 12

## Statutes

5 U.S.C. § 553 ..........................................................................................4
5 U.S.C. § 702 ..........................................................................................4
5 U.S.C. § 706(2)(A) ...................................................................... 4, 18, 19
16 U.S.C. § 1532(3) ..................................................................................2
16 U.S.C. § 1532(6) ..................................................................................2
16 U.S.C. § 1532(16) ................................................................................2
16 U.S.C. § 1532(20) ................................................................................2
16 U.S.C. § 1533 ......................................................................................2
16 U.S.C. § 1533(a)(1) ..............................................................................3
16 U.S.C. § 1533(b)(1)(A) .........................................................................4
16 U.S.C. § 1533(b)(3) ..............................................................................4
16 U.S.C. § 1533(b)(3)(B) .........................................................................5
16 U.S.C. § 1540 ......................................................................................1
28 U.S.C. § 1291 ............................................................................... 1, 13
28 U.S.C. § 1331 ......................................................................................1

## Rules

Fed. R. App. P. 4(a)(1)(B) .........................................................................1
Fed. R. Civ. P. 24(a)...................................................................... 6, 13, 15, 17
Fed. R. Civ. P. 24(b)(1)................................................................. 15, 17

## Regulations

61 Fed. Reg. 4722 (Feb. 7, 1996) ..............................................................3
79 Fed. Reg. 19,973 (Apr. 10, 2014) .........................................................5
86 Fed. Reg. 29,432 (June 1, 2021) ...........................................................5
87 Fed. Reg. 72,674 (Nov. 25, 2022) ............................................. 4, 5, 6, 21
91 Fed. Reg. 9474 (Feb. 26, 2026) ............................................................9
91 Fed. Reg. 9548 (Feb. 26, 2026) ............................................................9

## Other Authorities

U.S. Const. art. III, § 2..............................................................................11

**STATEMENT OF JURISDICTION**

(A)    The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 16 U.S.C. § 1540 because the underlying claims arose under the Endangered Species Act.  ROA.32, 432.

(B)    Although the district court entered a final judgment under 28 U.S.C. § 1291, this Court lacks jurisdiction because the putative intervenor-appellants have not demonstrated standing to appeal.  *See infra* Argument Part I.

(C)    Final judgment was entered on August 12, 2025.  ROA.6649.  CBD timely filed their notice of appeal on September 8, 2025.  ROA.6205-06; *see* Fed. R. App. P. 4(a)(1)(B).

**STATEMENT OF THE ISSUES**

1.    Does this Court have jurisdiction to consider CBD's appeal given that they have not demonstrated Article III standing?

2.    Did the district court abuse its discretion or otherwise err when it denied CBD's motion to intervene as of right or permissively, which was filed on the eve of resolution and months after CBD alleged it had notice that the U.S. Fish & Wildlife Service ("the Service") may no longer represent CBD's interests?

3.    Did the district court abuse its discretion in vacating and remanding the Service's Endangered Species Act listing rule for the lesser prairie-chicken after the Service confessed that it had not properly analyzed the significance of the physical

1

separation between the identified distinct population segments, in violation of the Service's own DPS policy?

## STATEMENT OF THE CASE

I.    STATUTORY AND REGULATORY BACKGROUND

A.    **Endangered Species Act (ESA)**

The ESA's primary goal is to protect threatened and endangered species and bring them "to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3). To that end, Section 4 of the ESA directs the Secretary of the Interior to determine whether a species is "endangered" or "threatened." *Id.* § 1533. An "endangered species" is a species that "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened species" is one that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

Under the ESA, a "species" includes "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). The term "distinct population segment" (DPS) is not defined in the statute. To assess whether a population constitutes a "distinct population segment," the Service (in conjunction with the National Marine Fisheries Service) adopted the "Policy Regarding the Recognition of Distinct Vertebrate Population Segments

2

Under the Endangered Species Act," 61 Fed. Reg. 4722 (Feb. 7, 1996) ("DPS Policy"). To qualify as a "distinct population segment," a population must be *both* discrete and significant. *Id.* at 4725. A population segment of a vertebrate species may be considered discrete if it satisfies either of two conditions: (1) it is "markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors"; or (2) it is "delimited by international governmental boundaries." *Id.* A population may be significant where, among other things, it differs markedly from other populations of the same species due to unique genetic characteristics or loss of the DPS "would result in a significant gap in the range of a taxon." *Id.*

The ESA directs the Service to determine whether a species or DPS is endangered or threatened based on any of five factors, or combination thereof:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1). The ESA permits an "interested person" to petition the Secretary to add or remove a species from the lists of threatened and endangered

species. *Id.* § 1533(b)(3). The Service makes a listing determination "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species." *Id.* § 1533(b)(1)(A).

### B.　Administrative Procedure Act (APA)

The APA prescribes the procedures that federal agencies must follow when exercising their rulemaking authority. *See* 5 U.S.C. § 553. The APA provides a right of judicial review to a "person suffering legal wrong because of agency action." *Id.* § 702. Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

## II.　FACTUAL BACKGROUND

The lesser prairie-chicken (*Tympanuchus pallidicinctus*) is a species of grouse; it is a stocky, ground-dwelling bird with brown- and buff-colored striped plumage. *See* 87 Fed. Reg. 72,674, 72,687 (Nov. 25, 2022). Male lesser prairie-chickens are known for their ostentatious mating displays; tufts of feathers along the birds' necks stand erect to reveal red, inflated air sacs that are used to vocalize with potential mates. *See id.* at 72,692.

Historically, the lesser prairie-chicken "ranged across the Southern Great Plains of Southeastern Colorado, Southwestern Kansas, Western Oklahoma, the Panhandle and South Plains of Texas, and Eastern New Mexico." *Id.* at 72,676. Its

current range is "substantially reduced," but includes portions of Colorado, Kansas, New Mexico, Oklahoma, and Texas. *Id.* at 72,675–76. Long-term population trends show a decline correlated with the decline of habitat availability. *Id.* at 72,677–79 (noting that the population was estimated at 175,000 males during 1965–1970, whereas the *total* population was estimated at 32,210 from 2017–2022).

The Service first recognized the lesser prairie-chicken as a candidate for listing under the ESA in 1998, but concluded that listing was precluded by higher priority listing actions. 86 Fed. Reg. 29,432, 29,434 (June 1, 2021). In 2014, the Service listed the lesser-prairie chicken as a threatened species. 79 Fed. Reg. 19,973 (Apr. 10, 2014). Multiple industry groups challenged that decision, and the district court vacated the listing rule in 2015. *Permian Basin Petroleum Ass'n v. Dep't of the Interior*, 127 F. Supp. 3d 700 (W.D. Tex. 2015).

In 2016, the Service received a new petition to list the lesser prairie-chicken as endangered; the agency subsequently published a 90-day finding concluding that the petitioned action may be warranted. 86 Fed. Reg. at 29,434. In 2019, the petitioners filed suit against the Service alleging failure to complete the required 12-month finding. *See* 16 U.S.C. § 1533(b)(3)(B). In 2021, pursuant to a settlement agreement, the Service published a combination 12-month finding and proposed rule to list one distinct population segment (DPS) of the lesser prairie-chicken as endangered and another as threatened. 86 Fed. Reg. at 29,432. The Service finalized

5

the rules at issue in this litigation on November 25, 2022, when it listed the Northern DPS of the lesser prairie-chicken as threatened and the Southern DPS of the lesser prairie-chicken as endangered ("Final Listing Rule").  87 Fed. Reg. at 72,674.

## III.    PROCEEDINGS BELOW

The State and Industry Plaintiffs each filed lawsuits challenging the listing decision on March 21, 2023, ROA.27, 427, and those cases were consolidated, ROA.1466.  Among other complaints, the Plaintiffs alleged that the Service improperly applied its policy for determining distinct population segments in the Final Listing Rule.  ROA.46-49, ROA.426-29.  Three months later, on June 22, 2023, Appellants Center for Biological Diversity and Texas Campaign for the Environment (together "CBD") moved to intervene in the litigation as defendants. ROA.1263-84, 6564-85.  CBD sought intervention as of right under Federal Rule of Civil Procedure 24(a), or alternatively, permissive intervention under Rule 24(b). ROA.1466.  None of the existing parties to the lawsuit objected to CBD's motion. ROA.1473.

The district court denied the motion in its entirety on August 29, 2023. ROA.1465-74.  The court first held that CBD did not need to show standing because they were not seeking relief that differed from the existing parties.  ROA.1469. Then, the court concluded that CBD did not meet the requirements for intervention as of right because the Service adequately represented CBD's interest in defending

6

the Final Listing Rule.  ROA.1472-73.  Acknowledging that the Service had broader interests, the court found that CBD "offer[ed] only speculation that the Government's broader interest may alter the present case."  ROA.1473.  The court also denied CBD's request for permissive intervention on the grounds that it would "result in duplication and delay of the case's resolution."  ROA.1473.  Although it denied the motion for intervention, the court noted that CBD could move to participate as an amicus.  ROA.1473.

Beginning on March 26, 2025, and following the change in administrations in January, the Service indicated in filings that it was pursuing settlement negotiations with Plaintiffs.  ROA.4461.  More than a month later, CBD moved to renew their motion to intervene as of right or permissively, citing a possible settlement as evidence that the Service no longer represented CBD's interests.  ROA.4460.

A few days later, on May 7, 2025, the Service moved for voluntary vacatur and remand of the Final Listing Rule.  ROA.4526-38.  The Service explained that the agency "failed to properly support its conclusions under the DPS Policy in the Final Listing Rule when it designated the Northern and Southern DPSs of the lesser prairie-chicken," ROA.4533, and this error "call[ed] into question the very foundation of the listing decision," ROA.4534.  The Service supported its motion with a declaration from the Acting Regional Director for the Southwest Region of the U.S. Fish & Wildlife Service.  ROA.4539-47.  The Acting Regional Director

7

indicated that the Service had failed to consider whether the potential loss of either the Northern or Southern DPS, which were separated by 95 miles, would produce a gap in range that had species-level significance, rather than significance to another DPS. ROA.4534. The Acting Regional Director explained that this error meant the Service had not completed the initial, fundamental step of "identifying a valid listable entity (i.e., a species)." ROA.4534. Correcting the mistake would require "an entirely new analysis," ROA.4534, making vacatur the appropriate remedy under Fifth Circuit precedent. *See Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023). The Service repeated this concession of error in its summary judgment briefing filed on June 30, 2025. ROA.6177-78.

While their second motion to intervene was pending before the court, CBD filed an opposition to the Service's request for remand and vacatur. ROA.5869-84. The court addressed both issues in an omnibus order filed August 12, 2025. ROA.6189.

As to intervention, the court denied CBD's motion to intervene for three reasons. First, the court found that CBD's second motion was untimely because it was filed months after CBD recognized the purported misalignment of interests between CBD and the Service. ROA.6200. Second, CBD did not rebut the presumption that the Service adequately represented their interests. ROA.6200.

Third, CBD did not explain what their role would be in litigation where the Service conceded a fundamental error in the Final Listing Rule. ROA.6200.

As to the Service's confession of error and request for remand and vacated, the court found that the Service had conceded "foundational error." ROA.6196. Specifically, the court accepted that the Service had not provided a satisfactory explanation for its DPS determination "such that it failed to consider an important aspect of the problem." ROA.6197. The court went on, noting that the Service "commits no handwaving when it also concedes that this failure causes the Final Listing Rule to be 'unlawful' and therefore 'not in accordance to law.'" ROA.6197. Addressing the appropriate remedy, the court correctly noted that vacatur is the presumptive remedy for an APA violation in this Circuit and held that the Service's failure to support its identified listable entity required vacatur. ROA.6195-98.

The court then CBD now appeals the court's decisions regarding intervention and vacatur.[1]

---

[1] On February 26, 2026, the Service published two rules related to the lesser prairie-chicken. First, the Service formally removed the Southern and Northern DPSs from the Federal List of Endangered and Threatened Wildlife. 91 Fed. Reg. 9474 (Feb. 26, 2026). Second, the Service announced that it will complete a new 12-month finding regarding the status of the lesser prairie-chicken, and requested information from the public relevant to that analysis. 91 Fed. Reg. 9547, 9548 (Feb. 26, 2026). Because both notices cited the district court's vacatur order as the impetus for issuing the documents, these rules do not affect the justiciability of this pending appeal.

## SUMMARY OF ARGUMENT

1.     As a threshold matter, this Court lacks jurisdiction over the appeal because CBD has not presented evidence or argument showing that it has standing to appeal. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) ("[T]o appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing."). For that reason, the appeal must be dismissed.

2.     The district court properly denied CBD's motions to intervene. As to the first motion, CBD did not establish a divergence of interests between itself and the Service that was sufficient to overcome the presumption of adequate representation by a government agency. *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994).

As to the second motion, even if CBD's interests were distinct from the Service's, the court did not abuse its discretion in finding that CBD's 2025 motion to intervene was untimely. CBD alleged the Service no longer represented CBD's interests after the new administration took office, but then waited months—knowing settlement negotiations were ongoing—to renew its request to intervene in the case. By that point, the Service had identified its error and reached an agreement with the Plaintiffs such that CBD's intervention would have prejudiced the parties. On the other hand, CBD was not prejudiced by its own delay because, while waiting for the

court to rule on its motion to intervene, CBD filed a brief in opposition to the Service's motion for vacatur, and the district court addressed CBD's arguments in its order. For those reasons, the court's decision denying CBD's motion to intervene as of right, or permissively, was not an abuse of discretion and should be affirmed.

3.     The district court did not abuse its discretion when it granted the Service's motion for voluntary remand with vacatur. Vacatur is an equitable remedy, and a court may order vacatur where appropriate. Indeed, this Court recently granted such a request where the EPA admitted that an administrative record deficiency precluded the agency from defending a rulemaking. *Texas v. U.S. Envtl. Protection Agency*, 122 F.4th 1008 (5th Cir. 2024). Here, the Service explained the foundational error in its rule, and the district court agreed with the Service's explanation of the error. This Court's decision in *Texas v. EPA* is controlling here.

## ARGUMENT

**I.     THIS COURT LACKS JURISDICTION OVER THE APPEAL BECAUSE CBD HAS NOT DEMONSTRATED STANDING.**

The Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Jurisdiction therefore requires that at least one litigant have standing to seek relief for each claim made throughout the proceedings. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S.

433, 439 (2017). For that reason, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* at 440. Furthermore, "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Bethune-Hill*, 587 U.S. at 663.

CBD has made no such showing before this Court. They do not address standing in their opening brief, nor have they included any declarations or other factual assertions that would allow this Court to find standing. And any declarations that CBD may file now, presumably to accompany its reply brief, are too late. As the Supreme Court held in *Summers v. Earth Island Institute* when it refused to consider standing declarations filed in the district court following entry of judgment, a party cannot "remedy the defect retroactively." 555 U.S. 488, 495 & n.* (2009). CBD should have sought to establish their standing at the outset of their appeals, as a petitioner must when it seeks direct review in the Court of Appeals of an agency action. *See, e.g.*, *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (holding that a petitioner need not establish standing before an administrative agency, because the agency is not subject to Article III, so that it is only "[w]hen the petitioner later seeks judicial review [that] the constitutional requirement that it have standing kicks in").

12

CBD thus has not established its standing to appeal.  Its avenue for vindicating its members' interest in the lesser prairie-chicken lies in the administrative processes for formulating a new listing decision.  For that reason, this appeal should be dismissed.[2]

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION OR OTHERWISE ERR IN DENYING CBD'S MOTION TO INTERVENE.

Generally, a court's decision to deny intervention as of right under Rule 24(a) is reviewed de novo.  *8fig, Inc. v. Stepup Funny, L.L.C.*, 135 F.4th 285, 291 (5th Cir. 2025).  However, "the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

To intervene in litigation under Federal Rule of Civil Procedure 24(a), the applicant bears the burden of demonstrating each of the following:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede

---

[2] Also related to this Court's jurisdiction, some circuits have found that certain remand orders are not "final decisions" under 28 U.S.C. § 1291. *See, e.g.*, *Alsea Valley All. v. Dept. of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004); *Friends of Animals v. U.S. Bureau of Land Mgmt.*, No. 24-5155, 2026 WL 478732, at *6 (D.C. Cir. Feb. 20, 2026).  This Court has not explicitly adopted that theory, but it would not affect CBD's ability to appeal the district court's denial of its orders denying intervention.

his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citation omitted). Failure to prove a required element is fatal. *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021).

**A.     CBD Did Not Meet Its Burden of Overcoming the Presumption of Adequate Government Representation.**

CBD's motion to intervene was based on its assertion that the Service did not adequately represent its interests. ROA.4465-68. Whether the Service adequately represents CBD's interest depends on the precise parameters of that interest. To the extent both groups seek to ensure faithful execution of the ESA, their interests are aligned. To be sure, the Service has a wider range of interests than CBD, but the mere fact that the Service's interests are broader than CBD's does not render the Service's representation inadequate. *See Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm. of the Orleans Levee Dist.*, 493 F.3d 570, 579 (5th Cir. 2007). If CBD's interest is in something other than the faithful execution of the ESA, CBD bore the burden of clearly stating and establishing this discrepancy with sufficient evidence to overcome the presumption that the Service's representation was inadequate. *Id.* at 578; *see also Hopwood*, 21 F.3d at 605 ("[W]here the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required."). CBD did not do that here.

14

**B.    CBD's Second Motion to Intervene Was Untimely.**

Even if CBD had successfully rebutted the presumption that the Service's adherence to the ESA did not represent CBD's interest in the litigation, the district court did not abuse its discretion in finding that CBD's 2025 motion was untimely. ROA.6200 n.71.   Rule 24 requires that a request to intervene as of right or for permissive intervention must be made "[o]n timely motion."  Fed. R. Civ. P. 24(a), 24(b)(1).   Timeliness should be considered with respect to "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain*, 986 F.3d at 937.   A would-be intervenor's timeliness clock begins "from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).   Because timeliness is somewhat amorphous, "the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth*, 558 F.2d at 263 (5th Cir. 1977).

Here, the district court explained that CBD waited "months after they claim to have determined that their interest may no longer be protected." ROA.6200 n.70. CBD's 2025 motion to intervene was filed on May 1, 2025. ROA.4470.  In that motion, CBD cited two Executive Orders issued on January 29, 2025, and a press

15

release dated February 3, 2025, as evidence that the government no longer represented its interests. ROA.4466. The district court found that CBD offered no explanation as to why it then waited an additional three months to file its motion. ROA.6200 n.70.

Moreover, the court found that CBD's motion "comes solely at the expense of the parties' pending resolution." ROA.6200 n.70. CBD was on notice of the impending resolution as early as March 12, 2025, when the parties filed a joint motion to postpone summary judgment briefing. That motion cited "the change in the federal Administration," noting that "new leadership at the Defendant agencies are evaluating their options in this litigation" and had "approached counsel for [the State and Industry] Plaintiffs regarding these options." ROA.4441. Yet CBD waited an additional five weeks—until the week the parties filed their proposed resolution—before renewing its motion to intervene. *See, e.g.*, *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (finding a motion to intervene untimely where the possibility of settlement was well-publicized for months). The district court concluded that "intervention at th[at] point would prejudice a conceded-to case." ROA.6200. The court explained that litigation would be unending if amicable resolutions were constantly interrupted by dissatisfied third-party intervenors. ROA.6200 n.70 (quoting *United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir. 1990)).

16

Finally, the district court addressed the lack of prejudice to CBD from the court's denial of its intervention motion, explaining that CBD could have "moved to file as friends of the court." ROA.6200. And CBD did, in fact, file a substantive brief opposing the parties' request for voluntary remand and vacatur. ROA.5869-82. CBD did not identify any other potential prejudice from the court's denial of its intervention motion, or give any reason why it could not participate as an amicus.

In sum, the district court properly addressed each of the factors relevant to timeliness. The court's decision was well-reasoned, supported, and not an abuse of its wide discretion under Rule 24(a).

## C.    Permissive Intervention was Similarly Unwarranted.

District courts enjoy vast discretion when considering motions for permissive intervention; such motions "may be denied even when the requirements of Rule 24(b) are satisfied." *Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025) (citation and internal quotation marks omitted). "Thus, reversal of a denial of permissive intervention is so unusual as to be almost unique." *Id.* (cleaned up). In its initial order denying CBD's motion to intervene, the district court explained that granting intervention would "result in duplication and delay of the case's resolution." ROA.1473. CDB's second motion, filed after months of negotiations and mere days before the parties' proposed resolution, would undoubtedly have the same effect. *See* ROA.6200 & n.70. CBD has not presented any argument on appeal

17

as to why that conclusion was an abuse of the district court's wide discretion to deny motions for permissive intervention. As such, the court's decision should be upheld.

## III. IF THE COURT REACHES THE QUESTION, IT SHOULD AFFIRM THE DISTRICT COURT'S ORDER OF VACATUR.

Because they lack standing and are not a party in this litigation, the Court need not address the merits of CBD's argument that the district court erred in vacating the Final Listing Rule. If the Court reaches the question, however, it reviews the district court's decision to vacate the Final Listing Rule for abuse of discretion only. *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022).

CBD claims that the court's decision is a pre-merits order granting voluntary vacatur in violation of the APA. Aplt. Br. 35–43. But CBD's rigid interpretation of the APA's application to equitable remedies is wrong on several counts. First, the court ruled on the merits when it accepted the Service's concession of error: "Fish and Wildlife's concession points to serious error at the very foundation of its rule. Mere remand would not cure this error. Nor is this one of those exceptional cases permitting remand alone." ROA.6189. As such, the court's order was not a pre-merits decision.

Second, it is well-established in this Circuit that vacatur is presumed when an agency's rulemaking is remanded under the APA. *See Tex. Corn Producers v. EPA*, 141 F.4th 687, 710 (5th Cir. 2025). This Court has grounded that presumption in 5 U.S.C. § 706(2)(A), which says that a "reviewing court shall . . . hold unlawful and

18

set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* Here, the Service admitted that it erred in the very first step of the ESA's listing process—the agency failed to support its conclusion to establish a DPS. ROA.4544. Having failed to properly define the "species" to be evaluated under Section 4 of the ESA, the Service's assessment was inherently "not in accordance with law," permitting the court to vacate the agency's listing decision.

Third, the court's decision to vacate the Final Listing Rule does not violate the APA. CBD argues that the court here could not set aside the rule because it was never "held" or "found to be" unlawful. Aplt. Br. 35–43. But CBD largely ignores the court's analysis. The court agreed with the Service's concession that it had provided sufficient analysis for its conclusions, and that provided a basis for the court to conclude that the Final Listing Rule was unlawful. ROA.6195-97. The court went so far as to say that "[n]o real novel thinking [wa]s required to resolve" the case, noting that the Service was "commit[ting] no handwaving" in asking the court to vacate a rule that "failed to consider an important aspect of the problem." ROA.6196-97.

This Court has already concluded that this approach is permissible. This Court recently granted the government's request for voluntary vacatur in similar circumstances. In *Texas v. EPA*, the EPA conceded that the administrative record

19

was insufficient to explain or defend a rulemaking regarding regional haze. 122 F.4th at 1009. Based on the agency's confessed error, this Court issued a per curium order granting the government's vacatur request. *Id.* The Court found that "any explanation for EPA's actions in the Final Rule would run counter to the evidence before the agency" meaning that "EPA's Final Rule [was] arbitrary and capricious and must be vacated." *Id.* (cleaned up); *see also Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (denying an agency's motion for voluntary remand of a flawed rulemaking where the agency did not also request vacatur as that result "would have left petitioners subject to a rule they claimed was invalid"). The same reasoning applies here.[3]

CBD points to the Supreme Court's summary order granting a stay pending appeal in *Louisiana v. American Rivers*, 142 S. Ct. 1347 (2022), as well as the Ninth Circuit's decision on remand in that case, *In re Clean Water Act Rulemaking*, 60 F.4th 583, 595 (9th Cir. 2023). Aplt. Br. 36, 42–43. In that case, the environmental groups who had sued the EPA asked the district court to vacate a rule after EPA sought voluntary remand. *In re Clean Water Act Rulemaking*, 60 F.4th at 590. Notably, however, the EPA never confessed error or conceded that the rule was unlawful. *Id.* That is a different situation from here and from *Texas v. EPA*, where

---

[3] CBD claims that *Texas v. EPA* is inapposite because "the parties there did not contest that EPA made a serious procedural misstep." Aplt. Br. 43. The same is true here—the *parties* to this case agree that the Service failed to support its conclusion under the DPS Policy. *See* ROA.6035.

the agencies confessed errors and the district court reviewed those confessions, and here, agreed the oversight was "foundational."  ROA.6196.

The lack of authority supporting CBD's argument is unsurprising because its rigid reading of the APA is incorrect and ignores the principles of equitable remedies.   This Court and its sister circuits have always recognized that circumstances exist in which setting aside a rule under Section 706 would be inappropriate and therefore held that it is within a court's equitable power to let a challenged agency action stand during remand.  *See Chamber of Com. v. SEC*, 88 F.4th 1115, 1118 (5th Cir. 2023); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012).   This recognition that the equitable remedy of vacatur is entrusted to courts' sound discretion means that the APA does not foreclose vacatur where, as here, the agency has identified a serious error necessitating remand.

CBD also argues that vacatur was improper because, according to CBD, the Service's confessed error "is belied by the record."  Aplt. Br. 45.  CBD claims that the Final Listing Rule found the DPSs to be significant based on both genetic differences and a significant gap in range if either population were lost.  *Id.*  But the Service made reference to the physical separation between the identified DPSs when discussing genetics.  *See* 87 Fed. Reg. at 72,680 (noting that the "Shinnery Oak Ecoregion was likely historically connected to the remainder of the range, but the

21

two parts have been separated since approximately the time of European settlement. Therefore, the two segments of the range are genetically distinct from each other . . . ."). If the Service failed to support its conclusion that this physical separation was significant, the error was so fundamental to the Service's decision that the Final Listing Rule must be vacated pending further review.

In conclusion, even if CBD had been permitted to intervene in the case and had standing to appeal the district court's judgment, the district court acted well within its discretion by vacating the Final Listing Rule after the Service confessed a fundamental error that rendered its decision arbitrary, capricious, or otherwise contrary to law. Vacatur was proper and should be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the appeal for lack of jurisdiction or, in the alternative, affirm the judgement of the district court.

22

Respectfully submitted,

s/ *Emily Polachek*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT J. LUNDMAN
CHRISTOPHER ANDERSON
CAITLYN F. COOK
EMILY A. POLACHEK
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
5600 American Blvd. W., Suite 650
Bloomington, MN 55437
(202) 598-9344
emily.polachek3@usdoj.gov

March 6, 2026
90-8-6-08624

23

## CERTIFICATE OF COMPLIANCE

I hereby certify:

1.      This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 5,471 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

s/ *Emily Polachek*
EMILY A. POLACHEK

Counsel for Federal Appellees

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)    all required privacy redactions have been made per 5th Cir. R. 25.2.13;

(2)    the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and

(3)    the document has been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender Antivirus Version 1.437.105.0 (updated Sept. 22, 2025), and according to the program is free of viruses.

s/ *Emily Polachek*
EMILY A. POLACHEK

Counsel for Federal Appellees

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2026, I electronically filed the foregoing using the court's CM/ECF system, which will notify all registered counsel.

s/ *Emily Polachek*
EMILY A. POLACHEK

Counsel for Federal Appellees