**Case No. 25-50747**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**STATE OF TEXAS; TEXAS GENERAL LAND OFFICE; TEXAS DEPARTMENT OF AGRICULTURE; RAILROAD COMMISSION OF TEXAS; STATE OF KANSAS; STATE OF OKLAHOMA,**

**Plaintiffs – Appellees,**

**v.**

**UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES FISH AND WILDLIFE SERVICE; DOUG BURGUM, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR; BRIAN NESVIK, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE UNITED STATES FISH AND WILDLIFE SERVICE,**

**Defendants – Appellees,**

**v.**

**CENTER FOR BIOLOGICAL DIVERSITY; TEXAS CAMPAIGN FOR THE ENVIRONMENT,**

**Movants – Appellants.**

_____

**Case Caption Continued on Next Page**

**PERMIAN BASIN PETROLEUM ASSOCIATION;
NATIONAL CATTLEMEN'S BEEF ASSOCIATION; TEXAS CATTLE
FEEDERS ASSOCIATION; KANSAS LIVESTOCK ASSOCIATION;
OKLAHOMA CATTLEMEN'S ASSOCIATION; NEW MEXICO CATTLE
GROWERS ASSOCIATION, KANSAS INDEPENDENT OIL & GAS
ASSOCIATION; PETROLEUM ALLIANCE OF OKLAHOMA,**

**Plaintiffs – Appellees,**

**v.**

**UNITED STATES DEPARTMENT OF THE INTERIOR;
UNITED STATES FISH AND WILDLIFE SERVICE; DOUG BURGUM,
SECRETARY, U.S. DEPARTMENT OF THE INTERIOR; BRIAN NESVIK,
IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE UNITED
STATES FISH AND WILDLIFE SERVICE,**

**Defendants – Appellees,**

**v.**

**CENTER FOR BIOLOGICAL DIVERSITY;
TEXAS CAMPAIGN FOR THE ENVIRONMENT,**

**Movants – Appellants.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

**BRIEF OF PLAINTIFFS-APPELLEES**

Marianne M. Auld
State Bar No. 01429910
marianne.auld@kellyhart.com
Caitlyn E. Hubbard
State Bar No. 24097853
caitlyn.hubbard@kellyhart.com
Jacob A. deKeratry
State Bar No. 24120795
jacob.dekeratry@kellyhart.com
**Kelly Hart & Hallman LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Derek L. Montgomery
State Bar No. 2404226
derek.montgomery@kellyhart.com
Jeffrey D. Kuhnhenn
State Bar No. 24078809
jeff.kuhnhenn@kellyhart.com
**Kelly Hart & Hallman LLP**
500 W. Illinois Avenue
Midland, Texas 79701
(432) 683-4691

**ATTORNEYS FOR APPELLEES KANSAS INDEPENDENT OIL & GAS ASSOCIATION, PETROLEUM ALLIANCE OF OKLAHOMA, PERMIAN BASIN PETROLEUM ASSOCIATION, NATIONAL CATTLEMEN'S BEEF ASSOCIATION, TEXAS CATTLE FEEDER'S ASSOCIATION, KANSAS LIVESTOCK ASSOCIATION, OKLAHOMA CATTLEMEN'S ASSOCIATION, AND NEW MEXICO CATTLE GROWER'S ASSOCIATION**

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and 5th Cir. R. 28.2.1, Appellees Kansas Independent Oil & Gas Association, Petroleum Alliance of Oklahoma, Permian Basin Petroleum Association, National Cattlemen's Beef Association, Texas Cattle Feeder's Association, Kansas Livestock Association, Oklahoma Cattlemen's Association, and New Mexico Cattle Grower's Association offer this Certificate of Interested Persons.

(1)    Number and Style of the Case: 25-50747, *State of Texas; Texas General Land Office; Texas Department of Agriculture; Railroad Commission of Texas; State of Kansas; State of Oklahoma v. United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in His Official Capacity as the Director of the United States Fish and Wildlife Service v. Center for Biological Diversity; Texas Campaign for the Environment*

*Permian Basin Petroleum Association; National Cattlemen's Beef Association; Texas Cattle Feeders Association; Kansas Livestock Association; Oklahoma Cattlemen's Association; New Mexico Cattle Growers Association, Kansas Independent Oil & Gas Association; Petroleum Alliance of Oklahoma v. United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in His*

*Official Capacity as the Director of the United States Fish and Wildlife Service v. Center for Biological Diversity; Texas Campaign for the Environment.*

(2)   The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

<u>Appellants:</u>                    Center for Biological Diversity
                                       Texas Campaign for the Environment

<u>Counsel for Appellants:</u>        Jason C. Rylander
                                       Lauren A. Parker
                                       Center for Biological Diversity

                                       Charles William Irvine
                                       Irvine & Conner, P.L.L.C.

<u>Appellees:</u>                     Kansas Independent Oil & Gas Association
                                       Petroleum Alliance of Oklahoma
                                       Permian Basin Petroleum Association
                                       National Cattlemen's Beef Association
                                       Texas Cattle Feeder's Association
                                       Kansas Livestock Association
                                       Oklahoma Cattlemen's Association
                                       New Mexico Cattle Grower's Association

<u>Counsel for Appellees:</u>         Marianne M. Auld
                                       Caitlyn E. Hubbard
                                       Derek L. Montgomery
                                       Jeffrey D. Kuhnhenn
                                       Jacob A. deKeratry
                                       Kelly Hart & Hallman LLP

| | |
|---|---|
| <u>Other Appellees:</u> | State of Texas<br>Texas General Land Office<br>Texas Department of Agriculture<br>Railroad Commission of Texas |
| <u>Appellees' Counsel:</u> | Brittany Erin Wright<br>Shelby Thompson<br>Office of the Attorney General of Texas |
| <u>Other Appellee:</u> | State of Kansas |
| <u>Appellee's Counsel:</u> | Anthony J. Powell<br>James Rodriguez<br>Office of the Attorney General<br>for the State of Kansas |
| <u>Other Appellee:</u> | State of Oklahoma |
| <u>Appellee's Counsel:</u> | Garry M. Gaskins, II<br>Jennifer L. Lewis<br>Zachary Paul West<br>Oklahoma Office of the Attorney General |
| <u>Other Appellees:</u> | United States Department of the Interior<br>United States Fish and Wildlife Service<br>Doug Burgum, Secretary, U.S. Department of the Interior<br>Brian Nesvik, in His Official Capacity as the Director of the United States Fish and Wildlife Service |
| <u>Appellees' Counsel:</u> | Emily Anne Polachek<br>Caitlyn Cook<br>David B. Goode<br>U.S. Department of Justice Environment & Natural Resources Division |

/s/ Caitlyn E. Hubbard
Caitlyn E. Hubbard

*Attorney of Record for Appellees*
*Kansas Independent Oil & Gas Association*
*Petroleum Alliance of Oklahoma*
*Permian Basin Petroleum Association*
*National Cattlemen's Beef Association*
*Texas Cattle Feeder's Association*
*Kansas Livestock Association*
*Oklahoma Cattlemen's Association*
*New Mexico Cattle Grower's Association*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Kansas Independent Oil & Gas Association, Petroleum Alliance of Oklahoma, Permian Basin Petroleum Association, National Cattlemen's Beef Association, Texas Cattle Feeder's Association, Kansas Livestock Association, Oklahoma Cattlemen's Association, and New Mexico Cattle Grower's Association ("Industry Plaintiffs") respectfully submit that oral argument is not warranted. This case concerns the Industry Plaintiffs' and State Plaintiffs'[1] challenge to a President Biden-era administrative rule that the U.S. Fish and Wildlife Service ("FWS")[2] issued in 2022. ROA.27-28. This appeal—noticed by non-party environmental groups, the Center for Biological Diversity ("CBD") and the Texas Campaign for the Environment ("TCE") (together, "Appellants")—challenges district court orders denying Appellants' first and then second motions to intervene.

Appellants challenge those orders and others—but skip past multiple jurisdictional prerequisites. Leaving jurisdiction behind, Appellants ask the Court to reject FWS's *conceded* error and reverse a vacatur-and-remand order based upon it. Should the Court desire oral argument, Industry Plaintiffs stand ready to defend the district court's rulings.

---

[1] "State Plaintiffs" refers to the State of Texas, Texas General Land Office, Texas Department of Agriculture, Railroad Commission of Texas, State of Kansas, and State of Oklahoma. ROA.27, 895. "Plaintiffs" refers to the Industry and State Plaintiffs.

[2] FWS is a bureau within the Department of Interior. Plaintiffs sued FWS, the Department of Interior, and associated officials. "FWS" refers to all federal defendants, unless otherwise stated.

---

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS.......................................................iv

STATEMENT REGARDING ORAL ARGUMENT ......................................... viii

TABLE OF AUTHORITIES .............................................................................xiv

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF ISSUES ..................................................................................2

INTRODUCTION ................................................................................................3

STATEMENT OF THE CASE.............................................................................6

A.    The Lesser Prairie-Chicken .....................................................................6

B.    The ESA allows FWS to divide a species into
      Distinct Population Segments (DPSs) in rare circumstances........................8

C.    FWS has historically declined to divide the LPC into DPSs .........................9

      1.    The LPC was unlisted for decades.........................................9

      2.    In 2014, FWS listed the LPC as threatened
            throughout its range—but declined to designate DPSs........................9

      3.    In 2015, the district court vacated the 2014 Rule ..............................10

D.    In 2022, FWS first listed the LPC and designated Northern
      and Southern DPSs .................................................................11

E.    Litigation ensued in this case and in others....................................13

      1.    Plaintiffs sued FWS to challenge the Final Rule ..............................13

## TABLE OF CONTENTS (cont.)

**Page**

2. In a different case, other plaintiffs successfully
challenged the Section 4(d) rule protecting the Northern DPS...........13

F. In 2023, the district court denied Intervenors' first motion
to intervene, and Appellants did not appeal—while Congress
sought to repeal the Final Rule ..................................................................14

G. The parties litigated this case and, in January 2025,
FWS reevaluated its options ......................................................................15

H. In May 2025, Appellants again sought to intervene.....................................16

I. FWS moved for voluntary vacatur and remand .............................................17

J. The Industry Plaintiffs moved for summary judgment .................................19

K. The district court denied intervention, credited
FWS's concession, and ordered vacatur and remand...................................19

1. Intervention ..........................................................................................20

2. Vacatur-and-remand.............................................................................20

STANDARD OF REVIEW .........................................................................................21

SUMMARY OF THE ARGUMENT ...........................................................................22

ARGUMENT ................................................................................................................25

I. The Court lacks jurisdiction because Appellants did
not timely appeal the first order denying intervention .................................25

II. This Court otherwise lacks jurisdiction.......................................................25

A. Appellants lack standing to appeal........................................................26

**TABLE OF CONTENTS (cont.)**

<u>Page</u>

       i.      Because FWS does not challenge the vacatur-and-remand order, Appellants must establish Article III standing ...........................................26

       ii.     Article III requires Appellants to establish an injury-in-fact traceable to the judgment below and redressable by a favorable ruling ...........................26

       iii.    Appellants have failed to establish Article III standing ...................................................................27

             a.    No CBD member has standing .......................................28

             b.    No TCE member has standing........................................31

    B.    Because the vacatur-with-remand order is non-final, Appellants' challenge to the intervention order is moot....................32

       i.      Orders remanding to an administrative agency are generally non-final .............................................33

       ii.     No basis exists to exempt the vacatur-and-remand order from the general rule ......................................36

III.   The district court did not abuse its discretion by finding Appellants' second motion for intervention untimely..................................38

    A.    The district court reasonably concluded that Appellants waited too long to seek intervention................................40

    B.    Permitting intervention after Appellants' delay would severely prejudice the existing parties .....................................42

    C.    Affirmance would not prejudice Appellants.....................................43

## TABLE OF CONTENTS (cont.)

**Page**

D.    Unusual circumstances further support the
district court's ruling ..................................................................44

IV.   Alternatively, this Court should affirm the district
court's vacatur-and-remand order ...............................................45

A.    The APA requires courts to vacate unlawful
agency action .................................................................46

B.    The propriety of vacatur without an unlawfulness
finding is an open question—but irrelevant here ...............46

C.    Because the district court found the Final Rule
unlawful, it had discretion to vacate .................................47

i.    FWS conceded it improperly conducted
the "significance" analysis ......................................48

ii.   The district court rightly found the Final Rule
"unlawful" by crediting FWS's concession ..............49

iii.  Regardless, Appellants' substantive attacks
on FWS's concession fail.........................................51

iv.   Appellants' remaining complaints concern
issues committed to the district court's discretion....53

a.    The district court reasonably found that
FWS could not justify its decision on remand ..............54

b.    The district court reasonably found that any
"disruptive consequences" of vacatur would
be "short lived and minimized"......................................55

v.    Appellants' additional arguments are misguided ....56

## TABLE OF CONTENTS (cont.)

**Page**

D.    Alternatively, the Court should remand for further proceedings ...................................................................................57

CONCLUSION......................................................................................................57

CERTIFICATE OF SERVICE .............................................................................59

CERTIFICATE OF COMPLIANCE.....................................................................59

CERTIFICATE OF ELECTRONIC COMPLIANCE.............................................60

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Adkins v. Silverman*,
899 F.3d 395 (5th Cir. 2018) ........................................................................33, 36

*Airlines for Am. v. Dep't of Transp.*,
166 F.4th 487 (5th Cir. 2026) (per curiam) ...................................33, 44, 50, 51, 53

*Airlines for Am. v. Dep't of Transp.*,
127 F.4th 563 (5th Cir. 2025), *reh'g en banc granted*,
*opinion vacated*, 154 F.4th 323 (5th Cir. 2025) ............................................51

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
522 U.S. 359 (1998)................................................................................49

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993)..............................................................24, 53

*Alsea Valley Alliance v. Dep't of Com.*,
358 F.3d 1181 (9th Cir. 2004) ............................................................ 33-35, 37

*Bush v. Viterna*,
740 F.2d 350 (5th Cir. 1984) .....................................................................45

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024)..................19, 46

*Carpenters Indus. Council v. Salazar*,
734 F. Supp. 2d 126 (D.D.C. 2010)..............................................................47

*Ceres Gulf v. Cooper*,
957 F.2d 1199 (5th Cir. 1992) ....................................................................45

*Chamber of Com. v. U.S. Sec. & Exch. Comm'n*,
88 F.4th 1115 (5th Cir. 2023) ....................................................................54

*Citizens for a Healthy Cmty. v. United States Dep't of Interior*,
No. 21-CV-01268-MSK, 2022 WL 1597864 (D. Colo. May 19, 2022) ................47

## TABLE OF AUTHORITIES (cont.)

<u>**Cases**</u>                                                                                                        <u>**Page**</u>

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
704 F.3d 413 (5th Cir. 2013) ..................................................................................21

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
69 F.4th 588 (9th Cir. 2023) ............................................................................ 33-36

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019) ...........................................................................27, 28

*Ctr. for Native Ecosystems v. Salazar*,
795 F. Supp. 2d 1236 (D. Colo. 2011)....................................................................47

*Data Mktg. P'ship, LP v. United States Dep't of Labor*,
45 F.4th 846 (5th Cir. 2022) ...................................................................................53

*Deep S. Ctr. for Env't. Just. v. EPA*,
138 F.4th 310 (5th Cir. 2025) .................................................................................31

*Diamond v. Charles*,
476 U.S. 54 (1986).................................................................................................26

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) (en banc) ...................................................................25

*Friends of Animals v. United States Bureau of Land Mgmt.*,
No. 24-5155, 2026 WL 478732 (D.C. Cir. Feb. 20, 2026) ........................33, 35, 38

*Frito-Lay, Inc. v. U.S. Dep't of Lab.*,
20 F. Supp. 3d 548 (N.D. Tex. 2014) .....................................................................47

*Hopwood v. Texas*,
78 F.3d 932 (5th Cir. 1996) ...................................................................................25

*In re Clean Water Act Rulemaking*,
60 F.4th 583 (9th Cir. 2023) ..................................................................................47

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                                          **Page**

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...................................................................................22

*Izaak Walton League of Am., Inc. v. Kimbell*,
558 F.3d 751 (8th Cir. 2009) ...................................................................................34

*Kan. Nat. Res. Coal. v. United States Fish & Wildlife Serv.*,
780 F. Supp. 3d 650 (W.D. Tex. 2025) .............................................4, 7, 9, 13, 14, 30

*Kewayfati v. Bondi*,
165 F.4th 342 (5th Cir. 2026) ............................................................................33, 34

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir. 1987) .................................................................................40

*La. Dep't of Env't Quality v. U.S. E.P.A.*,
730 F.3d 446 (5th Cir. 2013) ...................................................................................21

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)..................................................................................................46

*Louisiana v. Haaland*,
86 F.4th 663 (5th Cir. 2023) .......................................................................27, 28, 30

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................ 27-31

*Martinez v. Bally's La., Inc.*,
244 F.3d 474 (5th Cir. 2001) ...................................................................................50

*McHenry v. C.I.R.*,
677 F.3d 214 (4th Cir. 2012) ...................................................................................45

*Mem'l Hosp. Sys. v. Heckler*,
769 F.2d 1043 (5th Cir. 1985) .................................................................................33

# TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                        **Page**

*Michigan v. EPA*,
576 U.S. 743 (2015)................................................................................49

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..............................................................................49, 50

*Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*,
No. 06-3466, 2007 WL 2141941 (6th Cir. July 26, 2007) (per curiam) .................36

*Navajo Nation v. Regan*,
563 F. Supp. 3d 1164 (D.N.M. 2021) ........................................................47

*PDK Lab'ys Inc. v. U.S. DEA*,
362 F.3d 786 (D.C. Cir. 2004) ...............................................................56

*Permian Basin Petroleum Ass'n v. Dep't of the Interior*,
127 F. Supp. 3d 700 (W.D. Tex. 2015) .........................................................3, 9, 10

*Preiser v. Newkirk*,
422 U.S. 395 (1975)................................................................................32

*Riley v. Kennedy*,
553 U.S. 406 (2008)................................................................................38

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) ...................................................................45

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) ....................................................... 22, 39, 40, 42-44

*Save Our Springs All. Inc. v. Babbitt*,
115 F.3d 346 (5th Cir. 1997) ...................................................................40, 42

*Sec. & Exch. Comm'n v. Hallam*,
42 F.4th 316 (5th Cir. 2022) ...................................................................40

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                               **Page**

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025)..................................................................................................51

*Sierra Club v. Babbitt*,
995 F.2d 571 (5th Cir. 1993) .............................................................................27, 32

*Sierra Club v. EPA*,
60 F.4th 1008 (6th Cir. 2023) ..................................................................................46

*Sierra Club v. U.S. Dep't of Agric.*,
716 F.3d 653 (D.C. Cir. 2013).................................................................................36

*Spell v. Edwards*,
962 F.3d 175 (5th Cir. 2020) ...................................................................................32

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) .............................................................................39, 40

*Tex. Corn Producers v. EPA*,
141 F.4th 687 (5th Cir. 2025) ..................................................................................54

*Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*,
110 F.4th 762 (5th Cir. 2024) ..................................................................................46

*Texas v. EPA*,
122 F.4th 1008 (5th Cir. 2024) ....................................................................23, 44, 50

*Texas v. United States*,
126 F.4th 392 (5th Cir. 2025) ......................................................................22, 46, 54

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) ....................................................................................53

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017)..................................................................................................26

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                    **Page**

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ..................................................................44

*United States v. City of Chicago*,
897 F.2d 243 (7th Cir. 1990) ..................................................................20

*United States v. Covington Cnty. Sch. Dist.*,
499 F.3d 464 (5th Cir. 2007) (per curiam) ......................................40, 42

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019).................................................26, 32, 43, 44

*Vista Health Plan, Inc. v. United States Dep't of Health & Hum. Servs.*,
31 F.4th 946 (5th Cir. 2022) ...............................................21, 25, 33, 38

*W. Energy All. v. Zinke*,
877 F.3d 1157 (10th Cir. 2017) ..............................................................41

*West Virginia v. EPA*,
597 U.S. 697 (2022)..................................................................................27

*Will v. Hallock*,
546 U.S. 345 (2006)..................................................................................36

## Rule and Statutes

5 U.S.C. § 702....................................................................................32, 36

5 U.S.C. § 706............................................................................46, 50, 56

16 U.S.C. § 1531 ......................................................................................8, 10

16 U.S.C. § 1532 ........................................................................................8, 9

16 U.S.C. § 1533 ...................................................................................4, 8, 9

**TABLE OF AUTHORITIES (cont.)**

<u>Rule and Statutes</u>                                                         <u>Page</u>

Fed. R. Civ. P. 24 .................................................................................................39

<u>Other Authorities</u>

15B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3914.32 (3d ed.)................33, 36

61 Fed. Reg. 4,722 ...........................................................................................8, 48

61 Fed. Reg. 4,724 ..............................................................................................52

61 Fed. Reg. 4,725 ................................................................................................8

68 Fed. Reg. 15,100 ............................................................................................10

79 Fed. Reg. 19,975 ..............................................................................................9

79 Fed. Reg. 19,976 ............................................................................................10

79 Fed. Reg. 19,977 ............................................................................................10

79 Fed. Reg. 19,986 ............................................................................................10

79 Fed. Reg. 20,073 ............................................................................................10

86 Fed. Reg. 29,432 ............................................................................................11

86 Fed. Reg. 29,433 ............................................................................................11

86 Fed. Reg. 29,434 ......................................................................................10, 11

87 Fed. Reg. 72,679 ............................................................................................11

87 Fed. Reg. 72,680 ............................................................................................11

87 Fed. Reg. 72,681 ............................................................................................11

## TABLE OF AUTHORITIES (cont.)

**Other Authorities**                                                    **Page**

90 Fed. Reg. 8,433 ................................................................................41

91 Fed. Reg. 9,547 ............................................................................5, 19

Presidential Statement on Vetoing S.J. Res. 9, September 26, 2023........................13

S.J. Res. 9, 118th Cong. (2023) .................................................................13

U.S. Const. art. III, § 2 .........................................................................32

## JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction under 28 U.S.C. § 1331 and 16 U.S.C. § 1540 because the suit arises under federal law and the Endangered Species Act ("ESA"). ROA.27-32. This appeal, however, concerns the district court's denial of Appellants' effort to intervene. In August 2023 and August 2025, the district court denied Appellants' first and second motions to intervene, respectively. ROA.1466-74, 6189-203. Also in August 2025, the district court entered a "final judgment" ordering vacatur and remand of an administrative rule issued under the ESA. ROA.6204.

Appellants appealed in September 2025. ROA.6205-07. Appellants claim they should have been permitted to intervene—and then, assuming the mantle of a *party*, Appellants challenge the vacatur-and-remand order that no existing party contests. ROA.6016-21. This Court lacks appellate jurisdiction, including because:

- No existing party appealed the vacatur-and-remand order, so Appellants must establish Article III standing—but they have not; and

- The district court's vacatur-and-remand order is not a final judgment under 28 U.S.C. § 1291, rendering Appellants' intervention appeal moot.

These defects strip the Court of subject matter jurisdiction, but Appellants do not address them. Industry Plaintiffs do. *Infra* pp. 25-37.

## STATEMENT OF ISSUES

1.  Does the Court lack jurisdiction over Appellants' appeal from the denial of intervention, when:

    a.  Appellants lack standing to appeal the vacatur-and-remand order that no existing party appeals; and

    b.  The vacatur-and-remand order that Appellants challenge is interlocutory?

2.  Alternatively, did the district court abuse its discretion by denying Appellants' second intervention attempt, filed two years into this litigation, when:

    a.  Appellants knew or should have known of their stated basis for intervention *at least* three months earlier; and

    b.  Permitting intervention after this delay prejudices the parties, while denying intervention does not prejudice Appellants?

3.  Alternatively, did the district court abuse its discretion by vacating the final listing rule—a rule that its own author concedes is unlawful—and remanding to FWS when:

    a.  FWS conceded a foundational error in the final rule;

    b.  The district court was "persuaded" by FWS's concession; and

    c.  Substantial evidence supports the district court's factual finding that vacatur—the presumptive remedy in this Circuit—was proper and would not have disruptive consequences?

**INTRODUCTION**

The lesser prairie-chicken ("LPC") is a species of grouse found in five southern states. During prior administrations, FWS has—at Appellants' urging—*twice* listed the LPC under the ESA and *twice* made significant errors. This time, FWS conceded a foundational error in the listing and requested voluntary vacatur and remand. *All* parties agreed to the remedy, and the district court—"persuade[d]" by FWS's concession—vacated and remanded the listing so that FWS could reconsider it, complete with notice-and-comment periods and Appellants' participation. ROA.6198, 6202. That process is actively underway.

Only Appellants—denied intervenors—oppose the vacatur-and-remand order. But Appellants skip past jurisdiction. And Appellants minimize their prejudicial delay in seeking renewed intervention, which came *two years* into the case and *three months* after the change of administration that—in Appellants' words—"foretold a potential and ominous shift in position in this and in other cases[.]" ROA.5886. The Court should dismiss the appeal or, alternatively, affirm.

\* \* \*

In 2014, FWS listed the LPC as a threatened species ("2014 Rule"). But the district court vacated the 2014 Rule in an earlier case because FWS failed to consider existing conservation efforts. *Permian Basin Petroleum Ass'n v. Dep't of the Interior*, 127 F. Supp. 3d 700, 722 (W.D. Tex. 2015).

So Appellants pursued a new listing, leading FWS to issue a new rule in 2022 ("Final Rule"). For the first time, FWS divided the LPC into distinct population segments ("DPS")—northern and southern. With this division, FWS treated each segment as a separate "species" and assessed their status independently of the other. On that basis, the Final Rule then listed the Northern DPS as threatened and the Southern DPS as endangered. The "endangered" listing prohibited all "take" of the Southern Segment, and FWS issued a "Section 4(d) rule" to regulate the "take" of the Northern Segment. *See* 16 U.S.C. § 1533(d) (Section 4(d) rule); ROA.68, 142.

Two suits followed. In one, the district court vacated the 4(d) rule—and no appeal followed. *Kan. Nat. Res. Coal. v. United States Fish & Wildlife Serv.*, 780 F. Supp. 3d 650, 662 (W.D. Tex. 2025). As a result, no ESA protections exist for the 91% of LPC in the Northern Segment today, *independently of the district court's ruling below.*

In this case, Plaintiffs argued, *inter alia*, that FWS had no basis to divide the LPC into DPSs in the first place. After substantial litigation, interim rulings adverse to FWS, and a change in administration, FWS conceded error. Specifically, FWS conceded that it did not appropriately consider whether the proposed DPSs were actually "significant," as FWS policy requires. ROA.4543-44. Because that concession tainted FWS's finding that each population segment was a separate "species," FWS filed a motion for voluntary remand and vacatur. FWS represented

then that it "intends to remedy the flaw in the current [LPC] listing decision"—and it is currently doing so now. ROA.4570; 91 Fed. Reg. 9,547.

The district court credited FWS's concession and vacated the Final Rule, the presumptive remedy in this circuit. ROA.6197. All eighteen existing parties agree that remand-with-vacatur was the appropriate disposition.

But non-party Appellants do not. Appellants unsuccessfully sought to intervene below. Here, Appellants argue that even if remand is proper, vacatur was not. Denied intervenors, Appellants thus seek to play appellate spoiler by contradicting FWS's factual concession regarding what FWS considered—or not—when dividing the LPC into two DPSs.

Appellants are not entitled to appeal or intervene. Appellants lack standing to appeal the vacatur-and-remand order that no existing party contests—an order that is not final, regardless. In any event, the district court did not abuse its discretion by denying intervention as untimely. Despite "clear" notice (Appellants' phrasing) that President Trump's administration might not represent their interests, ROA.4460, Appellants waited three months to renew their intervention request. The district court reasonably found that Appellants waited too long.

As for the substantive issue it raises, Appellants' brief argues under a false premise. Appellants maintain that the district court did not find the Final Rule "unlawful," as Appellants argue the Administrative Procedure Act ("APA")

requires. But even without considering the full-fledged merits, the district court *did* determine that the Final Rule was unlawful. It did so through FWS's concession of error—a specific factual admission that FWS did not consider what the law requires. This "unlawfulness" finding defeats Appellants' core argument that the district court erred by vacating the Final Rule—a rule that *all* existing parties agree needs reconsideration and has already been stripped of effect for 91% of the LPC, without appeal.

## STATEMENT OF THE CASE

The history of the LPC, conservation efforts, and FWS's actions span years and cases. Industry Plaintiffs provide relevant background below.

### A. The Lesser Prairie-Chicken.

The LPC is found in Colorado, Kansas, New Mexico, Oklahoma, and Texas. ROA.68-69. Per FWS, the LPC's habitat spans four ecoregions: Short-Grass/Conservation Reserve Program ("Short Grass/CRP"); Sand Sagebrush; Mixed-Grass; and Shinnery Oak:



ROA.68, 72. Although population estimates vary and—by FWS's admission—are somewhat unreliable, FWS estimates that approximately 72%, less than 5%, 15%, and 9% of the LPC occupy these ecoregions, respectively. ROA.70-72.

FWS, the States, and environmental groups have monitored the LPC for decades and employ extensive conservation programs. ROA.70, 201, 441-42. At least sixteen different conservation programs exist today. ROA.4545. Because LPCs inhabit primarily private lands, voluntary conservation efforts are key. ROA.441; *Kan. Nat.*, 780 F. Supp. 3d at 653 n.6.

**B.    The ESA allows FWS to divide a species into Distinct Population Segments (DPSs) in rare circumstances.**

The ESA provides "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved[.]"  16 U.S.C. § 1531(b).  It directs the Secretary of the Interior to promulgate regulations to determine whether any species is "endangered" or "threatened."  *Id.* §§ 1532(6), (20), 1533(a)(1).

"Species" is statutorily defined to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  *Id.* § 1532(16).  But "distinct population segment" is not defined.  Thus, in 1996, the Department of the Interior adopted its "Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the [ESA]" ("DPS Policy").  61 Fed. Reg. 4,722.  To qualify as a DPS, a proposed segment must be both "discrete" *and* "significant."  *Id.* at 4,725.  Relevant here, a segment is "discrete" if, *inter alia*, "[i]t is markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors."  *Id.*  It is "significant" if it is "importan[t] to the taxon to which it belongs."  *Id.*

Per legislative instruction, FWS's authority to divide a species into DPSs should be used "sparingly and only when the biological evidence indicates that such action is warranted."  *Id.* at 4,722.

FWS considers the listing status based on the "species" (or DPS) identified. A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range …." 16 U.S.C. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). "While an endangered species may not be *taken*, full stop … a threatened species does not enjoy protection unless and until a 4(d) Rule issues. … And it always issues." *Kan. Nat.*, 780 F. Supp. 3d at 653 (citing 16 U.S.C. §§ 1532(19) (defining "take"), 1533(d) (Section 4(d) rule)).

## C.    FWS has historically declined to divide the LPC into DPSs.

### 1.    The LPC was unlisted for decades.

In 1995, FWS received petitions under the ESA to list the LPC as threatened throughout its range. *See Permian Basin*, 127 F. Supp. 3d at 704. For decades, FWS did not list the LPC as a single species or otherwise. Rather, in 1998, FWS assigned the LPC a lower priority number of "8." 79 Fed. Reg. 19,975. The LPC maintained that lower priority for a decade, until FWS increased it to a "2" in 2008. *Id.*

### 2.    In 2014, FWS listed the LPC as threatened throughout its range— but declined to designate DPSs.

Around 2008—during President Obama's administration—nonprofit groups sued FWS for "failure to make expeditious progress toward listing" the LPC. *Id.* In 2011, FWS "entered into a settlement agreement … that impacted multiple cases

nationwide" and agreed "to submit a proposed listing rule for the [LPC]" by 2012. 86 Fed. Reg. 29,434.

FWS issued its proposed and final rules in 2012 and 2014, respectively. *Permian Basin*, 127 F. Supp. 3d at 704. In each, FWS rejected that the LPC qualified for DPSs. 79 Fed. Reg. 19,976-77, 19,986. After classifying the single-species LPC as threatened, FWS also issued a Section 4(d) rule to regulate its "take." *See* 16 U.S.C. § 1531, *et seq.*; 79 Fed. Reg. 20,073.

### 3.    In 2015, the district court vacated the 2014 Rule.

Industry groups and counties sued FWS, arguing that FWS violated its Policy for Evaluation of Conservation Efforts ("PECE"). *Permian Basin*, 127 F. Supp. 3d at 703; *see* 68 Fed. Reg. 15,100.

The district court (Judge Robert Junell, presiding) vacated the 2014 Rule on summary judgment. *Permian Basin*, 127 F. Supp. 3d at 706-24. The PECE requires FWS to account for "formalized conservation efforts," even if "not yet fully implemented," and assess specific criteria to allow informed findings on a fledgling conservation effort's prospective impact. *Id.* at 706-08. But while FWS *purported* to comply with the PECE, it did not perform the "rigorous" analysis required. *Id.* at 706-24.

**D.** **In 2022, FWS first listed the LPC and designated Northern and Southern DPSs.**

After the district court vacated the 2014 Rule, nonprofits (including Appellant CBD) petitioned FWS again. 86 Fed. Reg. 29,432-34. This time, the petition asked FWS to designate DPSs—despite FWS not finding DPSs just two years earlier. *See id.* In 2019—during the Biden administration—the nonprofits sued FWS for failing to timely issue a 12-month finding. *Id.* Again, the nonprofits and FWS reached a settlement requiring FWS to issue that finding. *Id.*

In 2021 and 2022, respectively, FWS issued its proposed and final rules—i.e., the Final Rule at issue here. ROA.68-69. The Final Rule acknowledges that the LPC's population has grown since 2014. ROA.71. But it divides the LPC into two DPSs—Northern and Southern. ROA.68.[3] The Northern DPS accounts for ~91% of the LPC, while the Southern DPS constitutes only ~9%. ROA.68.

Per the Final Rule, this designation was proper because the DPSs allegedly are discrete *and* significant—separate but required elements under the DPS Policy. 87 Fed. Reg. 72,679-81; ROA.73-75.

FWS found the DPSs are "discrete" because:

- The Southern DPS is "separated from the" Northern DPS by "approximately 95 mi[les]"; and

---

[3] The northern segment includes the Short Grass/CRP, Sand Sagebrush, and Mixed-Grass Ecoregions. The southern segment includes the Shinnery Oak Ecoregion, which spans Texas and New Mexico.

- "Because there is no connection between the two population segments, there is subsequently no gene flow between them[.]"

ROA.74.

FWS found the DPSs are "significant" on the same or similar bases:

- "[L]oss of the population segment would result in a significant gap in the range of the taxon. As discussed above, the southern population segment and the northern population segment are separated by approximately 95 mi[les] …."

- "The [Southern DPS] is more distinct from all three ecoregions in the [Northern DPS] than those ecoregions are from each other … The [Southern DPS] was likely historically connected to the remainder of the range, but the two parts have been separated since approximately the time of European settlement. Therefore, the two segments of the range are genetically distinct …."

ROA.74-75.

But FWS internally flagged the weakness of its "significance" findings—based on the 95-mile separation and alleged resulting genetic differences:

> **Commented [FB41]:** Sure, but it's pretty typical for populations to be genetically distinct from each other. Usually for significance, we talk about the magnitude of the differences. How different is different? From the genetic data, are we able to estimate the length of time that they've been separated? Are there unique alleles that might convey different adaptive capacities?

ROA.5409. A commenter flatly responded, "[T]here's not much more we can say here. Part of the issue is that these populations were likely only separated in the last hundred years." ROA.5409.[4]

---

[4] Nor did FWS find any "different adaptive capacities," as the first commenter hoped. ROA.5418 (Final Rule: "[I]t is unknown how the [alleged] genetic variation related to differences in adaptive

Yet with the species divided, FWS listed the Southern DPS as endangered and the Northern DPS as threatened. ROA.68. The Final Rule prohibited all "take" for the endangered Southern DPS and, with its included Section 4(d) rule, prohibited most forms of "take" for the Northern DPS. ROA.68, 142; *see supra* p. 9.

**E.    Litigation ensued in this case and in others.**

**1.    Plaintiffs sued FWS to challenge the Final Rule.**

Plaintiffs sued FWS in March 2023. ROA.27, 427; *see* ROA.895-1124, 2131-2176. All alleged that FWS violated the PECE, ESA, and APA, among other laws. ROA.895-1124, 2131-76.

Most relevant here, Plaintiffs alleged that the DPS finding is unlawful because the Final Rule "does not demonstrate that the LPC populations meet the two elements to establish a DPS under Service Policy: discreteness and significance." ROA.46, 64.

**2.    In a different case, other plaintiffs successfully challenged the Section 4(d) rule protecting the Northern DPS.**

Separately, other plaintiffs sued to vacate the 4(d) rule for the Northern DPS and its 91% of LPC population. *See Kan. Nat.*, 780 F. Supp. 3d at 653-63. In March 2025, the district court vacated the 4(d) rule because FWS was required—but failed—to consider the costs of compliance. *Id*.[5]

---

capacity …").

[5] Appellants did not seek to intervene in that case, and no appeal occurred.

---

The court left the threshold issue of the DPSs' validity "for a different day"—i.e., for this case. *Id.* at 653 n.9.

## F.    In 2023, the district court denied Intervenors' first motion to intervene, and Appellants did not appeal—while Congress sought to repeal the Final Rule.

In June 2023, Appellants moved to intervene as defendants. ROA.1191-1229; *see* ROA.1263-1300. Appellants argued the following elements for intervention as a matter of right:

- **Standing:** Appellants argued that "[i]ntervention as of right requires an independent showing of Article III standing[,]" and Appellants alleged they had "associational" standing through their members. ROA.1201-04;[6]

- **Timeliness:** Appellants argued their motion was "timely," noting timeliness "is not limited to chronological considerations ...." ROA.1205-06; and

- **Inadequate Representation:** Appellants argued that FWS did not "adequately represent" Appellants because FWS's "actions have historically been averse to" Appellants' interests. ROA.1208-09.

Appellants also moved for permissive intervention. ROA.1209-11.

In August 2023, the district court denied Appellants' motion. ROA.1466-74. It denied intervention as a matter-of-right because Appellants "fail[ed] to rebut the presumption of adequate representation." ROA.1473. It denied permissive

---

[6] The court ruled that Appellants had no duty to establish standing because they did not *then* "seek relief that differs" from the existing parties. ROA.1469. Even if true *then*, binding law requires Appellants to demonstrate standing *now*. *Infra* p. 26.

intervention because Appellants "may more appropriately represent their interest by filing an amicus brief[.]" ROA.1472. Appellants did not appeal. *See infra* p. 25.

Meanwhile, Congress sought to repeal the Final Rule. In May and July 2023, the Senate and House of Representatives passed Senate Joint Resolution 9, which invoked the Congressional Review Act and stated the Final Rule "shall have no force or effect." S.J. Res. 9, 118th Cong. (2023). President Biden vetoed the bill. Presidential Statement on Vetoing S.J. Res. 9, September 26, 2023.

## G.    The parties litigated this case and, in January 2025, FWS reevaluated its options.

In the twenty-one months after the district court's first intervention ruling, Plaintiffs prosecuted the case, including through extensive disputes regarding the administrative record. *E.g.*, ROA.1642, 2337. Throughout, Plaintiffs substantiated their allegations that FWS's listing violated federal law.[7]

By January 2025, after facing Plaintiffs' challenges, interim rulings, and the change in federal administration, FWS decided to "[re]evaluat[e] their options." ROA.4441, 4541-42.

---

[7] For example, internal FWS comments flagged that FWS *again* failed to properly consider new conservation efforts: "I thought we lost the last listing rule on the basis that we did not consider future conservation under PECE …." ROA.4573-74. And the district court struck from the administrative record an undated memo—purporting to address conservation efforts—when FWS would not produce metadata showing it was created *before* the listing rather than *after* (or *because of*) the litigation. ROA.2337-54.

**H.     In May 2025, Appellants again sought to intervene.**

On May 1, 2025, Appellants filed a "Motion for Reconsideration and Second Motion to Intervene." ROA.4460-71, 5885-88 (reply). Appellants argued that "the government's inability or unwillingness to represent movants' interests is now apparent." ROA.4460. Appellants relied on executive orders and press releases issued on January 29 and February 3, 2025, respectively:

> adequate representation. Order Den. Mot. to Intervene at 8, ECF No. 36. But the government's inability or unwillingness to represent movants' interests is now apparent. The new administration has made clear in multiple executive and administrative orders its opposition to ESA protections for species that could potentially interfere with its energy dominance agenda.

ROA.4460 (emphasis added), 4465-66. Per Appellants, these executive notices were "overt expressions of opposition to [Appellants'] policy interests," ROA.4466, and "the change of administration in January foretold a potential and ominous shift in position in *this and in other cases* …." ROA.5886 (emphasis added).

Despite this self-described "clear" notice, Appellants argued they "could not realistically have moved" to intervene until three months later, when "the Federal Defendants appear[ed] poised to settle …." ROA.4464. For this, Appellants relied on FWS's motions to extend the briefing schedule—filed on March 12, March 26, and April 25, 2025—which disclosed FWS's intent to "evaluat[e] their options" and "continue … conversations" regarding "settlement options." ROA.4441, 4448, 4454.

All parties opposed intervention.  ROA.4554-59, 4569-70, 5858-61.

## I.    FWS moved for voluntary vacatur and remand.

Plaintiffs and FWS did not settle.[8]  *See* ROA.5859.

Instead, in March 2025, FWS filed a motion for voluntary remand with vacatur.  ROA.4526-38.  FWS conceded "an error in its application of the DPS Policy in making the foundational determination of what entity might qualify for listing under the ESA."  ROA.4531-32.

FWS based its concession on a "careful review of the Final Listing Rule and the supporting analysis[.]"  ROA.4532.  Per Acting Regional Director Leston Jacks, FWS "improperly applied the DPS Policy and did not provide a sufficient justification that the two identified population segments of the lesser prairie-chicken are significant for the purpose of finding Distinct Population Segments."  ROA.4543; *see* ROA.4531.

Jacks testified that FWS improperly conflated the "distinct" and "significant" elements:

> After determining that the population segments were discrete, the Service concluded that the ecoregions were both significant, as defined by the DPS Policy, because loss of the Southern population segment would result in a significant gap in the range of the species.

---

[8] Appellants characterize FWS's concession as a "sue and settle" tactic.  But, unlike Appellants' Obama- and Biden-era suits and settlements that ultimately led to listings, Plaintiffs and FWS did not settle.  This is why Industry Plaintiffs—notwithstanding FWS's concession—moved for summary judgment on the Final Rule's many other deficiencies.  ROA.4573.

…

> Upon reevaluating this conclusion, particularly in light of the allegations raised in the complaints, we now believe the conclusion was in error. This significance conclusion did not consider whether the gap in the range would actually be significant for the entire species. Instead, the Service only relied on the initial determination that the two population segments were physically separated by 95 miles.

ROA.4544.  Per FWS, this error infected *both* bases for significance referenced in the Final Rule:

> [5] The Final Listing Rule also discusses whether genetic differences between the two population segments render them "significant" within the meaning of the DPS Policy. 87 Fed. Reg. at 72680. But this portion of the significance determination also relies upon the physical separation of the two population segments to support its determination that the two populations were genetically distinct from each other and, thus, "significant to the taxon as a whole." *See id.* Accordingly, the Service's failure to consider whether the gap in the range would be significant for the species undermines both bases for determining that the population segments were "significant" as defined by the DPS Policy.

ROA.6178.  Or, as Jacks explained, FWS's error "taints the very foundation of the Final Listing Rule."  ROA.4533-34, 4544-45.

FWS maintained that remand-with-vacatur was proper, including because its "confession of error allows the Court to render a merits determination" declaring the Final Rule "unlawful."  ROA.6037.  And FWS emphasized that vacatur would not be disruptive.  The "reevaluation process" could be "completed within 18 months of" vacatur; "at least sixteen different voluntary [LPC] conservation programs" exist in the interim; and the "resulting temporary lapse in federal protections would not be substantially harmful …."  ROA.4545-46.

Consistent with its representations, FWS is actively reevaluating the LPC's appropriate listing status. On February 26, 2026, FWS initiated "a new 12-month petition finding process for the [LPC]," complete with notice and public comment. 91 Fed. Reg. 9,547.

Although not a party, Appellants responded to FWS's motion for vacatur and remand—and FWS replied, reaffirming its concession. ROA.5869-84, 6035-42.

## J.     The Industry Plaintiffs moved for summary judgment.

Meanwhile, the Industry Plaintiffs moved for summary judgment on FWS's conceded error and several others. ROA.4573-606. These grounds included:

- FWS "violated its own DPS Policy when it concluded there are two [DPSs] …"; and

- FWS "violated the ESA and PECE Policy when it failed to consider or evaluate new conservation efforts"—"the *same fatal flaw* that led [the district court] to vacate the 2014 Listing Decision."

ROA.4573, 4583. FWS responded, again conceding error. ROA.6172.

Like FWS, the Industry Plaintiffs sought vacatur—this circuit's default and presumptive remedy. ROA.4603; *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024).

## K.     The district court denied intervention, credited FWS's concession, and ordered vacatur and remand.

On August 12, 2025, the district court denied Appellants' renewed motion for intervention, granted FWS's motion for vacatur and remand, and denied the Industry

Plaintiffs' summary judgment motion as moot.  ROA.6189-203.

### 1.    Intervention.

The court denied "intervention again for multiple reasons":

- "Center and TCE now untimely move to intervene"—"months after they claim to have determined their interest may no longer be protected and more than two years after their first motion";

- "Center and TCE fail to rebut the presumption that Defendants represent their interest"; and

- "they fail to explain their role as defendant-intervenors with no claim or defense whatsoever."

ROA.6200 & n.70.  "What's more, intervention at this point would prejudice a conceded-to case."  ROA.6200 & n.70 (citing *United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir. 1990) ("Litigation will have no end if every time the parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in air.")).

The court noted that Appellants *could* have filed amicus briefs—as the court had twice invited.  ROA.6200-01 & n.75.

### 2.    Vacatur-and-remand.

On the merits, the district court observed that FWS's concession of error was "foundational" and rendered the Final Rule unlawful:  FWS "commits no handwaving when it also concedes that this failure causes the Final Listing Rule to be 'unlawful' and therefore 'not in accordance with law.'"  ROA.6196-97 (citation

omitted). The court therefore held that vacatur was appropriate, recognizing its APA-duty to "'set aside' those actions 'found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" ROA.6197 (citation omitted).

To "cover all bases," the court added, "this is not one of those 'rare cases' requiring remand without vacatur." ROA.6198. "For one, [FWS] persuades that the error identified is foundational"; "cannot be resolved by remand alone"; and would not produce "disruptive consequences." ROA.6198.

Appellants alone now appeal—but must first show a right to do so.

## STANDARD OF REVIEW

"[E]very federal appellate court has a special obligation to satisfy itself … of its own jurisdiction …." *Vista Health Plan, Inc. v. United States Dep't of Health & Hum. Servs.*, 31 F.4th 946, 950 (5th Cir. 2022) (citation omitted). Appellants "bear the burden to establish jurisdiction[,]" and this Court assesses "questions of subject matter jurisdiction *de novo*." *La. Dep't of Env't Quality v. U.S. E.P.A.*, 730 F.3d 446, 448 (5th Cir. 2013) (internal quotation marks and citation omitted). This includes "[l]egal questions relating to standing and mootness[.]" *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013).

Assuming jurisdiction exists, this Court reviews orders denying intervention as a matter of right under Federal Rule of Civil Procedure 24(a) de novo, with one

exception—an order based on untimeliness is reviewed for abuse of discretion. *Rotstain v. Mendez*, 986 F.3d 931, 936-37 (5th Cir. 2021).

A district court's decision to vacate an unlawful agency action—or simply remand—is also reviewed for abuse of discretion. *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (cleaned up).

## SUMMARY OF THE ARGUMENT

Appellants seek to prosecute an appeal this Court lacks jurisdiction to resolve. Because no existing party challenges the vacatur-and-remand order, Appellants must establish Article III standing to appeal. They have not. Appellants do not mention standing in their opening brief. And the cursory and conclusory affidavits they offered below fail to demonstrate any concrete, imminent injury-in-fact, *much less an injury resulting from the judgment below*—the relevant inquiry.

Even if Appellants had standing, this Court still lacks jurisdiction. The vacatur-and-remand order Appellants challenge is not an appealable final judgment. Rather, because the district court remanded for FWS to reassess the LPC's listing, the vacatur-and-remand order is interlocutory. That is the law in this circuit and others—and it renders Appellants' procedural challenge to the district court's denial

of intervention moot.  For either of these two reasons, this Court lacks jurisdiction.

Beyond these threshold issues, Appellants' procedural challenge to the denial of intervention as a matter-of-right fails to satisfy Appellants' heavy appellate burden.[9]  The district court reasonably exercised its discretion to find that Appellants' intervention was untimely.  Appellants waited three months from their self-described "clear" notice that the changed presidential administration might not represent their interests before renewing their intervention effort.  ROA.4460.  This delay, coupled with its attendant prejudice to the existing parties and the lack of prejudice to Appellants, establishes that the district court did not abuse its discretion.

Even if this Court disagrees, it should reject Appellants' substantive argument—that the district court erred by vacating the Final Rule allegedly without ruling on its legality.  This contention rests on the false premise that an agency's *concession* of error may never support an unlawfulness finding.  But even assuming the APA limits a district court's vacatur power (an open question), it does so only by requiring a finding of "unlawfulness"—and the district court's ruling crediting FWS's factual concession did so.  Indeed, this Court has twice vacated agency rules following agency concessions, including after en banc review in a recent case. *Airlines for Am. v. Dep't of Transp.*, 166 F.4th 487, 488-89 (5th Cir. 2026) (per curiam); *Texas v. EPA*, 122 F.4th 1008, 1009 (5th Cir. 2024).  Nothing in the APA

---

[9] Appellants do not appeal the denial of permissive intervention.

requires district courts to decide the full-fledged "merits" when the agency has conceded foundational error and stated its intent to start anew. That wastes time and resources.

Ultimately, Appellants' challenge boils down to claimed interim harm—i.e., alleged harm occurring (if at all) only while FWS reassess its listing decision. Appellants do not contest remand *without* vacatur. Nor do Appellants contest FWS's right to rescind the listing after notice-and-comment. Thus, the only question is whether vacatur is appropriate *while* FWS reconsiders the listing. Existing law— the so-called "*Allied Signal* factors"[10]—provide a framework for that analysis, and the district court rightly applied it.

The court set aside the Final Rule by considering the error's severity (factor 1) and vacatur's disruptive consequences (factor 2). It held that the foundational DPS error necessarily "taint[ed]" the listings—making the error severe. ROA.6198. And it found that any "disruptive consequences" would be "short lived and minimized." ROA.6198. That finding is all the more supported today—when (1) a *different* court decision eliminated any "take" prohibitions for the 91% of the LPC constituting the Northern DPS; and (2) FWS is actively reassessing the LPC's appropriate listing status.

If the Court does not dismiss for lack of jurisdiction, it should affirm.

---

[10] *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993).

## ARGUMENT

This appeal involves three types of issues—(1) *jurisdictional* questions of appellate jurisdiction, standing, and mootness; (2) the *procedural* question of the propriety of the district court's denial of intervention; and (3) the *substantive* question of the propriety of vacatur of the Final Rule.

Jurisdiction comes first. *Vista Health*, 31 F.4th at 950. Because the Court lacks jurisdiction, it should dismiss the appeal. If the Court reaches the remaining issues, it should affirm.

### I.    The Court lacks jurisdiction because Appellants did not timely appeal the first order denying intervention.

Appellants' notice of appeal purports to appeal the first order denying intervention. ROA.6205-06. The Court indisputably lacks jurisdiction over that ruling. *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc) ("The denial of a motion to intervene of right is an appealable final order under 28 U.S.C. § 1291."). The State Plaintiffs brief the Court's jurisdiction—or lack thereof—over the second ruling. *See Hopwood v. Texas*, 78 F.3d 932, 960 (5th Cir. 1996) ("There is no caselaw in this circuit that directly addresses how to review successive motions to intervene.").

### II.    This Court otherwise lacks jurisdiction.

Even assuming FWS's appeal of the second order denying intervention is timely, Appellants face two additional jurisdictional bars: standing and mootness.

### A.     Appellants lack standing to appeal.

The Court should dismiss because Appellants lack Article III standing to appeal the vacatur-and-remand order.

#### i.     Because FWS does not challenge the vacatur-and-remand order, Appellants must establish Article III standing.

When no existing litigant appeals, an actual or putative intervenor must establish its standing to do so. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) ("As the Court has repeatedly recognized, to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing."); *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."). Stated otherwise, "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." *Diamond v. Charles*, 476 U.S. 54, 68 (1986).

Thus, even assuming Appellants did not have to establish standing when they originally moved to intervene, *see* ROA.1469, they must do so now.

#### ii.     Article III requires Appellants to establish an injury-in-fact traceable to the judgment below and redressable by a favorable ruling.

Article III standing has three elements:  (1) The party must have suffered an injury-in-fact—i.e., an invasion of a legally protected interest that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"Where standing to appeal is at issue, appellants must demonstrate some injury *from the judgment below*." *Sierra Club v. Babbitt*, 995 F.2d 571, 575 (5th Cir. 1993); *see West Virginia v. EPA*, 597 U.S. 697, 718 (2022); *Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023). Appellants cannot.

### iii.    Appellants have failed to establish Article III standing.

Although binding law requires Appellants to prove standing, Appellants have not done so in their opening brief. "Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 & n.4 (5th Cir. 2019). Appellants do not address standing at all.

To the extent Appellants ever raised any basis for standing, they alleged only *associational* standing in their first motion to intervene below. ROA.1273-76. But that evidence did not support standing then—and it does not support standing now.

Associational standing requires that "the association's members would independently meet the Article III standing requirements[.]" *Ctr. for Biological Diversity*, 937 F.3d at 536 (cleaned up). When associational standing is alleged, the

injury must be specific to Appellants' *members*; "[i]njury to the environment is insufficient." *Id.* at 537. True enough, "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest of purpose of standing." *Lujan*, 504 U.S. at 562-63. "But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 563 (citation omitted). "A threatened future injury must be certainly impending to constitute an injury in fact, and a theory of standing which relies on a highly attenuated chain of possibilities does not satisfy the certainly-impending requirement." *Haaland*, 86 F.4th at 666 (cleaned up).

No member of CBD or TCE satisfies these standards. To support their standing theory below, Appellants attached declarations of various members, claiming harm caused by allegedly declining LPC populations. ROA.1285-1300. Fundamentally, these allegations fail to demonstrate an injury *resulting from the judgment. E.g., Haaland*, 86 F. 4th at 666-67. Regardless, these speculative and vague contentions lack the concreteness and particularity that binding law requires.

### a.   No CBD member has standing.

CBD offered the May 2023 declarations of three members. None are sufficient.

James Tutchton.   James Tutchton claimed a "long standing recreational, professional, and aesthetic interest in the lesser prairie-chicken since the 1990s." ROA.1275.  In 2023, he made recent visits to Colorado to view an LPC lek,[11] and he "plan[ned] to visit this lek again in April or May 2024."  ROA.1287.  According to Tutchton:

> Without [ESA protection], I believe the bird will slide closer to extinction and will likely be extirpated from Colorado …. Without such legal protections there will be fewer, perhaps no, Lesser Prairie Chickens in [Southeastern Colorado] and that will harm or destroy my interests in viewing the species in the wild and reduce my quality of life.

ROA.1287-88.  This is insufficient.

First, the declaration does not allege an "imminent" injury.  An "affiants' profession of an 'inten[t]' to return to the places they have visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough."  *Lujan*, 504 U.S. at 564.  These "'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."  *Id.*  Nor is the "impending injury" prong satisfied here, where the district court's order merely vacates the listing during reconsideration—and there is no evidence that the LPC will "slide closer to

---

[11] A lek is an area where male LPCs congregate to court females.  ROA.69.

extinction" during that limited period. *See* ROA.1287-88; *e.g.*, *Haaland*, 86 F.4th at 663.

Second and third, to the extent Tutchton does allege concrete plans to return, his claimed injury is neither traceable to the district court's vacatur-and-remand order nor redressable by a favorable appellate ruling. Regardless of any merits decision here, the Northern DPS (the only DPS which Tutchton sought to view) will remain unprotected through the un-appealed Rule 4(d) vacatur in *Kansas Natural Resources*, 780 F. Supp. 3d at 663; ROA.72. Thus, Tutchton's speculative injury is not traceable to—i.e., caused by—the district court's vacatur. Nor is it redressable by a favorable ruling. *See Lujan*, 504 U.S. at 560.

Daniel Ginter. Daniel Ginter enjoys birdwatching in New Mexico. ROA.1290. Ginter expressed dismay that he has *never* observed the LPC—and feared removal of ESA protection would decrease his chances:

> While I have always hoped to see a[n] [LPC] one day, I have never seen one and don't believe I will ever see one due to their dwindling population and habitat.

ROA.1291. Again, without any "concrete plans" to search for the bird (in the past or now), Ginter has no "imminent" injury. *See Lujan*, 504 U.S. at 564. Moreover, because Ginter never observed the LPC even when it retained ESA protections, he cannot establish that his alleged injury is "fairly traceable" to the district court's vacatur-and-remand order—which has limited durational effect, regardless. *See id.*

at 560.

Brett Hartl.  Brett Hartl is a CBD officer who has viewed LPCs since 2008. ROA.1292-94.  Hartl intended to search for the bird in 2023 and 2024 and alleged the loss of ESA protections will make it "more difficult" for him to observe the LPC. ROA.1296.  But the same vagueness that plagues Tutchton's and Ginter's declarations plague Hartl's.  Hartl has not shown a concrete or imminent injury, much less an injury that is traceable to a mere remand-with-vacatur while FWS reassesses the propriety of listing the LPC.  *Lujan*, 504 U.S. at 564.

### b.      No TCE member has standing.

TCE also lacks standing.  It offered only the declaration of Robin Schneider, TCE's Executive Director.  ROA.1298.  Schneider alleged that "TCE and its members would be harmed if the bird were to be extirpated from Texas …." ROA.1299.

Schneider's declaration is insufficient.  Not only does it fail to identify any "concrete plans" to observe the LPC, it also fails to specify any members with such an interest, as required.  *Deep S. Ctr. for Env't. Just. v. EPA*, 138 F.4th 310, 320 (5th Cir. 2025) ("Associational standing requires petitioners to identify a specific member who would otherwise have standing to sue in his own right.") (cleaned up). Nor does any evidence support an allegation that the LPC will be "extirpated from Texas" during remand.  ROA.1299.

---

\*     \*     \*

Appellants may participate in the notice-and-comment process on remand—and, if necessary, seek judicial review of FWS's determination. *See* 5 U.S.C. § 702. But the question before this Court is whether any of Appellants' members have suffered an injury-in-fact traceable to the vacatur-and-remand order and redressable by this Court. Because the answer is no,[12] the Court should dismiss the appeal.

### B. Because the vacatur-with-remand order is non-final, Appellants' challenge to the intervention order is moot.

Even if the Court determines Appellants have standing, it should dismiss because the vacatur-and-remand order is non-final, rendering Appellants' challenge to the denial of intervention moot.

This Court lacks authority to resolve moot questions—i.e., to "decide questions that cannot affect the rights of the litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (cleaned up); *see* U.S. Const. art. III, § 2. "A matter is moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (cleaned up). Applied here, "if reversing the district court's denial of

---

[12] Furthermore, Appellants are not the "object" of the district court's order; it does not require them to do anything. *E.g.*, *Babbitt*, 995 F.2d at 575 ("On its face, the judgment orders nothing of the appellants."). Nor is it appropriate for Appellants to step into FWS's or the DOJ's shoes to pursue a listing and appeal that each have abandoned and which FWS is actively reevaluating. *See generally Bethune-Hill*, 587 U.S. at 671 ("One House of [Virginia's] bicameral legislature [could not] alone continue the litigation against the will" of Virginia's chosen representative.).

---

intervention could not help the prospective intervenors further their interests, the intervention dispute is moot." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 69 F.4th 588, 593 (9th Cir. 2023).

Appellants challenge the intervention order *so that* they may appeal the vacatur-and-remand decision. But this Court cannot grant Appellants any effectual relief, since the underlying vacatur-and-remand order is not final under 28 U.S.C. § 1291.

### i.    Orders remanding to an administrative agency are generally non-final.

Fifth Circuit precedent is well-established: "[g]enerally, district court orders remanding to an administrative agency are not final orders." *Vista Health*, 31 F.4th at 951 (quoting *Adkins v. Silverman*, 899 F.3d 395, 400 (5th Cir. 2018)); *Mem'l Hosp. Sys. v. Heckler*, 769 F.2d 1043, 1044 (5th Cir. 1985). Other courts and commentators agree, particularly as to private parties who may challenge the agency action following remand. *See Alsea Valley Alliance v. Dep't of Com.*, 358 F.3d 1181, 1183 (9th Cir. 2004); 15B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3914.32 & n.32 (3d ed.) ("The general rule is that a remand is not appealable as a final decision, even if the court of appeals fears that the remand was ill-advised." (citations omitted)); *Friends of Animals v. United States Bureau of Land Mgmt.*, No. 24-5155, 2026 WL 478732, at *7-8 (D.C. Cir. Feb. 20, 2026) (similar); *cf. Kewayfati v. Bondi*,

165 F.4th 342, 346 (5th Cir. 2026) ("Federal courts are courts of limited jurisdiction—not overseers of unfinished agency business.").[13]

This case falls within that general rule. When the district court vacated the ESA listing, it emphasized that FWS has unfinished business on remand. ROA.6198 ("[T]he task before Fish and Wildlife is to go back and determine the listable entity for purposes of the listing determination."). For its part, FWS represented its "inten[t] to undertake an entirely new [ESA] analysis" on an expedited schedule. ROA.4535. FWS will—and actively is—complying with notice and comment requirements, and Appellants may participate. ROA.4545. And, as FWS acknowledged, its reevaluation could produce varied outcomes, including a listing or a decision that no listing is warranted. ROA.4545. Either way, § 1291 requires *finality*—and the district court's vacatur-and-remand order is not final.

Two Ninth Circuit decisions are particularly instructive. First, in *Alsea Valley*, the court assessed its jurisdiction over an attempted intervenor's appeal from the district court's vacatur of an ESA listing decision for a DPS of coho salmon. 358 F.3d at 1183. Upon vacating the listing, the district court remanded to the National Marine Fisheries Service for reassessment. *Id.* The Ninth Circuit dismissed the appeal, reasoning that appellate courts lack jurisdiction over remand orders unless

---

[13] *See also, e.g., Ctr. for Biological Diversity*, 69 F.4th at 591; *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 762 (8th Cir. 2009).

"a holding of nonappealability would effectively deprive the litigants of an opportunity to obtain review." *Id.* at 1184-85 (citation omitted). Because "no aspect of the district court's ruling vitiate[d] [conservation organizations]'s access to appellate review of the eventual outcome of the district court's decision," the vacatur-and-remand order was not final, and the putative intervenor could not immediately appeal. *Id.* at 1185. Rather, upon the agency's ultimate listing determination, the would-be intervenors could *then* "challenge [that] action." *Id.*

Second, relying on *Alsea*, the Ninth Circuit recently dismissed as moot an appeal from a district court's denial of intervention when the court also vacated-and-remanded a Bureau of Land Management ("BLM") rule. *Ctr. for Biological Diversity*, 69 F.4th at 591. Because the underlying order that the putative intervenors sought to challenge was not appealable, the court could not grant any effectual relief. *Id.* at 593. Relying on *Alsea*, the court held that the appellants could challenge the agency's findings on remand, after it reconsidered the listing process. *Id.* Thus, the court lacked jurisdiction to review the order, rendering the intervention ruling moot. *Id.* at 593-94.[14]

The same is true here: If FWS issues a new rule protecting the LPC or dividing it into protected DPSs, "Appellants will have gotten what they wanted."

---

[14] More recently, the D.C. Circuit held it lacked jurisdiction over a district court order partially vacating a BLM rule and remanding that rule to the agency for reconsideration. *Friends of Animals*, 2026 WL 478732, at *7-8.

*Id.* at 595. If not, "Appellants will be able to challenge that decision then, including through an eventual appeal as needed." *Id.*[15] Accordingly, the district court's vacatur order is interlocutory, and Appellants' intervention appeal is moot.

### ii.    No basis exists to exempt the vacatur-and-remand order from the general rule.

No exception applies. Under appropriate circumstances, this Court has jurisdiction "when the *agency* would be unable to later appeal the issue that is the subject of the remand order." *Adkins*, 899 F.3d at 401 (emphasis added).[16] Of course, FWS was the party that requested remand. Regardless, once FWS makes further findings on the LPC's status, all interested parties may obtain review. *See* 5 U.S.C. § 702.

Nor does the collateral-order doctrine—which Appellants have not invoked— permit review. That doctrine permits a "practical construction" of § 1291 in "narrow" circumstances to allow immediate review of a "small class" of rulings, *Will v. Hallock*, 546 U.S. 345, 349 (2006), but the vacatur-and-remand ruling here

---

[15] The court in *CBD* commented that its "no jurisdiction" holding "d[id] not include the rare instances in which courts have impermissibly remanded and vacated rules without first holding them unlawful." *Id.* at 592 n.2 (citation omitted). But, as discussed below, the district court *did* find the Final Rule unlawful.

[16] This exception applies only to the agency, not to private parties. *Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 657 (D.C. Cir. 2013) (We have "consistently declined invitations to apply [the collateral-order] doctrine to private-party appeals from remand orders."); *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, No. 06-3466, 2007 WL 2141941, at *2-3 (6th Cir. July 26, 2007) (per curiam) (similar); *see* 15B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3914.32 & n.32 (3d ed.) (similar).

---

is not one of them.  Practicality supports no immediate appeal when (1) the remand could render it moot, (2) Appellants may challenge the agency decision otherwise, and (3) due to the separate vacatur of the Section 4(d) rule, no ESA protections exist for the 91% of LPC constituting the Northern DPS, regardless.

Appellants may argue that the vacatur remedy alone merits immediate review. *See* Br. at 50 (not contesting remand).  But courts hold that remand orders are non-final and do not uncouple vacatur from remand to avoid that result.  *E.g.*, *Alsea*, 358 F.3d at 1185-86 (rejecting intervenors' efforts to "parse the district court's order [by] arguing that setting aside the [rule] is a separately appealable district court decision …").  Regardless, Appellants can hardly argue that the vacatur remedy satisfies the collateral-order doctrine's weighty standards here, when (1) FWS conceded foundational error; and (2) Appellants do not contest remand or FWS's power to reconsider, which could produce a rule relisting or declining to list the LPC in short order.  ROA.4545.

Because FWS may re- or de-list the LPC, the issue boils down to interim harm, but Appellants cannot demonstrate that, either.  The district court previously vacated the 4(d) rule (which was not appealed), so no federal prohibitions on "take" exist for 91% of the LPC, regardless of the decision here.  *Supra* pp. 4, 13-14.  For the 9% in the Southern DPS, the district court found that robust conservation efforts remain in

place, ROA.6198-99, and vacatur pending reevaluation would not affect the species. ROA.4546, 6198-99.  Appellants challenge neither finding.

Finally, the district court's styled "Final Judgment" and administrative labeling that "the case is CLOSED" do not change the outcome.  *See* ROA.6204. The label "cannot control [the] order's appealability." *Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (citation omitted).  For example, in *Vista Health*, this Court considered whether it had jurisdiction over an agency remand when the district court stated that "nothing remains to resolve" and "the case is hereby CLOSED."  31 F.4th at 951; *see also Friends of Animals*, 2026 WL 478732, at *7 ("The fact that the District Court described the order as final, purported to relinquish jurisdiction to BLM, and terminated the action from its docket does not change our analysis."). Because the order nonetheless remanded a claim to an agency, this language did not create an appealable final judgment. *Id.*  The same is true here.

In short, the intervention issue is moot because this Court could not grant Appellants the ultimate relief they seek.  Because the remand-with-vacatur order Appellants wish to challenge is not appealable, this Court lacks jurisdiction and should dismiss.

## III. The district court did not abuse its discretion by finding Appellants' second motion for intervention untimely.

Even assuming Appellants could survive these threshold jurisdictional hurdles, this Court should affirm the district court's denial of intervention.  Under

Federal Rule of Civil Procedure 24(a), district courts permit certain interested parties to intervene when:

> (1) the application for intervention is timely; (2) the applicant has an interest … which is the subject of the action; (3) the applicant is so situated that the disposition of the action may … impair or impede his ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties ….

*Rotstain*, 986 F.3d at 936-37 (cleaned up); *see* Fed. R. Civ. P. 24(a).  Like the district court, Industry Plaintiffs focus on prong one—timeliness.[17]  When a district court denies a motion to intervene as untimely, as here, this Court reviews that decision for abuse of discretion.  *Rotstain*, 986 F.3d at 936.

The putative intervenor bears the burden to prove the timeliness of its intervention.  *Id.* at 937.  "Timeliness is not a word of exactitu[d]e or of precisely measurable dimensions" determined by mere "chronological considerations." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (cleaned up).  Rather, timeliness is "determined from all the circumstances."  *Id.* (cleaned up).

Courts analyze four factors to make this determination:  "[1] the length of time the movant waited to file, [2] the prejudice to the existing parties from any delay, [3] the prejudice to the movant if intervention is denied, and [4] any unusual circumstances."  *Rotstain*, 986 F.3d at 937 (citation omitted).  Applying those

---

[17] Industry Plaintiffs leave the adequacy of FWS's representation to FWS—the entity at issue. Even accepting Appellants' *in*adequacy argument, the district court committed no abuse of discretion in ruling that Appellants could and should have intervened *sooner*.

factors, the district court did not abuse its discretion.

## A. The district court reasonably concluded that Appellants waited too long to seek intervention.

In assessing timeliness, the district court first had to identify the appropriate "starting point." *Rotstain*, 986 F.3d at 937. Here, the period of delay is measured from when Appellants knew or should have known that the existing parties may no longer protect their interests. *See id.* "Actual knowledge is not required." *Stallworth*, 558 F.2d at 264.

While timeliness is determined on a case-by-case basis, this Court has held in similar circumstances that a three-month delay was "too long." *Save Our Springs All. Inc. v. Babbitt*, 115 F.3d 346, 347 (5th Cir. 1997). Other cases have affirmed the denial of intervention given similar periods of delay. *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (per curiam) ("15 weeks"); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) ("almost four months").

To be sure, Appellants argued that FWS may not be an adequate representative in *2023*—and did not appeal. ROA.1201-09. Regardless, the district court found that Appellants should have known that FWS may no longer adequately represent their interests by February 2025 at the latest, making this the "starting point." ROA.6200 n.70. That factual finding is reviewed for clear error. *See Sec. & Exch. Comm'n v. Hallam,* 42 F.4th 316, 342 n.107 (5th Cir. 2022).

The district court did not clearly err. By Appellants' own argument, February 2025—*if not earlier*—was the appropriate starting point. As Appellants argued below, "[t]he new administration has *made clear* in multiple executive and administrative orders its opposition to ESA protections for species that could potentially interfere with its energy dominance agenda." ROA.4460 (emphasis added). Per Appellants, those executive orders and press releases, dated January and February 2025, constituted "overt expressions of opposition to Conservation Groups' policy interests[.]" ROA.4466.

Appellants' admission is unsurprising. As they emphasized, one executive order directed executive agencies to "identify obstacles" to domestic energy, including ESA "species listings." Exec. Order No. 14,156, 90 Fed. Reg. 8,433 (Jan. 20, 2025); ROA.4465-66. President Trump issued similar executive orders in his first term—of which Appellants were no doubt aware—and conservation groups successfully relied on those orders to intervene in other cases. *See W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017).

Yet Appellants waited three months, until May 2025, to renew their intervention motion. ROA.4460. Whether the three-month delay is viewed in isolation or as part of the broader picture of historic antagonism Appellants painted, *see* ROA.1201-09, the district court's untimeliness finding was not an abuse of

discretion. The court properly credited Appellants' own representations to find the delay "too long." *Babbitt*, 115 F.3d at 347.

## B.    Permitting intervention after Appellants' delay would severely prejudice the existing parties.

The second factor is "the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually or reasonably should have known of his interest in the case." *Rotstain*, 986 F.3d at 938 (cleaned up). This is "the most important consideration." *Id.* (cleaned up).

Appellants' tardiness prejudices the existing parties. Most prominently, permitting intervention after Appellants' delay would squander Plaintiffs' hard-fought litigation efforts, culminating in FWS's concession, and force continued litigation—*despite* the concession that made that litigation unnecessary. These wasted efforts, and increased expense to the existing parties, weigh against intervention. *See Covington*, 499 F.3d at 466 (affirming the denial of intervention when the delay would "waste the efforts of six months of settlement negotiations, and negotiations would have to begin anew"). As the district court recognized, Appellants' intervention attempt "comes solely at the expense of the parties' pending resolution." ROA.6200 n.71.

Indeed, to permit intervention at this point would further subject Appellants to a rule that all eighteen existing parties—and the district court (and Congress)—

agree is unlawful. ROA.6200. Appellants should not be permitted to "continue the litigation against [FWS's] will"—especially in light of the new twelve-month status review that FWS has initiated. *Bethune-Hill*, 587 U.S. at 671.

## C.    Affirmance would not prejudice Appellants.

The third factor is "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied." *Rotstain*, 986 F.3d at 939 (citation omitted).

The district court's denial does not prejudice Appellants but simply allows FWS to revisit the listing process and correct its error. ROA.4546-47. FWS expressed its intent to "re-evaluate each population segment to assess whether it can be considered a 'species,' as defined in the ESA, before moving to re-assess the status of the [LPC]." ROA.4544.

And FWS is currently doing precisely that, beginning its 12-month review process in February 2026. If protection is legally merited, then FWS will relist the LPC as appropriate; if protection is unmerited, then Appellants will not have suffered any prejudice, regardless.

Moreover, as the district court noted, "any disruptive consequences of vacating the Final Rule are short lived and minimized by the sixteen existing voluntary conservation programs" in place. ROA.6198. Appellants have not challenged these supported findings—or provided any basis for why they are untrue.

**D.    Unusual circumstances further support the district court's ruling.**

Lastly, courts may consider whether any "unusual circumstances militat[e] either for or against a determination that the application is timely." *Rotstain*, 986 F.3d at 941 (citation omitted). Several such circumstances apply here.

First, Appellants brought "no claim or defense whatsoever." ROA.6200 Instead, they simply sought to contradict the government's factual concession to thwart a remedy all parties agreed was required—and "a party's seeking to intervene merely to attack or thwart a remedy rather than participate in the future administration of the remedy is disfavored." *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004). Rather, the decision to continue litigating or instead admit its error and start anew should be FWS's own. *Cf. Bethune-Hill*, 587 U.S. at 671. Notably, this Court has previously credited agency concessions and vacated. *Airlines for Am.*, 166 F.4th at 488-89 (crediting DOT's concession of error during en banc review); *Texas*, 122 F.4th at 1009.

Second, the district court considered and rejected Appellants' substantive arguments. Before and after Appellants renewed their intervention request, they filed (albeit without permission) various pleadings voicing their opposition to vacatur. *E.g.*, ROA.1303, 5869. And the district court invited amicus participation. ROA.1473, 2120-21. While a putative intervenor's opportunity to file amicus briefing typically concerns *permissive* intervention, the fact remains that Appellants

had an opportunity to be heard. *See generally Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984); *see McHenry v. C.I.R.*, 677 F.3d 214, 227 (4th Cir. 2012). Ultimately, the district court considered whether vacatur was proper—and held it *was*, given FWS's concession of error. ROA.6196-99.

Third, the unchallenged vacatur of the 4(d) rule protecting the Northern DPS in a separate proceeding constitutes another unusual circumstance weighing against timeliness. Today, no federal prohibitions on "take" exist for the 91% of the LPC in the Northern DPS. *Supra* pp. 4, 13-14. With less than 10% of the LPC even arguably impacted by the district court's vacatur, any prejudice to Appellants or their interests during the ongoing, interim reevaluation period is all the more speculative—and fleeting.

\*　　\*　　\*

The district court did not abuse its discretion in finding Appellants' intervention untimely. This Court should affirm.

## IV. Alternatively, this Court should affirm the district court's vacatur-and-remand order.

Only if the district court abused its discretion by denying intervention may this Court proceed to the substance of Appellants' argument. *See Ross v. Marshall*, 426 F.3d 745, 761 n.68 (5th Cir. 2005); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992). Even then, the district court did not abuse its discretion by vacating the Final Rule and remanding.

**A.     The APA requires courts to vacate unlawful agency action.**

"Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024) (citation omitted).  Under the APA, reviewing courts "shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2).  "Vacatur is the default remedy for violations under § 706(2)."  *Texas*, 126 F.4th at 418.

This Court reviews the vacatur of agency action for abuse of discretion.  *Id.* at 405.  Vacatur is the default remedy for APA violations, *Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 779 (5th Cir. 2024), and "remand without vacatur is available only rarely."  *Cargill*, 57 F.4th at 472.

**B.     The propriety of vacatur without an unlawfulness finding is an open question—but irrelevant here.**

Appellants challenge whether district courts may vacate an agency action without first finding the action unlawful.  Courts have diverged on this issue, and this Court has not reached it.  *See Sierra Club v. EPA*, 60 F.4th 1008, 1021 (6th Cir. 2023) ("What is not clear is whether … we have the authority to vacate the EPA's action without first finding it invalid on the merits.").  The Ninth Circuit is the only circuit that has weighed in, holding that the practice is inappropriate—albeit in a

distinguishable case not involving an express concession of error. *In re Clean Water Act Rulemaking*, 60 F.4th 583 (9th Cir. 2023). District courts are split. *Compare, e.g.*, *Navajo Nation v. Regan*, 563 F. Supp. 3d 1164, 1168 (D.N.M. 2021); *Citizens for a Healthy Cmty. v. United States Dep't of Interior*, No. 21-CV-01268-MSK, 2022 WL 1597864, at *6 (D. Colo. May 19, 2022); *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241 (D. Colo. 2011); *with Frito-Lay, Inc. v. U.S. Dep't of Lab.*, 20 F. Supp. 3d 548, 557 (N.D. Tex. 2014); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010).[18]

But this Court need not resolve that question. Whether a court can vacate an agency action without holding it "unlawful" is not at issue because the district court *did* find the Final Rule unlawful.

### C.    Because the district court found the Final Rule unlawful, it had discretion to vacate.

The district court rightly found the Final Rule unlawful by virtue of FWS's confession of error—even if it did not reach the "merits" of the Industry Plaintiffs' summary judgment motion. ROA.6196-97. Specifically, FWS conceded it did not

---

[18] To be sure, CBD has previously taken the opposite position, arguing that courts retain equitable authority to vacate a rule without an explicit finding of unlawfulness. For example, in *Center for Native Ecosystems v. Salazar*, CBD convinced a Colorado district court that "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." 795 F. Supp. 2d at 1242. As CBD put it then, because FWS declined to "defend the legality of that rule[,] the Court may exercise its authority to remand and vacate the agency action under review without conducting the full inquiry into the merits that would otherwise be required." ECF No. 55, *Ctr. for Native Ecosystems v. Salazar*, Case No. 1:09-cv-1463-JLK (June 3, 2011).

---

consider a key factor in assessing whether the proposed DPSs were actually "significant," rendering the Final Rule unlawful.

### i.      FWS conceded it improperly conducted the "significance" analysis.

As mentioned, FWS's authority to determine DPSs should be used "sparingly and only when the biological evidence indicates that such action is warranted." 61 Fed. Reg. 4,722. Nonetheless, the Final Rule divides the LPC into two DPSs—a northern and a southern segment. ROA.74.

FWS found the segments "discrete" because the Southern DPS "is separated from the northern population segment … by approximately 95 mi[les]"— purportedly satisfying the "markedly separate" test for discreteness. ROA.74. FWS then assessed the proposed DPSs' "biological and ecological significance to the larger taxon to which [they] belong[]." ROA.74. It found that both segments "are significant to the taxon as a whole"—in part because "loss of either part of the range would result in a significant gap in the range of the [LPC]." ROA.75.

FWS properly reconsidered and conceded error. As Regional Director Jacks explained, FWS's significance conclusion "did not consider whether the gap in the range would actually be significant for the entire species." ROA.4544. "Instead, the Service only relied on the initial determination that the two population segments were physically separate by 95 miles." ROA.4544; *see* ROA.4532. Stated otherwise, FWS determined each DPS was "significant" for the same reasons they

were "discrete." FWS thus "concede[d] that it improperly applied its DPS Policy in a manner that tainted the substance of the Final Listing Rule." ROA.4532. Indeed, FWS "did not provide adequate justification and analysis to support the determination that the two identified population segments of the [LPC] are 'significant' for the purpose of identifying a DPS pursuant to the DPS Policy." ROA.4532.

### ii. The district court rightly found the Final Rule "unlawful" by crediting FWS's concession.

The district court found the Final Rule unlawful after crediting FWS's concession. ROA.6197. As it noted, FWS "'must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made' and must consider all important aspects of the task at hand." ROA.6196 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). This is because the APA requires "reasoned decisionmaking" in which agency processes are "logical and rational." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998); *Michigan v. EPA*, 576 U.S. 743, 750 (2015). Hence, "agency action is lawful only if it rests 'on a consideration of the relevant factors.'" *Michigan*, 576 U.S. at 750 (citation omitted).

By its own admission, FWS did not consider all relevant factors—namely, whether each population segment was truly "significant" to the taxon as a whole. This meant that FWS failed to consider "an important aspect of the problem,"

rendering the Final Rule unlawful—exactly as the district court found. *State Farm*, 463 U.S. at 43; ROA.6196-97. In making that finding, the district court remarked that vacatur was "required" and "comports with those instructions provided by the APA requiring the setting aside of agency action—courts must 'set aside' those action 'found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" ROA.6197 (quoting 5 U.S.C. § 706(2)). Indeed, the court was "persuade[d] that the error identified is foundational …." ROA.6198.

The district court was entitled to credit FWS's factual concession. A factual concession is akin to a judicial admission, which "has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Appellants point to no authority that prevents the government from making concessions of error—or courts from crediting them.

This Court's own authority rejects the proposition. In *Texas v. EPA*, the Court reviewed a district court's vacatur of an EPA rule after the EPA conceded that the rule could not be explained or defended because the EPA lacked the administrative record. 122 F.4th at 1009.

More recently, in *Airlines for America*, the en banc Court credited the Department of Transportation's concession during en banc review "that it violated the APA when it failed to provide additional notice and the opportunity to comment" on a key study. 166 F.4th at 488. This concession rendered that rule invalid—so

the Court vacated it, noting "DOT's agreement to the remedy of vacatur" and "the agency's stated intent to redesign or rescind the Rule[.]" *Id.* at 489.[19]

These authorities establish that, in appropriate circumstances, vacatur without a traditional merits analysis is permissible. This case presents those circumstances. FWS reviewed its own policy and concluded it did not adhere to its requirements. FWS is in the best position to know how it analyzed the proposed DPSs. *Cf. Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 181 (2025) ("The agency is better equipped to assess what facts are relevant to the agency's own decision than a court is."). Because FWS concedes it did not consider what the law requires, its action was "unlawful"—just as the court found.[20]

### iii. Regardless, Appellants' substantive attacks on FWS's concession fail.

Unable to nullify FWS's concession, Appellants claim it did not go far enough. Not so. According to Appellants, FWS's "significance" finding was also based on genetic differences between the population segments—not simply the 95-mile range gap. Br. at 45. But as FWS confirmed, both "significance" bases were

---

[19] A prior panel decision found "unlawful agency action," and the en banc court vacated the panel decision. *Airlines for Am. v. Dep't of Transp.*, 127 F.4th 563, 582 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 154 F.4th 323 (5th Cir. 2025). DOT made its concession during en banc review. 166 F.4th at 488.

[20] Under Appellants' argument, a court must wade into the merits sua sponte to conclude what an agency already concedes. Worse here, Appellants pursue this inefficient outcome based only on speculation that FWS's concession was in bad faith—when, if anything, the record shows that *Appellants* have twice pushed FWS to issue defective listings during previous administrations.

---

flawed because they stem from the same discreteness finding—the 95-mile range gap.  ROA.6178 n.5.

FWS did not strain to make this concession.  Rather, by that point in the litigation, the administrative record had laid bare FWS's error.  Indeed, the Industry Plaintiffs' summary judgment brief exposed FWS's internal communications recognizing the lack of support for the genetic-differences theory—and that it was based solely on the DPSs' (relatively recent) geographic separation:

> **Commented [FB41]:** Sure, but it's pretty typical for populations to be genetically distinct from each other. Usually for significance, we talk about the magnitude of the differences. How different is different? From the genetic data, are we able to estimate the length of time that they've been separated? Are there unique alleles that might convey different adaptive capacities?

ROA.4597, 5409.  A commenter flatly responded, "there's not much more we can say here.  Part of the issue is that these populations were likely only separated in the last hundred years."  ROA.5409.  Thus, in response to the Industry Plaintiffs' motion, FWS unsurprisingly reiterated that it "failed to properly support its conclusions under the DPS Policy in the Final Listing Rule …."  ROA.6177.

Moreover, discreteness and significance "serve decidedly different purposes." 61 Fed. Reg. 4,724.  Yet even the "genetic differences" finding was tied exclusively to the 95-mile gap-in-range.  ROA.74 ("The Shinnery Oak Ecoregion [Southern DPS] was likely historically connected to the remainder of the range, but the two parts have been separated since approximately the time of European settlement.

Therefore, the two segments of the range are genetically distinct from each other and therefore significant to the taxon as a whole."). This is why FWS conceded—time and again—that its "significance" finding was defective as a whole. ROA.6178 n.5.

In short, because FWS acknowledges it improperly conflated geographic distance with marked genetic distinction (performing no additional analysis), the "significance" finding was derivative—not independent—of the discreteness determination. This violated FWS policy—and FWS's substantiated concession renders the Final Rule unlawful. *E.g.*, *Airlines for Am.*, 166 F.4th at 488.

### iv. Appellants' remaining complaints concern issues committed to the district court's discretion.

Because the district court correctly found the Final Rule unlawful, it also properly vacated that rule. The district court retained discretion to determine whether the *Allied Signal* factors support vacatur—and it did not abuse its discretion by applying that default remedy. *See Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022); *Data Mktg. P'ship, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022); *Allied-Signal*, 988 F.2d at 150.

Courts may depart from the usual remedy of vacatur only when two conditions are satisfied:

- *First*, there must be a "serious possibility" that the agency will be able to correct the rule's defects on remand.

- *Second*, vacating the challenged action would produce "disruptive consequences."

*Chamber of Com. v. U.S. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023) (citation omitted).

Remand without vacatur is appropriate only in "rare cases." *Texas*, 126 F.4th at 418. Because these are "conditions," the opponent of vacatur must establish that both justify departing from the default remedy. *Tex. Corn Producers v. EPA*, 141 F.4th 687, 710, 711 & n.43 (5th Cir. 2025); *Chamber of Com.*, 88 F.4th at 1118. Appellants have not.

>　　　a.　　**The district court reasonably found that FWS could not justify its decision on remand.**

Applying the first condition, the district court reasonably found that "the error identified is foundational and cannot be resolved by remand alone." ROA.6198.

The seriousness of the error flows logically from crediting FWS's factual concession. As Jacks explained, because the "significance" analysis was flawed, so too was the resulting listing decision:

> Because the DPS Policy was misapplied, the Service must re-evaluate each population segment to assess whether it can be considered a "species," as defined in the ESA, before moving to re-assess the status of the lesser prairie-chicken …. Only after identifying a valid listable entity (*i.e.*, a species) does the Service proceed to an assessment of whether the species is at risk of extinction. In this instance, if the same population segments are not identified as "distinct population segments," then the Service cannot rely on the existing scientific assessment.

ROA.4544-45. Because FWS did not appropriately consider "significance," there is no basis on which to split the species into two DPSs, and the attendant "endangered and threatened findings have no leg to stand on." ROA.6198. Instead, FWS must "engag[e] in an entirely new analysis"—and it is currently doing precisely that. ROA.6198. This alone supports affirmance.

> **b.    The district court reasonably found that any "disruptive consequences" of vacatur would be "short lived and minimized."**

Applying the second condition, the district court reasonably determined that any "disruptive consequences" of vacatur were minimal to nonexistent. ROA.6198-99.

As Jacks explained, vacatur "would not be substantially harmful to the lesser prairie-chicken at a species viability level … because of the conservation efforts in place and the shortened timeline for the Service to reconsider the listing." ROA.4546. Indeed, at least sixteen programs currently protect against "existing habitat loss, degradation or fragmentation." ROA.4545-46. And, as FWS itself conceded, its proposed "reconsideration period [also] mitigates against the likelihood of disruptive consequences for the species." ROA.6179; *see* ROA.4546. That is particularly true *now*, when (1) the district court vacated the 4(d) rule in a separate proceeding, meaning that any interim disruption to 91% of the LPC is not

traceable to the vacatur here; and (2) the reconsideration process is actively ongoing. *Supra* pp. 4, 13-14.

This condition, and the district court's supported fact-bound determinations, also support affirmance.

### v.    Appellants' additional arguments are misguided.

Appellants' remaining arguments fail. Appellants claim the district court did not "seriously analyze" the propriety of vacatur. Br. at 43. But FWS's error was simple—by its own admission, it failed to properly apply its own standards for determining whether a proposed DPS is "significant." The district court was entitled to credit this concession, which required no "real novel thinking." ROA.6196.

Finally, that the district court may not have reviewed the "whole record" before reaching this conclusion also is irrelevant. The APA directs that, when determining unlawfulness, reviewing courts "shall review the whole record *or those parts of it cited by a party*[.]" 5 U.S.C. § 706 (emphasis added). The district court did not need to go out of its way to further substantiate a concession that FWS was entitled to—and did—make. *See PDK Lab'ys Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part) ("[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.").

\*    \*    \*

In sum, the district court *did* find the Final Rule unlawful—because FWS conceded that it did not follow its own policies. From there, the district court acted within its discretion by vacating that rule.

### D.     Alternatively, the Court should remand for further proceedings.

Alternatively, the Court should remand to the district court for further proceedings, including to reach the Industry Plaintiffs' summary-judgment motion. Appellants' alternative proposed relief—the rare remedy of remand *without* vacatur—subjects Industry Plaintiffs to a Final Rule that FWS has conceded is legally invalid in one respect, ROA.4526, and Industry Plaintiffs have shown is legally invalid in multiple others. ROA.4573.

## CONCLUSION

The Industry Plaintiffs respectfully request that the Court dismiss the appeal for want of jurisdiction, or, alternatively, affirm, or, in the further alternative, remand.

Respectfully submitted,

*/s/ Caitlyn Hubbard*
Marianne M. Auld
State Bar No. 01429910
marianne.auld@kellyhart.com
Caitlyn E. Hubbard
State Bar No. 24097853
caitlyn.hubbard@kellyhart.com
Jacob A. deKeratry
State Bar No. 24120795
jacob.dekeratry@kellyhart.com
**Kelly Hart & Hallman LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Derek L. Montgomery
State Bar No. 2404226
derek.montgomery@kellyhart.com
Jeffrey D. Kuhnhenn
State Bar No. 24078809
jeff.kuhnhenn@kellyhart.com
**Kelly Hart & Hallman LLP**
500 W. Illinois Avenue
Midland, Texas 79701
(432) 683-4691

*Attorneys for Appellees*
*Kansas Independent Oil & Gas Association*
*Petroleum Alliance of Oklahoma*
*Permian Basin Petroleum Association*
*National Cattlemen's Beef Association*
*Texas Cattle Feeder's Association*
*Kansas Livestock Association*
*Oklahoma Cattlemen's Association*
*New Mexico Cattle Grower's Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March, 2026, an electronic copy of the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to all counsel of record.

*/s/ Caitlyn E. Hubbard*
Caitlyn E. Hubbard

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 12,662 words, as determined by the word-count function of Microsoft Word 365.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type and style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in fourteen (14) point "Times New Roman" style font.

*/s/ Caitlyn E. Hubbard*
Caitlyn E. Hubbard

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by the Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses and is free of viruses.

*/s/ Caitlyn E. Hubbard*
Caitlyn E. Hubbard