**Case No. 25-50747**

# In the United States Court of Appeals for the Fifth Circuit

State of Texas; Texas General Land Office; Texas Department of Agriculture; Railroad Commission of Texas; State of Kansas; State of Oklahoma,
*Plaintiffs - Appellees*

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,
*Defendants - Appellees*

v.

Center for Biological Diversity; Texas Campaign for the Environment,
*Movants - Appellants*

Permian Basin Petroleum Association; National Cattlemen's Beef Association; Texas Cattle Feeders Association; Kansas Livestock Association; Oklahoma Cattlemen's Association; New Mexico Cattle Growers Association, Kansas Independent Oil & Gas Association; Petroleum Alliance of Oklahoma,
*Plaintiffs - Appellees*

v.

United States Department of the Interior; United States Fish and Wildlife Service; Doug Burgum, Secretary, U.S. Department of the Interior; Brian Nesvik, in his official capacity as the Director of the United States Fish and Wildlife Service,
*Defendants - Appellees*

v.

Center for Biological Diversity; Texas Campaign for the Environment,
*Movants - Appellants*

On Appeal from the United States District Court for the Western District of Texas
No. 7:23-CV-47

**BRIEF OF APPELLEES STATE OF TEXAS, TEXAS GENERAL LAND OFFICE, TEXAS DEPARTMENT OF AGRICULTURE, AND RAILROAD COMMISSION OF TEXAS; STATE OF KANSAS; STATE OF OKLAHOMA**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

BRITTANY E. WRIGHT
Assistant Attorney General
Texas Bar No. 24130011
Attorney-in-Charge

SHELBY THOMPSON
Assistant Attorney General
Texas Bar No. 24137238

MICHAEL BURCHAM
Assistant Attorney General
Texas Bar No. 24139074

OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

*Attorneys for the State of Texas, Texas General Land Office, Texas
Department of Agriculture, and Railroad Commission of Texas*

---

KRIS W. KOBACH
Attorney General of Kansas

ANTHONY J. POWELL
Solicitor General
Kansas Bar No. 14981

JAMES RODRIGUEZ
Assistant Attorney General

OFFICE OF THE KANSAS ATTORNEY
GENERAL
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66614
(785) 368-8539 | Fax: (785) 296-2420

*Attorneys For Appellees State of Kansas*

---

GENTNER DRUMMOND
Attorney General of Oklahoma

GARRY M. GASKINS, II
Solicitor General
Oklahoma Bar No. 20212

ZACH WEST
Director of Special Litigation
Oklahoma Bar No. 30768

JENNIFER L. LEWIS
Deputy Attorney General

OFFICE OF OKLAHOMA ATTORNEY
GENERAL
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921 | Fax: (405) 521-6246

*Attorneys for Appellees State of Oklahoma*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Doug Burgum, Secretary, U.S. Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |
| Doug Burgum, Secretary, U.S. Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Doug Burgum, Secretary, U.S. Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| Kansas Independent Oil & Gas Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Independent Oil & Gas Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Independent Oil & Gas Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Independent Oil & Gas Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Livestock Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Livestock Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Kansas Livestock Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Kansas Livestock Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| National Cattlemen's Beef Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| National Cattlemen's Beef Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| National Cattlemen's Beef Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |

| National Cattlemen's Beef Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| --- | --- |
| Brian Nesvik | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Brian Nesvik | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| New Mexico Cattle Grower's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| New Mexico Cattle Grower's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| New Mexico Cattle Grower's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| New Mexico Cattle Grower's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Oklahoma Cattlemen's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Oklahoma Cattlemen's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Oklahoma Cattlemen's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Oklahoma Cattlemen's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Permian Basin Petroleum Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Permian Basin Petroleum Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Permian Basin Petroleum Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Permian Basin Petroleum Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Petroleum Alliance of Oklahoma | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Petroleum Alliance of Oklahoma | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Petroleum Alliance of Oklahoma | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Petroleum Alliance of Oklahoma | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Railroad Commission of Texas | Brittany Wright of Office of the Attorney General of Texas Austin, TX |

| | |
|---|---|
| Railroad Commission of Texas | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| Railroad Commission of Texas | Michael Burcham of Office of the Attorney General of Texas Austin, TX |
| State of Kansas | Anthony Powell of Office of the Attorney General Topeka, KS |
| State of Kansas | James Rodriguez of Kansas Attorney General's Office Topeka, KS |
| State of Oklahoma | Zachary West of Oklahoma Attorney General Oklahoma City, OK |
| State of Oklahoma | Garry Gaskins of Oklahoma Attorney General Oklahoma City, OK |
| State of Oklahoma | Jennifer Lewis of Oklahoma Office of the Attorney General Oklahoma City, OK |
| State of Texas | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| State of Texas | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| State of Texas | Michael Burcham of Office of the Attorney General of Texas Austin, TX |
| Texas Cattle Feeder's Association | Marianne Auld of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Texas Cattle Feeder's Association | Caitlyn Hubbard of Kelly, Hart & Hallman, L.L.P. Fort Worth, TX |
| Texas Cattle Feeder's Association | Derek Montgomery of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Texas Cattle Feeder's Association | Jeffrey Kuhnhenn of Kelly Hart & Hallman, L.L.P. Midland, TX |
| Texas Department of Agriculture | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| Texas Department of Agriculture | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| Texas Department of Agriculture | Michael Burcham of Office of the Attorney General of Texas Austin, TX |
| Texas General Land Office | Brittany Wright of Office of the Attorney General of Texas Austin, TX |
| Texas General Land Office | Shelby Thompson of Office of the Attorney General of Texas Austin, TX |
| Texas General Land Office | Michael Burcham of Office of the Attorney General of Texas Austin, TX |

| United States Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |
| United States Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| United States Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| United States Fish and Wildlife Service | David Goode of U.S. Attorney's Office Austin, TX |
| United States Fish and Wildlife Service | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| United States Fish and Wildlife Service | Emily Polachek of U.S. Department of Justice Bloomington, MN |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Center for Biological Diversity | Jason Rylander of Center for Biological Diversity Washington, DC |
| Center for Biological Diversity | Lauren Parker of Center for Biological Diversity Washington, DC |
| Center for Biological Diversity | Charles Irvine of Irvine & Conner, P.L.L.C. Houston, TX |
| Texas Campaign for the Environment | Jason Rylander of Center for Biological Diversity Washington, DC |
| Texas Campaign for the Environment | Lauren Parker of Center for Biological Diversity Washington, DC |
| Texas Campaign for the Environment | Charles Irvine of Irvine & Conner, P.L.L.C. Houston, TX |

*/s/ Brittany E. Wright*
Attorney of Record for State of Texas

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unlikely to aid the Court in resolving this appeal, as the questions regarding this Court's jurisdiction to even hear this appeal are firmly rooted in legal precedent and supported by the record. If the Court does request oral argument, however, State Appellees reserve their right to participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ...................................................... v

TABLE OF CONTENTS ......................................................................................... vi

TABLE OF AUTHORITIES ................................................................................. viii

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF THE ISSUES ............................................................................... 1

STATEMENT OF THE CASE .................................................................................. 2

    I.        Background .......................................................................................... 2

    II.      Legal Background ............................................................................... 4

        1.      Intervention ................................................................................... 4

        2.      Vacatur ......................................................................................... 5

SUMMARY OF THE ARGUMENT ........................................................................... 6

ARGUMENT ......................................................................................................... 7

    I.        The Court does not have jurisdiction over this appeal. ................... 7

        A.  Standard of Review ........................................................................ 7

        B.  The Conservation Groups have not established standing to appeal. ............................................................................................ 7

        C.  The Court does not have jurisdiction over this appeal because the Conservation Groups did not timely appeal the denial of their first motion to intervene. ........................................... 9

           i.    Subsequent filings, however creative, cannot correct a missed appeal deadline. ........................................................ 10

           ii.   The district court did not abuse its discretion in denying the motion as untimely. ............................................ 13

        D.  As non-parties, the Conservation Groups cannot appeal the district court's decision to vacate the Listing Decision. ............. 17

    II.      Even if this appeal was properly before this Court, there was no abuse of discretion below. The district court correctly determined vacatur of the Final Rule was warranted here. .......... 19

        A.   Standard of Review ........................................................................ 19

B. The district court correctly found that remand with vacatur is required when the agency concedes error and cannot explain or defend the rule................................................................................... 19

    i. Determining whether to list a species as distinct population segments is foundational to the Service's entire listing analysis, and the Service committed a serious error at this step.......................................................................................... 20

    ii. Confession of error, such that a rule can no longer be defended or explained, requires vacatur. ................................ 23

C. The district court did not commit clear error in vacating the rule after applying the *Allied-Signal* factors....................................... 27

CONCLUSION ............................................................................................. 30

CERTIFICATE OF SERVICE ..................................................................... 34

CERTIFICATE OF COMPLIANCE .......................................................... 34

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*8fig, Inc. v. Stepup Funny, L.L.C.,*
   135 F.4th 285 (5th Cir. 2025) ................................................................... 7

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ................................................................. 6

*Arizonans for Off. Eng. v. Arizona,*
   520 U.S. 43 (1997) ...................................................................................... 8

*Bommarito v. Belle Chasse Marine Transp., L.L.C.,*
   159 F.4th 297 (5th Cir. 2025) ................................................................. 27

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.,*
   331 U.S. 519 (1947) .................................................................................. 9

*Bush v. Viterna,*
   740 F.2d 350 (5th Cir. 1984) (per curiam) ............................................ 12

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023) (en banc),
   *aff'd,* 602 U.S. 406 (2024) ........................................................................ 5

*Carpenters Indus. Council v. Salazar,*
   734 F. Supp. 2d 126 (D.D.C. 2010) (mem. op.) ............................... 24, 25

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994) .................................................................... 9

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.,*
   45 F.4th 846 (5th Cir. 2022) .................................................................. 19

*Deanda v. Becerra,*
   96 F.4th 750 (5th Cir. 2024) .................................................................. 19

*Dep't of Educ. v. California,*
   604 U.S. 650 (2025) (per curiam) .......................................................... 26

*Driftless Area Land Conservancy v. Huebsch,*
   969 F.3d 742 (7th Cir. 2020) .................................................................. 10

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ............................................................9, 10, 18

*EPA v. City of Green Forest,*
    921 F.2d 1394 (8th Cir. 1990) ...........................................................10, 11, 12

*Guenther v. BP Ret. Accumulation Plan,*
    50 F.4th 536 (5th Cir. 2022) (per curiam) ......................................... 12

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs,*
    493 F.3d 570 (5th Cir. 2007) .............................................................4, 5, 16

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) ............................................................................ 8

*Hopwood v. Texas,*
    21 F.3d 603 (5th Cir. 1994) (per curiam) ......................................... 16

*In re Clean Water Act Rulemaking,*
    60 F.4th 583 (9th Cir. 2023) ............................................................24, 25

*Jones v. Cain,*
    600 F.3d 527 (5th Cir. 2010) ............................................................ 8

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ............................................................. 5

*La. Landmarks Soc'y, Inc. v. City of New Orleans,*
    85 F.3d 1119 (5th Cir. 1996) ............................................................ 9

*Liu v. SEC,*
    591 U.S. 71 (2020) .........................................................................20, 25, 26

*Louisiana v. Am. Rivers,*
    142 S. Ct. 1347 (2022) ....................................................................... 26

*Louisiana v. Burgum,*
    132 F.4th 918 (5th Cir. 2025) ........................................................... 12

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................ 8

*Marino v. Ortiz,*
    484 U.S. 301 (1988) (per curiam) .................................................... 17

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) ....................................................................... 26

*Nat'l Parks Conservation Ass'n v. Salazar*,
  660 F. Supp. 2d 3 (D.D.C. 2009) (mem. op.) ........................................24, 25

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ............................................................... 16

*Nuclear Regul. Comm'n v. Texas.*,
  605 U.S. 665 (2025) .......................................................................... 18

*Pierce v. Murphy*,
  984 F.2d 196 (7th Cir. 1993) ............................................................... 11

*Plain v. Murphy Fam. Farms*,
  296 F.3d 975 (10th Cir. 2002) .......................................................13, 18

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) .......................................................................... 20

*Rotstain v. Mendez*,
  986 F.3d 931 (5th Cir. 2021) ......................................................7, 13, 16

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ............................................................... 13

*Smith v. SEECO, Inc.*,
  922 F.3d 398 (8th Cir. 2019) ............................................................... 11

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ............................................................... 13

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ................................................................. 6

*Texas v. EPA*,
  122 F.4th 1008 (5th Cir. 2024) (per curiam) ...............................20, 23, 24

*U.S. Chamber of Com. v. SEC*,
  88 F.4th 1115 (5th Cir. 2023) ............................................................ 6, 28

*U.S. ex rel. Louisiana v. Boarman*,
  244 U.S. 397 (1917) .....................................................................17, 18

*United States v. City of Chicago*,
  897 F.2d 243 (7th Cir. 1990) ............................................................... 14

*United States v. Covington Cnty. Sch. Dist.*,
  499 F.3d 464 (5th Cir. 2007) (per curiam) ........................................14, 15

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019) ............................................................................... 8

*Williams v. BP Expl. & Prod., Inc.*,
    143 F.4th 593 (5th Cir. 2025) ............................................................ 19

**Statutes**

5 U.S.C. § 551 ......................................................................................... 25

5 U.S.C. § 551-559 ................................................................................... 5

5 U.S.C. § 553 ......................................................................................... 25

5 U.S.C. § 706 ............................................................................ 25, 26, 30

5 U.S.C. § 706(2)(A) ........................................................................... 5, 20

5 U.S.C. § 706(2)(C) ............................................................................... 5

5 U.S.C. § 706(2)(D) ............................................................................... 5

16 U.S.C. § 1532(6) ............................................................................... 21

16 U.S.C. § 1532(16) ............................................................................. 21

16 U.S.C. § 1532(20) ............................................................................. 21

16 U.S.C. § 1533(b)(1)(A) ...................................................................... 22

16 U.S.C. § 1533(b)(8) ........................................................................... 22

28 U.S.C. § 1291 .................................................................................. 1, 9

**Rules & Regulations**

Fed. R. App. P. 4(a)(1)(B) ........................................................................ 9

Fed. R. Civ. P. 24 ................................................................... 4, 16, 17, 18

Fed. R. Civ. P. 24(a) ........................................................................... 4, 13

Fed. R. Civ. P. 24(a)(2) .......................................................................... 13

Fed. R. Civ. P. 24(a)–(b) ......................................................................... 4

Fed. R. Civ. P. 24(b)(1) .......................................................................... 16

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................ 5

**Other Authorities**

61 Fed. Reg. 4,722 (Feb. 7, 1996) ............................................................... 21, 22

91 Fed. Reg. 9,547 (Feb. 26, 2026) .................................................................. 29

Stuart C. Gillespie, *Pre-Merits Vacatur: An Efficient, Equitable, and Environmentally Sound Remedy*, 39 Pace Envtl. L. Rev. 96 (2022) .......................................... 25

## JURISDICTIONAL STATEMENT

Appellate courts have jurisdiction under 28 U.S.C. § 1291 to hear appeals of final orders from district courts. However, appellants Center for Biological Diversity and Texas Campaign for the Environment (hereafter "Conservation Groups") (1) are not parties and (2) did not timely appeal the denial of their motion for intervention. Therefore, this Court does not have jurisdiction to hear the merits of this appeal.

## STATEMENT OF THE ISSUES

1.   Does the Court have jurisdiction to hear the Conservation Groups' untimely appeal of the denial of their motion to intervene?

2.   Did the Court abuse its discretion in denying the Conservation Groups' second motion to intervene several years into the case?

3.   Does the Court have jurisdiction to hear the Conservation Groups' appeal of the decision to vacate and remand the Final Listing Decision for the Lesser Prairie-Chicken, when the Conservation Groups were not parties to the underlying district court proceedings?

4.   Did the district court abuse its discretion in granting the motion to vacate and remand the Listing Decision when the Service admitted a fatal error in the final rule that could not be cured on remand?

1

## STATEMENT OF THE CASE

### I.    Background

The lesser prairie-chicken (*Tympanuchus pallidicinctus*) is a North American species of prairie grouse found in portions of Colorado, Kansas, New Mexico, Oklahoma, and Texas. Approximately fifteen percent of the total range-wide lesser prairie-chicken habitat occurs in Texas, much of which is on private land. ROA.1091–98. The States of Texas, Oklahoma, and Kansas, working alongside private landowners, have implemented conservation programs to preserve the lesser prairie-chicken and its habitat for decades, and these programs have an established history of effectiveness. ROA.5978–79, 5981–83. Voluntary programs have been and continue to be key in the success of conservation efforts implemented across the lesser prairie-chicken range.

Despite the work of the States and other local stakeholders committed to habitat conservation of the lesser prairie-chicken, the Fish and Wildlife Service ("the Service") listed the lesser prairie-chicken under the Endangered Species Act on November 25, 2022 (hereafter, "the Listing Decision"). The Service divided the lesser prairie-chicken population into two distinct population segments ("DPS"), listing the northern segment of the population as threatened and the southern segment as endangered. ROA.942, 947–950.

The States sued the Service to overturn the Listing Decision because the Service did not conduct an adequate analysis of the distinct population segments of the species. Specifically, the States alleged that the Service failed to demonstrate that the northern

and southern populations of the lesser prairie-chicken were both discrete *and* significant as the Service must in order to justify listing two distinct population segments. ROA.916-920.

The Conservation Groups moved to intervene on June 5, 2023, ROA.1263–84, but were denied intervention on the basis that the federal government adequately represented their interests. ROA.1472–73. Two years later, days before the parties were due to file motions for summary judgment, the Conservation Groups moved for reconsideration of the court's denial of their first motion to intervene and filed a second motion to intervene in the alternative, alleging that the federal government no longer represented their interests. ROA.4465–68. The district court denied the second motion to intervene, finding that the Conservation Groups did not timely file their second motion, nor did they rebut the presumption that the federal government adequately represented their interests.

The Service reviewed the Listing Decision, and the record underlying it, and in May 2025, moved the district court to vacate and remand the rule back to the Service. ROA.4526. In its motion, the Service confessed error in its application of the distinct population segment policy; it "did not consider whether the gap in the range would actually be significant for the species, and instead, merely restated its finding that the two population segments were physically separate by 95 miles (*i.e.*, 'discrete') to conclude that they were also 'significant.'" ROA.4532. The Service conceded that this misapplication of the distinct population segment policy caused a foundational error in

the Listing Decision and asked the court to vacate and remand so that the Service could reconsider whether the segments were significant. ROA.4533–34.

In an Omnibus Order, the district court denied the Conservation Groups' motion to reconsider and second motion to intervene. ROA.6199–6201. The district court also granted the Service's motion to vacate and remand the Listing Decision, determining that the misapplication of the distinct population segment policy made the rule unlawful and therefore required vacatur. ROA.6195–99.

Although they were not parties, the Conservation Groups appealed the decision to vacate the Listing Decision. The Conservation Groups also appealed both denials of both of their motions to intervene to this Court.

## II.    Legal Background

### 1.  Intervention

Federal Rule of Civil Procedure 24 allows two types of intervention: intervention as of right, which is mandatory when specific requirements are met, and permissive intervention, which is discretionary. Fed. R. Civ. P. 24(a)–(b). To intervene as of right under Rule 24(a), a movant must satisfy four requirements: (1) the motion must be timely; (2) the movant must have an interest relating to the property or transaction at issue; (3) the movant must be in a position where disposition of the case may impair or impede the movant's ability to protect that interest; and (4) the movant's interest must be inadequately represented by the existing parties. *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007). The movant has the burden

to establish a right to intervene, and failure to satisfy any element precludes intervention. *Id.*; *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). A district court may permit a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

### 2. Vacatur

Under the Administrative Procedure Act ("APA")[1], a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A final agency action may be held unlawful and set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). A reviewing court shall also "hold unlawful and set aside agency action, findings and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

Vacating and remanding, or otherwise "setting aside", an unlawful final rule is the default remedy under the Administrative Procedure Act. *See Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024) ("vacatur of an agency action is the default rule in this Circuit."). "Departing from that default rule is justifiable only in 'rare cases' satisfying two conditions: First, there must be a 'serious possibility' that the agency will be able to correct the rule's defects on remand. . . . Second, vacating

---

[1] 5 U.S.C. §§ 551-559.

5

the challenged action would produce 'disruptive consequences.'" U.S. *Chamber of Com. v. SEC*, 88 F.4th 1115, 1118 (5th Cir. 2023) (citations omitted). These two factors are commonly referred to as the "*Allied-Signal*" factors. *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,* 988 F.2d 146, 150–51 (D.C. Cir. 1993); *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021) (vacated on other grounds).

## SUMMARY OF THE ARGUMENT

The Court cannot hear the Conservation Groups' arguments because it does not have the jurisdiction to do so. Fundamentally, the Conservation Groups have attempted to circumnavigate the rules of party status for this court to hear a decision that no party to the case has challenged. As a preliminary matter, the Conservation Groups have not established standing. Further, the Conservation Groups did not timely avail themselves of the appellate court's jurisdiction when the district court denied their first motion to intervene on August 29, 2023. ROA.1465–74. Their attempt to remedy this error by filing an untimely motion for reconsideration and a second motion to intervene must fail. Regardless, the district court did not abuse its discretion when it denied the second motion to intervene on timeliness grounds. The Conservation Groups are therefore not parties that can appeal the decision to vacate and remand the Listing Decision. The Court should dismiss this appeal.

In any case, even if the Conservation Groups had properly appealed, there was no abuse of discretion below. The district court properly vacated the Listing Decision because the Service confessed it contained an error so foundational that the Listing

6

Decision could not remain in effect while the agency conducted its review on remand. The Service admitted that it misapplied the distinct population segment policy and failed to provide adequate justification for its determination that the northern and southern portions of the lesser prairie-chicken were significant. In considering the conservation programs in place at the state level coupled with the Service's commitment to reconsider the listing petition (which it now has begun), the district court correctly concluded that vacatur of the Listing Decision would not have disruptive consequences.

## ARGUMENT

### I.    The Court does not have jurisdiction over this appeal.

#### A.    Standard of Review

This Court reviews "a district court's denial of a motion to intervene as of right *de novo* and a district court's denial of permissive intervention for clear abuse of discretion." *8fig, Inc. v. Stepup Funny, L.L.C.*, 135 F.4th 285, 291 (5th Cir. 2025). If a motion to intervene as of right is denied under timeliness grounds, this Court reviews that determination under an abuse of discretion standard. *Rotstain v. Mendez*, 986 F.3d 931, 936 (5th Cir. 2021).

#### B.    The Conservation Groups have not established standing to appeal.

As a threshold matter, a court must ensure it has jurisdiction to hear any case appealed to it. Establishing standing is a prerequisite for any case to survive. The party

invoking the Court's jurisdiction, even on appeal, must demonstrate that it has standing to do so. The Conservation Groups have not done so here.

Article III of the Constitution provides that courts must have jurisdiction over a case to rule on its merits, and standing is a key element of establishing a federal court's jurisdiction. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To prove standing, a party must show (1) a concrete and particularized injury, (2) fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992). The requirement to establish standing applies even on appeal. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). And specifically, "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663, (2019).

Here, the Conservation Groups have appealed to this Court, albeit improperly, the decision of the District Court without ever establishing that they have the standing to do so. The Conservation Groups presented no argument in their brief to support that they have standing to appeal to this Court. Nor did they provide any supporting declarations to establish their standing. And because neither of the parties of the case appealed the decision, the Conservation Groups bear the burden to establish that they have standing for the appeal to survive. And they must do so in their opening brief to this Court. *See Jones v. Cain,* 600 F.3d 527, 540–41 (5th Cir. 2010); *see also AAR, Inc. v. Nunez,* 408 Fed. App. 828, 830 (5th Cir. 2011) (per curiam). An appellant cannot raise

a new argument for the first time in a reply brief, which deprives the appellee of the opportunity to respond. An appellant "abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994) (emphasis original). While standing arguments ordinarily cannot be waived, by not making any statements about standing at all in the opening brief, appellees are left to either carry the water for appellants to make their standing arguments for them, or stay silent on an issue fundamental to this Court's jurisdiction. *See La. Landmarks Soc'y, Inc. v. City of New Orleans,* 85 F.3d 1119, 1122 n.3 (5th Cir. 1996). The Conservation Groups have presented no argument to this Court demonstrating that they have standing to invoke this Court's jurisdiction, and should they make any arguments in reply, their arguments must be limited to what is in the record on appeal.

### C.    The Court does not have jurisdiction over this appeal because the Conservation Groups did not timely appeal the denial of their first motion to intervene.

The denial of a motion to intervene is a final order with respect to would-be intervenors, as the court will not be issuing any further orders involving those entities. *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 524–25 (1947). Therefore, the denial of a motion to intervene is an immediately appealable final order under 28 U.S.C. § 1291. *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (and cases cited therein). The would-be intervenor *must appeal* the denial of the motion to intervene within 60 days, as governed by Federal Rule of Appellate Procedure 4(a)(1)(B). Otherwise, the appeal is untimely and the appellate court does not have

jurisdiction. *EPA v. City of Green Forest,* 921 F.2d 1394, 1401 (8th Cir. 1990) ("an appellate court lacks jurisdiction over an untimely appeal").

With respect to denial of permissive intervention, the Fifth Circuit only has "provisional jurisdiction" to review whether the district court abused its discretion in denying the motion. *See Edwards,* 78 F.3d at 992. If the district court's denial of permissive intervention does not constitute an abuse of discretion, the Court must dismiss for lack of jurisdiction. *Id.*

The district court denied the Conservation Groups' first motion to intervene on August 29, 2023. The court concluded that Conservation Groups were adequately represented by the Service, and that the Conservation Groups had not rebutted the presumption that the government defendant represented their interests. ROA.1472–73. The Conservation Groups should have noticed their appeal by October 28, 2023. They did not do so. Because they did not timely notice the appeal of the denial of the first motion to intervene, this Court does not have jurisdiction to hear their arguments now.

### i. Subsequent filings, however creative, cannot correct a missed appeal deadline.

To avail themselves of this Court's jurisdiction on their intervention denial, the Conservation Groups should have appealed when their first motion to intervene was denied. After all, "from the perspective of a disappointed prospective intervenor, the denial of a motion to intervene is the end of the case." *Driftless Area Land Conservancy v. Huebsch,* 969 F.3d 742, 745 (7th Cir. 2020) (citation omitted). Yet to circumvent the

10

missed deadline, the Conservation Groups filed an eleventh hour "motion for reconsideration and second motion to intervene" on May 1, 2025, roughly two years after the district court denied their first intervention. ROA.4460. But filing a second motion to intervene "does not reset the clock for purposes of an appeal; holding otherwise would defeat the statutory timeliness requirement." *Smith v. SEECO, Inc.,* 922 F.3d 398, 404 (8th Cir. 2019); see also *B.H. by Pierce v. Murphy*, 984 F.2d 196, 199–200 (7th Cir. 1993). Because the second motion to intervene was essentially a re-urging of the first, the district court was right to deny it.

In limited circumstances, district courts have allowed parties to intervene on a subsequent motion when the intervenors demonstrated "changed circumstances" that would make the second motion to intervene legitimate, *City of Green Forest*, 921 F.2d at 1401, but the Conservation Groups did not even address this standard much less demonstrate meeting it. They filed substantially the same motion the second time. In both motions, the Conservation Groups argued that the federal government did not adequately represent their interests because of the potential for delays in implementation and the possibility for future settlement of the lawsuit. ROA.1273, 1280–81; ROA.4465–68.

The second motion to intervene contains no new arguments not raised in the first motion and it adds only sparse discussion of circumstantial changes that would merit granting intervention. The Conservation Groups appear to suggest that the very fact of a change in administration is enough to satisfy the "changed circumstances"

11

analysis. They point to an executive order that directs federal agencies to identify obstacles to infrastructure related to the Endangered Species Act and to the parties' agreed litigation extensions as proof that the Conservation Groups' interests are no longer protected. ROA.4465–66. But these bare statements alone do not rebut the presumption of adequate representation when a party is attempting to intervene on behalf of the federal government. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025). This Court has held that the "'mere possibility that a party *may* at some future time' diverge in its interest 'cannot alone show inadequate representation.'" *Id.* (quoting *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984) (per curiam) (emphasis original); *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (per curiam)). Finally, the Conservation Groups' concern over a so-called settlement does not demonstrate "changed circumstances." *See, e.g., City of Green Forest,* 921 F.2d at 1401 (would-be intervenors' expressed concern over a "settlement possibility" was not a changed circumstance warranting a new opportunity to appeal a denial of intervention, but the existence of a proposed consent decree to which would-be intervenors provided detailed objections was).

Because the Conservation Groups' second motion did not demonstrate changed circumstances, the district court's denial does not provide a new opportunity for appeal. In the face of intervention denial, the "proper procedure is to pursue an immediate appeal, and not to file repetitive motions pestering the district court. This is true regardless of how the motions are labeled where the substance of the motions and

12

purported justification for intervention remain unchanged." *Plain v. Murphy Fam. Farms*, 296 F.3d 975, 980 (10th Cir. 2002). This Court should dismiss the Conservation Groups' attempt to get a second bite of the apple.

### ii. The district court did not abuse its discretion in denying the motion as untimely.

The Conservation Groups' failure to appeal their first motion to intervene deprives this Court of jurisdiction over it and their second, substantially similar motion. But even if jurisdiction existed, the district court properly denied the Conservation Groups' intervention attempt.

For a party to intervene as of right, they must demonstrate that they have a legally cognizable interest that could be impeded by the outcome of litigation, and that no party in the lawsuit adequately represents their interests. Fed. R. Civ. P. 24(a)(2). A would-be intervenor must timely file a motion with the court presenting their arguments for intervention. Fed. R. Civ. P. 24(a). To determine whether a motion to intervene is timely, courts evaluate (1) the length of time the movant waited to file; (2) prejudice to the existing parties from the delay; (3) prejudice to the movant if it cannot intervene; and (4) any unusual circumstances. *Rotstain*, 986 F.3d at 937 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).

In evaluating length of time, courts look to how quickly the movant acted after it knew or should have known of its interest in the case, or after it learned that its interests may no longer be protected by the existing parties. *See Sierra Club v. Espy*, 18

13

F.3d 1202, 1206 (5th Cir. 1994). On the second factor, courts have found prejudice when a proposed intervention would waste significant resolution efforts by the existing parties and require these discussions to start over. *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (per curiam); *United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir. 1990) ("Litigation will have no end if every time the parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air.").

The district court did not abuse its discretion in finding that the Conservation Groups' second motion to intervene was untimely. As the court noted, the groups waited at least three months after they claimed to have learned that their asserted interests changed before they moved to intervene. ROA.6200 n.70. Meanwhile, the parties were evaluating if a path to resolution existed, and the Conservation Groups' last-minute attempt to intervene appeared to be specifically targeted at scuttling the existing parties' efforts. The district court here found that the Conservation Groups' second motion to intervene was untimely. ROA.6199–6201. It was well within the district court's discretion to reject these tactics.

The Conservation Groups now argue that that they moved to intervene "promptly" after learning that the existing parties were engaged in settlement talks. Appellants' Br. 33. But before the district court, the Conservation Groups cited executive orders from January 2025 and a press release from February 2025 as the primary events that indicated their interests were inadequately represented. ROA.4465–

4468. Yet they waited three months, until May 2025, to try to intervene again. ROA.6200 n.70. That is not prompt, as the Conservation Groups claim.

The Conservation Groups argue that they were in an impossible situation in which they had to guess the precise, correct time to intervene. Appellants' Br. 33. Nothing about the timing here was impossible—the Conservation Groups had at least three months to seek intervention the second time, based on their claimed reasons for inadequate representation. Before the district court, and now on appeal, they have failed to provide a compelling reason why they waited until the last minute. Even under the Conservation Groups' framing, they had at least a two-to-three-month window to seek to intervene again.

By waiting until the last minute, the Conservation Groups prejudiced the existing parties by jeopardizing the ongoing resolution efforts, which the Conservation Groups had known about for at least weeks. *See Covington Cnty. Sch. Dist.*, 499 F.3d at 466. Indeed, the Conservation Groups waited until just before all the Parties were due to submit motions for summary judgment. ROA.22. Instead of defending the rule in summary judgment, the Service sought voluntary remand to address the admitted fundamental errors with the Final Rule. *See* ROA.4526. By attempting to intervene at the time they did, the Conservation Groups were aiming to keep the litigation alive. And if the Conservation Groups had been successful, there would be further prejudice from the Conservation Groups' delay because the federal government would be forced to defend—and the states would be subjected to—a rule the Service conceded is unlawful.

15

This delay and prejudice to the existing parties also outweighs any potential prejudice to movants, who could have tried to intervene and participate months before the existing parties filed dispositive motions. Any prejudice to the Conservation Groups is self-inflicted by their litigation decisions. The district court did not abuse its discretion in rejecting the Conservation Groups' second motion to intervene as untimely.

The Conservation Groups' untimeliness alone justifies denying intervention under Rule 24. *See Haspel & Davis*, 493 F.3d at 578. But the Conservation Groups have also failed to make the showing necessary to prove the other elements required for intervention. In particular, they have failed to overcome the presumption of adequate representation. This presumption is much stronger when the party alleged to be inadequately representing a proposed intervenor's interest is a governmental agency. *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam). The Conservation Groups have not shown that the Service, which is charged with faithfully executing the Endangered Species Act, can no longer do so simply because it has voluntarily remanded a rule due to conceded errors.

To the extent that the Conservation Groups appeal the denial of their request to permissively intervene, that decision should also be affirmed. Permissive intervention requires a timely request and that the movant have a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1). This Court reviews orders denying permissive intervention for an abuse of discretion, which is "so unusual as to be almost unique." *Rotstain*, 986 F.3d at 942 (quoting *New Orleans*

*Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984)). The Conservation Groups' permissive intervention requests suffer the same timeliness deficiencies as their requests for intervention as of right, which alone warrants affirming the denial of permissive intervention. Additionally, as the district court recognized, the Conservation Groups' motions to intervene failed to explain their role in the case or present any claim, counterclaim, or defense. *See* ROA.6200. This is another fundamental flaw with the Conservation Groups' intervention attempts. The district court did not abuse its discretion in rejecting the Conservation Groups' intervention attempts.

Even if denial of the Conservation Groups' intervention were properly before this Court, the district court properly denied the attempt to intervene under Rule 24. If it exercises jurisdiction, this Court should affirm.

## D.    As non-parties, the Conservation Groups cannot appeal the district court's decision to vacate the Listing Decision.

Despite the court denying both their motions to intervene, Conservation Groups appealed the order granting the motion to vacate. But caselaw is abundantly clear—only parties can appeal decisions from a district court. And because Conservation Groups are not parties, they cannot appeal the order vacating the final rule to this Court now.

It has long been settled by the Supreme Court that only a party to the lawsuit can appeal the final decision of the court. *U.S. ex rel. Louisiana v. Boarman*, 244 U.S. 397, 402 (1917)("it has long been the law… that one not a party to a record and judgment is not entitled to appeal therefrom")(internal citations omitted); *Marino v. Ortiz*, 484 U.S. 301,

17

304 (1988) (per curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.") The path to become a party to a lawsuit is through intervention under Rule 24. But, until a party's motion to intervene is granted, they are not a full party to the lawsuit and their participation is ultimately limited *until* they are granted party status.

In the event that a motion to intervene is denied, the movant can timely appeal the denial of the motion to intervene, but the nonparty "may not obtain appellate review of any final order of the district court in the underlying proceeding unless and until the denial of intervention is reversed." *Nuclear Regul. Comm'n v. Texas.*, 605 U.S. 665, 679 (2025); *Edwards v. City of Houston*, 78 F.3d at 993. This flows from the requirement that only a party to a case, and therefore only the entities subject to any final order or judgment issued by the court, can seek relief from that order in the form of an appeal. *U.S. ex rel. Louisiana,* 244 U.S. at 402.

Here, Conservation Groups have attempted to improperly appeal a final order from a case they are not a party to. The district court denied the motion to intervene *twice.* Conservation Groups therefore were never a party to the underlying suit from which they attempted to appeal to this Court. *See Murphy Fam. Farms*, 296 F.3d at 981 (holding that "[b]ecause the children were not parties to the wrongful death suit and because they failed to pursue a timely appeal of the district court's pretrial order denying them the right to intervene, they, as nonparties, may not now attack the judgment by seeking to appeal the district court's denial of their motion for a new trial.").

18

As such, this Court cannot review the decision to grant the motion to vacate, as no party subject to the order issued by the district court actually sought appellate review.

**II.    Even if this appeal was properly before this Court, there was no abuse of discretion below. The district court correctly determined vacatur of the Final Rule was warranted here.**

The district court correctly concluded that (1) vacatur is required when an agency concedes that it failed to consider an important aspect of the problem such that its action cannot be explained or defended, and (2) departure from the default rule of vacatur was not warranted because there was no serious probability the Service's error could be remedied on remand and the disruptive consequences of vacatur, if any, were minimal. As such, the district court's vacatur of the Final Rule was appropriate.

**A.    Standard of Review**

This Court reviews "the vacatur of a regulation under the APA for abuse of discretion." *Deanda v. Becerra*, 96 F.4th 750, 755 (5th Cir. 2024) (citing *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 855 (5th Cir. 2022)). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Williams v. BP Expl. & Prod., Inc.*, 143 F.4th 593, 597 (5th Cir. 2025) (citations omitted).

**B.    The district court correctly found that remand with vacatur is required when the agency concedes error and cannot explain or defend the rule.**

The district court concluded correctly that vacatur of the Final Rule was required because the Service conceded foundational error that made the rule unlawful.

Specifically, the Service conceded that its analysis in determining the appropriate distinct population segments for listing, if any, was flawed, resulting in the Service failing to make the required findings for step one of the listing process. ROA.4532–35. Therefore, the district court did not abuse its discretion in finding that this concession of error, which made the Final Rule unlawful, required vacatur.

The APA mandates that courts set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Additionally, "[u]nless otherwise provided by statute, all inherent equitable powers are available for the proper and complete exercise of" the Court's equity jurisdiction. *Liu v. SEC*, 591 U.S. 71, 86 (2020) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)) (cleaned up). Vacatur is required here by the fundamental nature of the Service's confessed error—namely, that the Service was unable to defend or explain the Final Rule, as required, because it did not have the necessary evidence before it to support its findings. *See Texas v. EPA*, 122 F.4th 1008, 1009 (5th Cir. 2024) (per curiam).

<blockquote>

**i.  Determining whether to list a species as distinct population segments is foundational to the Service's entire listing analysis, and the Service committed a serious error at this step.**

</blockquote>

To receive protections under the Endangered Species Act ("ESA"), the Service must first list a species as "threatened" or "endangered." A "threatened" species is "any species which is likely to become an endangered species within the foreseeable future

throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). An "endangered" species is one "which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). The Act defines "species" as "any subspecies of fish or wildlife or plants, and any **distinct population segment of any species** of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16) (emphasis added).

Congress did not define "distinct population segment" in the Act but has instructed the Service to exercise its authority with regard to distinct population segments "sparingly and only when the biological evidence indicates that such action is warranted." Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act ("DPS Policy"), 61 Fed. Reg. 4,722, 4,722 (Feb. 7, 1996). Thus, the Service developed a policy to govern the listing of distinct population segments. *Id.*

To list a distinct population segment, the Service must analyze: (1) the discreteness of the population in relation to the remainder of the species to which it belongs, and the (2) significance of the population to the overall taxon. DPS Policy, 61 Fed. Reg. at 4,725. A population is *discrete* when it is markedly separated from other populations. *Id.* A population is *significant* when it is important to the overall taxon in such a way that loss of the population would be significant to the species as a whole. *Id.* The Service considers significance under four factors: (1) the persistence of the DPS in an unusual or unique ecological setting for the taxon, (2) the loss of the DPS would

21

result in a significant gap in the range of the taxon, (3) the DPS represents the only surviving natural occurrence of a taxon that may be more abundant elsewhere as an introduced population outside its historic range, or (4) the DPS differs markedly from other populations of the species in its genetic characteristics. *Id.*

A DPS determination is the foundation on which a listing decision is based and inevitably alters the rest of the listing analysis. Once the Service determines that a population is discrete from and significant to the species as a whole, the Service evaluates the conservation status of *each* DPS under the standards for listing to determine whether the segment is threatened or endangered. *Id.*

The Service must utilize the "best scientific and commercial data available" when making a decision to list a species (or a distinct population segment of a species) and must consider any conservation efforts being made by any state to protect it. 16 U.S.C. § 1533(b)(1)(A). The Service must publish in the Federal Register a summary of the data on which the listing determination is based and must show the relationship of the data to the determination. *Id.* § 1533(b)(8).

In this instance, the Service conceded it incorrectly applied its own DPS Policy when it determined that there were two distinct population segments of the lesser prairie-chicken that warranted listing, resulting in insufficient evidence to support the determination. ROA.4532. The Final Rule listed the Southern and Northern "distinct population segments" of the lesser prairie-chicken as endangered and threatened, respectively. *See* ROA.942, 1012–14. The Service admitted, and the district court

agreed, that it conducted a flawed analysis under its DPS policy when it found that there were two distinct population segments because it conflated the "significance" analysis with the "discreteness" analysis, essentially failing to actually consider whether the segments were "significant." *See* ROA.6197–98; ROA.4532. The Service admitted it relied on the physical separation between the Northern and Southern populations (*i.e.*, the discreteness of the two populations) to assume that the loss of the Southern population would be significant to the species as a whole. See ROA.4532, ROA.4544-46. As this analysis was fundamental in determining the scope of the listable entities, this lack of analysis meant the Service lacked "key evidence to support the Final Rule," so "any explanation for [the Service's] actions in the Final Rule would run 'counter to the evidence before the agency.'" *Texas v. EPA,* 122 F.4th at 1009.

### ii. Confession of error, such that a rule can no longer be defended or explained, requires vacatur.

This Court has found that a confession of significant error is dispositive and requires remand with vacatur. In *Texas v. EPA*, the Environmental Protection Agency conceded that key documents were no longer in its possession, and therefore not part of the administrative record to support the underlying rule, and as a result conceded the rule at issue should be vacated. 122 F.4th at 1009. This Court vacated the rule based on this error alone: "Because EPA concede[d] that the administrative record lack[ed] key evidence to support the Final Rule, any explanation for EPA's actions in the Final Rule would run 'counter to the evidence before the agency.'" *Id.* (citations omitted).

Here, the district court similarly concluded that the Service's confessed error meant the Final Rule "cannot be explained or defended." ROA.6197 (citing *Tex. v. EPA,* 122 F.4th at 1009). The Service's insufficient and conclusory distinct population segment analysis, and consequently its inability to defend the Final Rule, was fatal to the entire rulemaking, as it tainted all downstream considerations.[2] As such, and as the district court found, vacatur is required.

The district court determined that the Service committed "no handwaving" when it confessed error that made the Final Rule unlawful. ROA.6197. However, the Conservation Groups characterize the district court's review as an application of a blanket rule that all confessions of error require vacatur. Some courts, and the Conservation Groups, express concern that the judiciary will blindly accept any agency request for vacatur. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010) (mem. op.); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) (mem. op.); *In re Clean Water Act Rulemaking*, 60 F.4th 583, 594–95 (9th Cir. 2023). Whether or not the judiciary as a whole is at risk of thoughtlessly applying a "blanket rule" such that all concessions of error result in automatic vacatur, that is not what occurred here. The district court examined the nature of the error, which was

---

[2] *See* ROA.6198 ("Failure to support the identification of the Lesser Prairie Chicken as distinct population segments taints the findings that those DPSs were listable as endangered and threatened so significantly that a full reconsideration is warranted."); *see* also ROA.6198 ("Put another way, if the Northern or Southern DPS does not qualify as a DPS under the DPS Policy, it does not meet the definition of 'species' in the ESA and, accordingly, cannot meet the definition of a threatened or endangered species under the ESA.").

fundamental to the rulemaking and unlawful. *See* ROA.6196–97. Even when conceded, a fundamental error prevents defense of a rule not promulgated in accordance with law, warranting the invocation of a court's equitable jurisdiction.

Further, the APA does not limit when a reviewing court can vacate a rule, particularly when, as here, the district court found that vacatur here comports with the APA's requirement to set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. ROA.6197. Some courts have found full briefing on the merits necessary to find a violation of the APA and reasoned that the APA's mandate of vacatur in some circumstances precludes vacatur in all others. *See Carpenters Indus. Council*, 734 F. Supp. 2d at 135; *Nat'l Parks Conservation Ass'n*, 660 F. Supp. 2d at 5; *In re Clean Water Act Rulemaking*, 60 F.4th at 594–95; *but see Liu v. SEC*, 591 U.S. at 86. However, the APA provides that a reviewing court is only required to make decisions on questions of law "to the extent necessary to decision" and need only review "those parts of [the record] cited by a party." *See* 5 U.S.C. § 706. The APA imposes no requirement that a court must exhaust the litany of issues presented to it in a review of agency action. Additionally, the APA restricts an agency's ability to *sua sponte* decide to rescind a rulemaking, *see* 5 U.S.C. §§ 551, 553, not the judiciary's ability to vacate a rule when error exists.[3] Rather than limiting equity jurisdiction in any way, the

---

[3] *See also* Stuart C. Gillespie, *Pre-Merits Vacatur: An Efficient, Equitable, and Environmentally Sound Remedy*, 39 Pace Envtl. L. Rev. 96, 113 (2022) ("Courts have the power to vacate a rule on [motions for voluntary remand], lest the challengers of the rule be left subject to a rule they claim is invalid and causes serious harm. Only in that way can courts of 'equity do complete rather than truncated justice.'"

APA only prescribes when a court *must* set aside agency actions, findings, and conclusions, not when it *cannot*. *See* 5 U.S.C. § 706. Federal courts are granted traditional equitable powers, and the APA does not alter this. *See Liu v. SEC*, 591 U.S. at 86 ("[U]nless otherwise provided by statute, all inherent equitable powers are available for the proper and complete exercise of [the Court's equity jurisdiction].") (cleaned up).

The Conservation Groups incorrectly argued that the Supreme Court stated its clear-cut disapproval of vacatur without full merits briefing via a heavy reliance on *Louisiana v. Am. Rivers* that is misleading. *See Louisiana v. Am. Rivers,* 142 S. Ct. 1347 (2022). There, the Supreme Court granted an application for the stay of a pre-merits vacatur of a Clean Water Act rule in a three-sentence memorandum opinion. *Id.* at 1347-48. Issues regarding pre-merits vacatur and the district court's application of the *Allied-Signal* factors, *see infra*, were among those presented, but the brief memorandum opinion contains no legal analysis of the merits, and therefore no concrete guidance, as to the Supreme Court's reasoning while reviewing the application for a stay.[4] The precise

---

(citations omitted)). Further, a challenge to an agency rule invokes not only the judiciary's review but also forces an agency to review its own rulemaking in order to defend it. If in such process the agency finds that in fact the rule is unlawful, the agency should not then be required to defend or enforce it.

[4] Conservation Groups point to a concurrence by Justices Gorsuch and Kavanaugh to impose exaggerated meaning on *Louisiana v. American Rivers*. *See* Appellants' Br., 41 ("when [the Supreme] Court issues a decision, it constitutes a precedent that commands respect in lower courts.") (citing *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch & Kavanagh, JJ. concurring)). In this concurrence, however, Justices Gorsuch and Kavanaugh discuss Supreme Court cases that had already explained the rationale relevant to the issues there. *See* 145 S. Ct. at 2663-64 (discussing, inter alia, *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam)). Lower courts may not defy the Supreme Court, but *Louisiana v. American Rivers* offers no rationale for the Supreme Court's grant of the stay for lower courts to rely on.

grounds on which the Supreme Court believed those appellants would be likely to prevail on the merits are left to speculation. The Conservation Groups advocate reading into non-binding Supreme Court jurisprudence limitations on equity jurisdiction that do not exist, and which the district court properly rejected.

Vacatur is not only well within a court's equity jurisdiction, but proper when the agency concedes foundational error that results in the inability to defend the rule. The district court properly vacated the Final Rule after the Service conceded that it failed to perform the analysis that underlies and informs the rest of the Listing Decision. The Service's confession of error made it impossible to defend or explain the Final Rule. Vacatur was required.

C. **The district court did not commit clear error in vacating the rule after applying the *Allied-Signal* factors.**

The district court was correct not only in determining that vacatur was required here, but also that departure from the default rule of vacatur was not warranted. The district court, after reviewing the facts before it, found: (1) the Service committed a serious error in the rulemaking that did not have a serious probability of being corrected on remand, and (2) the disruptive consequences of vacatur, if any, are minimal. If the district court adopts a permissible view of the evidence, even if there are multiple others, that choice, as a matter of law, cannot be clearly erroneous. *See Bommarito v. Belle Chasse Marine Transp., L.L.C.*, 159 F.4th 297, 304 (5th Cir. 2025) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be

clearly erroneous." (citations omitted)). Here, the district court's view of the evidence that the Service's failure to follow its own DPS Policy was a fundamental error in the rulemaking and that the impact of vacatur was minimal due to ongoing conservation programs is not an abuse of discretion.

Under this review, the district court first correctly found that the Service's conceded error did not have a serious probability of being corrected on remand because it required the Service to essentially restart its entire listing decision. *See* ROA.6197–98. Not only did the Service's error violate its own policy, but it was committed so early in the process and implicated the very foundation of the Final Rule. As the district court accurately stated, "the task before Fish and Wildlife is to go back and determine the listable entity for purposes of the listing determination. . . . Without such a determination, the later endangered and threatened findings have no leg to stand on." ROA.6198. Because this was a substantial deficiency in the rulemaking, remand without vacatur would therefore be inappropriate. *See U.S. Chamber of Com. v. SEC*, 88 F.4th at 1118.

Second, the district court concluded, and no party to the case disagreed, that the disruptive consequences of vacatur, if any, were minimal. The court found that (1) sixteen existing voluntary conservation programs minimize any disruptive consequences of vacatur, (2) all parties, including the Service prior to this rule challenge, acknowledge that these conservation efforts are effective for a span of at least 25 years, and (3) the Service would restart its analysis of the lesser prairie-chicken listing, with the

28

new findings anticipated before the end of 2026. ROA.6198–99. In fact, the Service has now initiated a new 12-month petition process for the lesser prairie-chicken, allowing the "public to submit to [the Service] any information relevant to the status of the lesser prairie-chicken or its habitat." Endangered and Threatened Wildlife and Plants; Status Review for the Lesser Prairie-Chicken, 91 Fed. Reg. 9,547, 9,547 (Feb. 26, 2026). This in essence starts the rulemaking process anew, again demonstrating that remand alone would not cure the error. But, as the court found, "any disruptive consequences of vacating the Final Rule [is] short lived and minimized" as the Service is actively assessing the conservation status of the species, and the public can participate in that process. ROA.6198. As such, the district court appropriately concluded deviation from the default rule of vacatur was not warranted.

Further, the district court's application of the *Allied-Signal* factors was straightforward and so are the issues: (1) the Service's foundational error in identifying the listable entity by failing to consider whether the lesser prairie-chicken's population segments were "significant" undermined the entire rulemaking, as there was no guarantee the same entities would be listed at all, and (2) existing conservation efforts ensure disruptive effects of the vacatur, if any, are minimal while the agency reassesses the listing. The district court's findings of fact resulted in its determination that straying from the default remedy of vacatur was inappropriate here.

Finally, the Conservation Groups' assertion that it is "incumbent on district courts" to make considerations based on the arguments of non-parties, who were

explicitly denied party status in a case, is confounding. *See* Appellants' Br., 26. There is no such requirement, and in fact, such a contention is inapposite to the requirements of party status and standing. The APA similarly only imposes a duty on a court to review "those parts of [the record] cited by a *party*." *See* 5 U.S.C. § 706 (emphasis added). A court is not compelled to consider or address arguments of any and every non-party, no matter how much they may wish to have the court's ear.

The district court's determination that there was not a serious possibility the Service's error could be corrected on remand and that vacatur is not disruptive is permissible and, therefore, not clearly erroneous.

## CONCLUSION

This Court should dismiss this appeal for lack of jurisdiction. The district court's denial of the Conservation Groups' initial intervention was not timely appealed and is therefore not before this Court. The Conservation Groups' second motion to intervene does not give them a second opportunity to appeal after they waived the first, but even if it did, the district court's denial should be upheld; it reasonably denied intervention years into the case on timeliness grounds. Because these groups were never granted party status, the Court should not consider the appeal of the district court's decision to remand the Listing Decision with vacatur. But in any case, there was no abuse of discretion below. The court properly granted the motion for remand and vacatur when the Service confessed fundamental error in the Listing Decision. If the Court finds it has jurisdiction over this appeal, it should affirm the district court's order.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Brittany E. Wright*
BRITTANY E. WRIGHT
Assistant Attorney General
Texas Bar No. 24130011
Brittany.Wright@oag.texas.gov

SHELBY THOMPSON
Assistant Attorney General
Texas Bar No. 24137238
Shelby.Thompson@oag.texas.gov

MICHAEL BURCHAM
Assistant Attorney General
Texas Bar No. 24139074
Michael.Burcham@oag.texas.gov

Office of the Attorney General of Texas
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

*Attorneys for State of Texas, Texas General Land Office, Texas Department of Agriculture, and Railroad Commission of Texas*

31

KRIS W. KOBACH
Attorney General of Kansas

*/s/ Anthony J. Powell*
ANTHONY J. POWELL
Solicitor General
Kansas Bar No. 14981
Anthony.Powell@ag.ks.gov

JAMES RODRIGUEZ
Assistant Attorney General
Jay.Rodriguez@ag.ks.gov

Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel.: (785) 368-8539
Fax: (785) 296-2420

**Attorneys for State of Kansas**

GENTNER DRUMMOND
Attorney General of Oklahoma

*/s/ Gary M. Gaskins, II*
GARY M. GASKINS, II
Solicitor General
Oklahoma Bar No. 20212
Garry.Gaskins@oag.ok.gov

ZACH WEST
Director of Special Litigation
Oklahoma Bar No. 30768
Zach.West@oag.ok.gov

JENNIFER L. LEWIS
Deputy Attorney General
Jennifer.Lewis@oag.ok.gov

Office of Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Tel.: (405) 521-3921
Fax: (405) 521-6246

*Attorneys for State of Oklahoma*

## CERTIFICATE OF SERVICE

I certify that on March 6, 2026, the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in the case.

/s/ Brittany E. Wright
BRITTANY E. WRIGHT

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 8,047 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

/s/ Brittany E. Wright
BRITTANY E. WRIGHT